STATE OF LOUISIANA

CIVIL DISTRICT COURT

FOR THE PARISH OF ORLEANS

DOCKET NO.: 2021-00826  DIVISION: E-7

2021 JAN 28 AM 10:03 FILED CIVIL DISTRICT COURT

THE ADMINISTRATORS OF THE TULANE EDUCATIONAL FUND

VERSUS

ILLINOIS UNION INSURANCE COMPANY;
WILLIS TOWERS WATSON SOUTHEAST, INC.
F/K/A WILLIS OF TENNESSEE, INC. ; AND
ABC INSURANCE COMPANY

FILED:_____DEPUTY CLERK:_____

**PETITION FOR DECLARATORY JUDGMENT,
INSURANCE PROCEEDS, AND
BREACH OF CONTRACT AND NEGLIGENCE**

**PARTIES**

1.

Plaintiff, The Administrators of the Tulane Educational Fund ("Tulane"), is a Louisiana non-profit corporation, with its principal place of business in Orleans Parish where it is domiciled.

2.

Tulane owns and operates Tulane University of Louisiana located in Orleans Parish among other properties and businesses located in Orleans Parish and elsewhere.

3.

Defendant, Illinois Union Insurance Company ("IUIC"), is a corporation organized under the laws of the State of Illinois with its principal place of business in Chicago, Illinois.

4.

IUIC issued Tulane a Premises Pollution Liability Insurance Policy No. PPL G71496776 001 ("Policy") effective February 27, 2019 to February 27, 2022, covering Tulane's uptown campus buildings as well as other Tulane properties as indicated therein.

5.

IUIC may be served via the Louisiana Secretary of State pursuant to Louisiana law and the Policy's Service of Suit Endorsement. *See* Policy, Endorsement No. 33.

6.

Defendant, Willis Towers Watson Southeast, Inc. f/k/a Willis of Tennessee, Inc. ("Willis"), was the producer of the Policy and, as explained below, on information and belief worked, with IUIC on a policy form titled "Willis Indoor Environmental Condition Amend (Bacteria/Virus)" which is at issue in this dispute.

7.

Willis worked on Tulane's insurance program and advised and recommended insurance coverage to Tulane, including, but not limited to the Policy.

8.

Willis has served as Tulane's insurance agent for more than 12 years.

9.

Defendant ABC is the insurer of Willis for any errors and omissions at issue in this lawsuit and is being sued pursuant to the Louisiana Direct Action Statute, LSA-R.S. § 22:1269.

10.

Venue is proper in Orleans Parish as this action is an action against joint or solidary obligors on an insurance policy, and Orleans Parish is the parish where the

loss occurred and where the insured Tulane is domiciled. *See* LA. CODE CIV. PROC. arts. 73(A) & 76.

## FACTS

### A. Tulane's COVID-19-Related Claims as to IUIC

11.

Following the March 2020 severe COVID-19 outbreak in the New Orleans area, the governmental orders from the State of Louisiana and City of New Orleans regarding same, and Tulane's decision to evacuate residential students from its uptown campus, on ***April 7, 2020***, Tulane provided a protective notice to IUIC of COVID-19-related claims it expected that would be covered under the Policy.

12.

One month after Tulane provided its Notice to IUIC, on ***May 7, 2020***, it received an "Indoor Environmental Conditions Amendatory (Bacteria and Virus) Endorsement" to the Policy from IUIC numbered Endorsement No. 44 with effective date of February 27, 2019.

13.

Endorsement No. 44 bore an edition date of "04/20" which indicates it was not created until April 2020.

14.

On ***May 27, 2020***, IUIC via David Klink denied coverage under the Policy for Tulane's COVID-19-related claims.

15.

In his correspondence, Mr. Klink failed to acknowledge that Tulane had bound coverage with IUIC and had paid a premium to IUIC for an extension of coverage to "virus" via an endorsement to the Policy, providing $10 million per

occurrence and $10 million in aggregate with a $250,000 self-insured retention and a retroactive date of February 27, 2019 for disinfection, remediation, and decontamination costs (collectively "costs") related to viruses.

16.

Mr. Klink further failed to even acknowledge the late-issued Endorsement No. 44 in his letter.

17.

On *July 8, 2020*, Tulane responded to Mr. Klink, noting that Tulane had purchased from IUIC coverage for incurred costs due to viruses and that, in order to prepare for reopening of the university for the fall 2020 semester and relocating the evacuated students to company, Tulane was in the process of decontamination of its building on an expedited basis.

18.

While reserving all its rights under the Policy, Tulane noted that, even if the late-delivered and late-created Endorsement No. 44 were applied to its COVID-19-related claims, that Endorsement No. 44's limiting provision to the affirmative virus coverage that there was no coverage if the virus is "the result of communicability through human to human or bodily fluid contact" ("H2H Exclusion") was not applicable.

19.

Rather than direct human-to-human transmission, the coronavirus can be communicated by human-to surface-to human transmission or human-to air-to human transmission.

20.

Unlike other insurance policy provisions that specifically exclude communicable diseases if transmitted "by direct *or* indirect" human transmission, the H2H Exclusion in the IUIC, even if applicable, does not clearly exclude "indirect" transmission of the coronavirus and therefore Tulane's COVID-19-related costs are covered under the Policy even if the limiting provision in Endorsement No. 44 is considered.

21.

On *July 14, 2020*, Mr. Klink wrote to Tulane admitting that his first correspondence was in error when he did not acknowledge that Tulane had purchased affirmative virus coverage.

22.

Nevertheless, Mr. Klink now asserted the H2H Exclusion in the late-delivered and late-created Endorsement 44 to continue to deny coverage for Tulane's COVID-19-related claims.

23.

On *November 14, 2020*, Tulane responded to Mr. Klink's July 14, 2020 correspondence and provided a Partial Proof of Loss including remediation and decontamination costs invoices of almost $600,000.

24.

In addition to reasserting the reasons that the IUIC cannot meet its burden that the H2H Exclusion would apply, Tulane set forth the history of its purchase of the

IUIC virus coverage and that it was never made aware of an H2H Exclusion before tendering its virus-related claim to IUIC.

### B.   Tulane's Purchase of Affirmative Virus Coverage from IUIC

25.

On *February 12, 2019*, Willis representatives met with Tulane representatives to discuss proposals from three new carriers including IUIC (referred to as Chubb) to provide Tulane Environmental Liability coverage which Tulane previously had with XL, but which policy was expiring on February 27, 2019 and was not going to be renewed.

26.

In those discussions, Tulane's Vice President, Insurance and Risk Management ("VP/IRM") specifically understood that the IUIC policy would cover costs related to a communicable disease like Ebola.

27.

Tulane's VP/IRM remembered thinking and asking about Ebola specifically because Tulane professors and doctors, including Dr. Gary, had been at "ground zero" in Africa doing research for Ebola.

28.

Tulane's VP/IRM thought a communicable disease, such as Ebola, would necessarily involve some form of human-to-human transmission, whether directly or indirectly, and she understood costs associated with such a disease would be covered under the IUIC policy, although sub-limited.

29.

In fact, in Tulane's VP/IRM's contemporaneous handwritten notes on the Willis February 12, 2019 proposal regarding the IUIC/Chubb policy, she wrote "Ebola-disinfection-sublimit $5M."

30.

The specific headings from the proposal for the expiring XL coverage and the proposals from the three new insurers with Tulane's VP/IRM's handwritten notes are reprinted below:

| Modifications to Form | Expiring XL | AWAC | Chubb | Allianz |
|---|---|---|---|---|
| Disinfection Costs | Coverage Not Included | Excluded | Coverage included for cleaning and disinfection expenses of any facility-borne infectious virus or bacteria that requires reporting to any governmental or healthcare oversight agency  Ebola - disinfection - sublimit $5M | Coverage Not Included |

31.

As can be seen above, while the expiring XL policy, the proposed AWAC policy, and the proposed Allianz policy all did not include or affirmatively excluded virus-related "Disinfection Costs," the IUIC/Chubb policy was listed as "Coverage included for cleaning and disinfection expenses of any facility-borne infectious virus or bacteria that requires reporting to any governmental or healthcare oversight agency."

32.

On *February 26, 2019*, IUIC provided a Quotation No. 4 to Tulane in which it quoted a premium of $275,000 for the Policy which Quotation specifically provided coverage would be extended via endorsement to viruses as follows:

Indoor Environmental Conditions Amendatory (Bacteria and Virus) Endorsement

- **Sublimits of Liabilit: $10m Per / $10m Agg with $250k SIR.**
- **Retroactive date of 02/27/2019.**

33.

While IUIC provided 64 pages of actual policy language with policy form numbers and edition dates to Tulane in the Final Quote, it did not provide a form number, edition date, or any additional language regarding the virus endorsement other than what was reprinted above.

34.

Also, on February 26, 2019, while transmitting various quotes, Willis updated its policy comparison form which had been presented at the February 12, 2019 meeting to reflect as follows:

| Modifications to Form | Expiring XL | AWAC | Chubb | Allianz |
|---|---|---|---|---|
| Disinfection Costs | Coverage Not Included | Excluded at Primate Center and any locations conducting biological research; Silent elsewhere | Coverage Included with a $10M sublimit and with a retro date of 2/27/2019 | Coverage Included with a retro date of 2/27/2019 |

35.

As can be seen above, the IUIC/Chubb policy was still providing coverage for disinfection costs "with a $10M sublimit and with a retro date of 2/27/2019 which matches the IUIC/Chubb Final Quote No. 4 for affirmative virus coverage.

36.

Tulane accepted IUIC/Chubb's quote, and on ***March 5, 2019***, IUIC issued Tulane a "Coverage Binder."

37.

The Coverage Binder reiterated that the Policy was subject to a $250,000 self-insured retention and a $275,000 premium and that the "Terms & Conditions" of the policy were as per the Final Quotation No. 4 dated February 26, 2019 as indicated below:

| | |
|---|---|
| RETENTION AMOUNT: | $250,000 Per Pollution Condition or Indoor Environmental Condition |
| | 7 days Deductible for Business Interruption loss Per Pollution Condition or Indoor Environmental Condition |
| PREMIUM: | $275,000 |
| | The premium in this binder includes commission in an amount equal to 0.0% of such premium. |
| COMMISSION: | 0.0% |
| | |
| TERMS & CONDITIONS: | PF-44887a (01/17) Premises Pollution Liability Insurance Policy |
| | As per quotation #4, dated 02/26/2019. |

38.

The Coverage Binder specifically stated that "Terms and conditions that are not specifically mentioned in this binder are not included."

39.

Because the H2H Exclusion was not specifically mentioned in the binder, it was not included in the bound coverage.

40.

After the IUIC Coverage Binder was issued, Willis sent Tulane another version of the policy comparison chart on *March 8, 2019*, but there was no change to Disinfection Costs boxes which remained the same as those provided on February 26, 2019.

41.

On *March 20, 2019*, Tulane paid the $275,000 premium for the IUIC Policy to Willis as agent for IUIC.

42.

On *May 17, 2019*, Tulane received some of the IUIC Policy, but the portions of the Policy received did not include the endorsement related to the affirmative virus coverage that Tulane bought and paid for and was bound pursuant to the Coverage Binder.

43.

After COVID-19 issues began in New Orleans in March 2020, Tulane attempted to obtain a copy of the affirmative virus coverage that it had bought and paid for and was bound and was not included with the policy provisions provided 10 months earlier.

44.

After being told on *April 2, 2020* that the missing virus endorsement had been "elevated to Chubb US management, Tulane tendered its Notice to IUIC under the Policy on *April 7, 2020* as indicated above.

45.

It was not for another month (and almost one year after being provided the other parts of the Policy) that on *May 7, 2020* Tulane was provided Endorsement No. 44 with the H2H Exclusion which it the first time IUIC had informed Tulane of that exclusion which was not included in its Final Quote No. 4 or Coverage Binder from 14 months earlier.

46.

The Endorsement No. 44 with the H2H Exclusion on which IUIC attempts to rely also bears an edition date of "(04/20)" which indicates it was not created until sometime in *April 2020* which was after COVID-19 had begun in March 2020 and

after Tulane had put IUIC formally on Notice of its COVID-19-related claims on April 7, 2020.

### C. Tulane Learns that Willis and Chubb/IUIC Had Worked on a Virus Endorsement Form that was Issued in January 2017.

47.

In further exploring these issues, Tulane has recently been provided a policy form substantively similar to Endorsement No. 44 by representatives of both IUIC and Willis to which both entities refer to as "***WILLIS*** Indoor Environmental Cond Amend (Bacteria_Virus) (W)_PF-48763." (emphasis added) ("Willis/Chubb Virus Endorsement").

48.

On information and belief, the Willis/Chubb Virus Endorsement was worked on together by Willis and IUIC/Chubb.

49.

It bears a form edition date of "(01/17)" which indicates it was created no later than January 31, 2017.

50.

Although IUIC relies on the substantive language of the Willis/Chubb Virus Endorsement to deny Tulane's claim, it has never explained why it could not have included an endorsement with that language that existed since January 2017 in either its Final Quote No. 4 in February 2019; its Coverage Binder in March 2019; when it sent Tulane other parts of the Policy in May 2019; or at any time before COVID-19 hit and Tulane submitted its Notice of its claims related to same to IUIC in March-April 2020.

51.

On information and belief, if Willis were involved in the creation of the Willis/Chubb Virus Endorsements, then Willis understood the coverage granted by the endorsement and correctly advised Tulane regarding same.

52.

Since COVID-19, Willis has consistently advised Tulane that it believes Tulane's COVID-19 claims and other insureds' COVID-19 claims would be covered under endorsements with substantially similar language to the Willis/Chubb Virus Endorsement on which IUIC relies to deny coverage.

53.

As to this issue regarding an endorsement created by an insurance agent and an insurer, Tulane submits that Willis acted as the agent of Chubb as to same.

54.

Tulane submits that, under Louisiana law, IUIC cannot rely on any limitation to coverage such as the H2H Exclusion that it did not deliver to Tulane within a reasonable period of time and post-loss and post-notice of loss, but rather the coverage as stated in the Coverage Binder which incorporates the Final Quote No. 4 would control.

55.

Alternatively, if IUIC is allowed to rely on the H2H Exclusion that was issued almost a year after the rest of Tulane's policy and after Tulane had sustained a loss and in contravention of the binder and if the H2H Exclusion is found to preclude coverage for Tulane's COVID-19 related claims, then Tulane is entitled to seek the coverage it should have had from Willis who represented to Tulane that the IUIC

policy would provide coverage for costs related to viruses such as Ebola.

## FIRST CAUSE OF ACTION AGAINST
## IUIC FOR DECLARATORY JUDGMENT

56.

Tulane repeats and alleges the allegations in all preceding paragraphs as though fully set forth herein.

57.

Tulane seeks a declaratory judgment against IUIC that IUIC is liable to Tulane for all costs related to COVID-19 that Tulane has or will incur, subject to an occurrence and aggregate limit of $10 million excess of a $250,000 self-insured retention.

## SECOND CAUSE OF ACTION AGAINST
## IUIC INSURANCE PROCEEDS

58.

Tulane repeats and alleges the allegations in all preceding paragraphs as though fully set forth herein.

59.

Tulane seeks insurance proceeds from IUIC for all COVID-19-related costs it has or will incur, subject to an occurrence and aggregate limit of $10 million excess of a $250,000 self-insured retention.

## THIRD CAUSE OF ACTION AGAINST WILLIS FOR
## BREACH OF CONTRACT AND/OR NEGLIGENCE

60.

Tulane repeats and alleges the allegations in all preceding paragraphs as though fully set forth herein.

61.

To the extent Tulane is found to not have coverage for its COVID-19-related costs under the Policy, Tulane submits it was due to the breach of contract and/or negligence of Willis in not obtaining the coverage it represented to Tulane it was obtaining and in not diligently pursuing getting the virus endorsement from IUIC.

62.

The defendants, IUIC and Willis, are all jointly and/or solidarily liable with each other for all damages Tulane has suffered due to their negligence and/or breaches of contract for its COVID-19 costs up to the limits of the policy it was to have had.

### FOURTH CAUSE OF ACTION
### AGAINST INSURER OF WILLIS
### PURSUANT TO THE DIRECT ACTION STATUTE

63.

Tulane repeats and alleges the allegations in all preceding paragraphs as though fully set forth herein.

64.

Tulane asserts a claim under the Louisiana Direct Action Statute, LSA-R.S. § 22:1269, against the insurer of Willis, as ABC insurer, for all Tulane's claims asserted against Willis.

65.

Tulane reserves its rights to substitute the correct name of the insurers at issue once identified.

**WHEREFORE**, Tulane respectfully prays, after due proceedings had, that:

(1) Defendants, IUIC and Willis, be held jointly and/or solidarily liable with each other for all costs suffered by Tulane due to COVID-19 up to $10 million;

(2) Willis' insurer be held liable for all amounts it owes Tulane; and

(3) Tulane receive any other equitable, special, and general relief as the nature of this case will allow.

*/s/ James M. Garner*

JAMES M. GARNER, #19589
MARTHA Y. CURTIS, #20446
AMANDA R. SCHENCK, #30706
**SHER GARNER CAHILL RICHTER KLEIN & HILBERT, L.L.C.**
909 Poydras Street, Suite 2800
New Orleans, Louisiana 70112
Telephone: (504) 299-2100
Facsimile: (504) 299-2300
**ATTORNEYS FOR PLAINTIFF THE ADMINISTRATORS OF THE TULANE EDUCATIONAL FUND**

**PLEASE HOLD SERVICE**