# EXHIBIT   A



**Premises Pollution Liability Insurance Policy**

**Illinois Union Insurance Company**
Chicago, Illinois

## *Declarations*

This Policy is issued by the stock insurance company identified above (hereinafter *the Insurer*).

THIS POLICY PROVIDES LIABILITY COVERAGE ON A CLAIMS-MADE AND REPORTED BASIS, WHICH COVERS ONLY CLAIMS FIRST MADE AGAINST THE INSURED DURING THE POLICY PERIOD AND REPORTED TO THE INSURER, IN WRITING, DURING THE POLICY PERIOD OR WITHIN THIRTY DAYS THEREAFTER, UNLESS AN EXTENDED REPORTING PERIOD APPLIES. THIS POLICY ALSO PROVIDES FIRST-PARTY COVERAGES ON A DISCOVERED AND REPORTED BASIS, WHICH COVERS ONLY POLLUTION CONDITIONS AND INDOOR ENVIRONMENTAL CONDITIONS, AS APPLICABLE, FIRST DISCOVERED DURING THE POLICY PERIOD AND FOR WHICH A FIRST-PARTY CLAIM IS REPORTED TO THE INSURER, IN WRITING, DURING THE POLICY PERIOD OR WITHIN THIRTY DAYS THEREAFTER. FINALLY, THIS POLICY PROVIDES COVERAGE FOR EMERGENCY RESPONSE COSTS THAT IS LIMITED BY MORE SPECIFIC REPORTING CRITERIA AND COVERS ONLY EMERGENCY RESPONSE COSTS INCURRED, AND REPORTED TO THE INSURER, IN WRITING, WITHIN THE SPECIFIC TIMING REQUIREMENTS IDENTIFIED IN THIS POLICY. PLEASE READ THIS POLICY CAREFULLY. SOME OF THE PROVISIONS CONTAINED IN THIS POLICY RESTRICT COVERAGE, SPECIFY WHAT IS AND IS NOT COVERED AND DESIGNATE YOUR RIGHTS AND DUTIES. LEGAL DEFENSE EXPENSES ARE SUBJECT TO AND SHALL ERODE THE LIMITS OF LIABILITY AND ANY APPLICABLE SELF-INSURED RETENTION.

THE DECLARATIONS, TOGETHER WITH THE COMPLETED AND SIGNED APPLICATION, THIS POLICY, AND ANY ENDORSEMENTS OR SCHEDULES ATTACHED HERETO, CONSTITUTE THE INSURANCE POLICY.

| Policy No.:  PPL G71496776 001 | Renewal of: NEW |
|---|---|

| Item 1. | First Named Insured: | The Administrators of the Tulane Educational Fund |
|---|---|---|
| | Address: | 200 Broadway Street<br>Suite 126<br>New Orleans, Louisiana 70118 |

<u>Coverages Purchased</u>: Coverage A. - ☒  Coverage B. - ☒  Coverage C. - ☒
("X" Indicates Coverage Purchased)

| Item 2. | Policy Period:<br><br>(Local Time of the Address Shown in Item 1., above.) | Policy Inception Date:<br><br>02/27/2019 12:01 A.M. | Policy Expiration Date:<br><br>02/27/2022 12:01 A.M. |
|---|---|---|---|
| Item 3. | Limits of Liability:<br>In U.S. Dollars | a. $25,000,000<br><br>b. $25,000,000 | Per Pollution Condition or Indoor Environmental Condition Limit of Liability<br><br>Total Policy and Program Aggregate Limit of Liability for all Pollution Conditions and Indoor Environmental Conditions |
| Item 4. | Self-Insured Retention / Deductible Period:<br>In U.S. Dollars | a. $250,000<br><br>b.  7 | Per Pollution Condition or Indoor Environmental Condition<br><br>Days Per Pollution Condition or Indoor Environmental Condition |

| Item 5. | Retroactive Dates: | |
|---|---|---|
| | | ☒ if checked Exposure-Specific Retroactive Dates are designated via endorsement. |
| | | **Coverage A** |
| | | Premises Pollution Condition Liability: **Per PF-44913 Schedule of Covered Locations Endorsement** |
| | | Premises Indoor Environmental Condition Liability: **Per PF-44913 Schedule of Covered Locations endorsement** |
| | | Premises Pollution Condition First-Party Claims: **Per PF-44913 Schedule of Covered Locations Endorsement** |
| | | Premises Indoor Environmental Condition First-Party Claims: **Per PF-44913 Schedule of Covered Locations Endorsement** |
| | | **Coverage B** |
| | | Transportation Liability: **Per PF-44913 Schedule of Covered Locations Endorsement** |
| | | Transportation First-Party Claims: **Per PF-44913 Schedule of Covered Locations Endorsement** |
| | | **Coverage C** |
| | | Non-Owned Disposal Sites Liability : 02/27/2008 |
| | | If "FULL RETRO" is indicated in the Retroactive Date column above, then retroactive coverage is afforded pursuant to this Policy for that specific exposure, subject to any other corresponding exposure-specific Retroactive Date added to this Policy by endorsement. |

| Item 6. | Premium:<br>In U.S. Dollars | $275,000 |
|---|---|---|
| | Total Premium: | $275,000 |
| | | (The entire amount of this premium shall be 25% minimum earned as of the first day of the Policy Period indicated in Item 2., above) |

| Item 7. | Producer:<br>Name & Address | Willis Of Tennessee Inc.<br>26 Century Boulevard<br>Nashville, Tennessee 37214 |
|---|---|---|

| Item 8. | a. Notice of Claim or Pollution Condition | b. All other Notices |
|---|---|---|
| Notices | CHUBB Environmental Risk Claims Manager<br>CHUBB USA Claims<br>P.O. Box 5103<br>Scranton, PA 18505-0510<br>Fax: (866) 635-5687<br><br>First Notice Fax: (800) 951-4119<br>First Notice Email:<br>CasualtyRiskEnvironmentalFirstNotice@chubb.com | Environmental Risk Underwriting Officer<br>CHUBB Environmental Risk<br>P.O. Box 1000<br>436 Walnut Street – WA 07A<br>Philadelphia, PA 19106 |

| | Environmental Incident Alert - 24 Hour Emergency Response Hotline | 1-888-310-9553 |
|---|---|---|

| Item 9. | Covered Locations: | As per PF- 44913 (09/14) Schedule of Covered Locations Endorsement<br><br>[X] if checked here, schedule of Covered Locations is designated via endorsement. |
|---|---|---|

Policy Form No. PF-44887b (08/18) Premises Pollution Liability Insurance Policy

Endorsements and Notices Attached at Policy Issuance:

| Endorsement Number: | Form Number: | Form Name: |
|---|---|---|
| 001 | PF-44890 (09/14) | Schedule of Additional Insureds (Broad - With By Contract) Endorsement |
| 002 | PF-32460 (11/10) | Schedule of Named Insured Endorsement |
| 003 | PF-45388 (02/15) | Asbestos and/or Lead-Based Paint Limitation Endorsement |
| 004 | PF-44899a (01/17) | Automatic Acquisition and Due Diligence (Fungi — No Lease Due Diligence) Endorsement |
| 005 | PF-44904b (01/17) | Bioterrorism Coverage Endorsement |
| 006 | PF-48608 (01/17) | Business Interruption Coverage Limitations Endorsement |
| 007 | PF-48614 (01/17) | Coverage Limitation And Reopener Endorsement |
| 008 | PF-48615 (01/17) | Covered Location Amendatory (Inadvertently Omitted Locations — New Conditions Only) Endorsement |
| 009 | PF-48617 (01/17) | Covered Operations Coverage (Scheduled) Endorsement |
| 010 | PF-48619 (01/17) | Definition Of Responsible Person Amendatory (Generic) Endorsement |
| 011 | PF-48621 (01/17) | Deletion Of Discovery (Premises Pollution — Remediation Costs By Government Action Only) Endorsement |
| 012 | PF-46966 (09/15) | Known Conditions Exclusion Amendatory Endorsement |
| 013 | PF-48647 (01/17) | Non-Owned Disposal Sites Coverage Limitation Endorsement |
| 014 | PF-44957 (09/14) | Notice of Cancellation Amendatory (Generic Time Frame) Endorsement |
| 015 | PF-44962 (09/14) | Other Insurance (Primary When No Tank Fund Or Coverage - SIR Credit) Endorsement |
| 016 | PF-44966 (09/14) | Premium Earn-Out (Staggered - Multiple Years - Acceleration) Endorsement |
| 017 | PF-44968 (09/14) | Prior Claims Exclusionary (Broad) Endorsement |
| 018 | PF-44913 (09/14) | Schedule of Covered Locations Schedule Endorsement |
| 019 | PF-44955a (01/17) | Schedule of Non-Owned Disposal Sites Endorsement |
| 020 | PF-44997 (09/14) | Schedule of Underground Storage Tanks Endorsement |
| 021 | PF-48660 (01/17) | Site Development And/Or Vapor Mitigation Exclusionary Endorsement |
| 022 | PF-48661 (01/17) | Specific Activities Exclusionary Endorsement |
| 023 | PF-48668 (01/17) | Transportation Coverage Limitation Endorsement |
| 024 | PF-44999 (09/14) | Waiver of Subrogation (By Contract) Endorsement |
| 025 | PF-45030 (09/14) | Schedule Of Excluded Properties |

| Endorsement Number: | Form Number: | Form Name: |
|---|---|---|
| 026 | MS-274660.1 (02/19) | Indoor Environmental Conditions Coverage Limitations (No Fungi) Endorsement |
| 027 | PF-51290 (10/18) | Fungi Exclusionary (BI/PD & Water Intrusion Event Give-Back) Endorsement |
| 028 | PF-51284 (10/18) | Catastrophe Management Coverage Limitations Endorsement |
| 029 | MS-276433.1 (03/19) | Fungi Conditions Sublimit and Give-Back Endorsement |
| 030 | MS-276433.2 (03/19) | Fungi Exclusionary (Capital Improvements) Endorsement |
| 031 | MS-276433.3 (03/19) | Primate Operations Coverage Limitation Endorsement |
| 032 | TRIA11c (01/15) | Disclosure Pursuant To Terrorism Risk Insurance Act |
| 033 | SL-34255a (01/16) | Service of Suit Endorsement |
| 034 | PF-23728a (01/15) | Terrorism Risk Insurance Act Endorsement |
| 035 | ALL-21101 (11/06) | Trade Or Economic Sanctions Endorsement |
| 036 | LD-5S23j (03/14) | Signatures |
|  | SL-17893 (07/13) | Louisiana Surplus Lines Notification |
|  | ALL-20887a (03/16) | Chubb Producer Compensation Practices & Policies |
|  | ILP 001 01 04 | U. S. Treasury Department's Office of Foreign Assets Control ("OFAC") Advisory Notice to Policyholders |

IN WITNESS WHEREOF, the Insurer has caused this Policy to be countersigned by a duly authorized representative of the Insurer.

DATE: _____02/27/2019_____        _____
                 MO/DAY/YR                              JOHN J. LUPICA, President
                                                          AUTHORIZED REPRESENTATIVE



This Policy is issued by the stock insurance company identified in the Declarations (hereinafter *the Insurer*).

THIS POLICY PROVIDES LIABILITY COVERAGE ON A CLAIMS-MADE AND REPORTED BASIS, WHICH COVERS ONLY CLAIMS FIRST MADE AGAINST THE INSURED DURING THE POLICY PERIOD AND REPORTED TO THE INSURER, IN WRITING, DURING THE POLICY PERIOD OR WITHIN THIRTY DAYS THEREAFTER, UNLESS AN EXTENDED REPORTING PERIOD APPLIES. THIS POLICY ALSO PROVIDES FIRST-PARTY COVERAGES ON A DISCOVERED AND REPORTED BASIS, WHICH COVERS ONLY POLLUTION CONDITIONS AND INDOOR ENVIRONMENTAL CONDITIONS, AS APPLICABLE, FIRST DISCOVERED DURING THE POLICY PERIOD AND FOR WHICH A FIRST-PARTY CLAIM IS REPORTED TO THE INSURER, IN WRITING, DURING THE POLICY PERIOD OR WITHIN THIRTY DAYS THEREAFTER. FINALLY, THIS POLICY PROVIDES COVERAGE FOR EMERGENCY RESPONSE COSTS THAT IS LIMITED BY MORE SPECIFIC REPORTING CRITERIA AND COVERS ONLY EMERGENCY RESPONSE COSTS INCURRED, AND REPORTED TO THE INSURER, IN WRITING, WITHIN THE SPECIFIC TIMING REQUIREMENTS IDENTIFIED IN THIS POLICY. PLEASE READ THIS POLICY CAREFULLY. SOME OF THE PROVISIONS CONTAINED IN THIS POLICY RESTRICT COVERAGE, SPECIFY WHAT IS AND IS NOT COVERED AND DESIGNATE YOUR RIGHTS AND DUTIES. LEGAL DEFENSE EXPENSES ARE SUBJECT TO AND SHALL ERODE THE LIMITS OF LIABILITY AND ANY APPLICABLE SELF-INSURED RETENTION.

Throughout this Policy the words the Insurer shall refer to the company providing this insurance. Other words and phrases that appear in quotation marks have special meanings and are defined in Section V., DEFINITIONS.

In consideration of the payment of the premium and in reliance upon all statements made in the Application to this Policy, including the information furnished in connection therewith, and subject to all terms, definitions, conditions, exclusions and limitations of this Policy, the Insurer agrees to provide insurance coverage to the "insured" as described herein.

## I.   INSURING AGREEMENTS

Solely to the extent that the coverages below are identified on the Declarations to this Policy as being underwritten by the Insurer, the Insurer agrees to pay on behalf of the "insured" for "loss", in excess of the "self-insured retention" or deductible period (as applicable), resulting from:

### A.   POLLUTION CONDITIONS OR INDOOR ENVIRONMENTAL CONDITIONS COVERAGE (Coverage A.)

"Claims" and "first-party claims" arising out of: 1) a "pollution condition" on, at, under or migrating from a "covered location"; or 2) an "indoor environmental condition" at a "covered location", provided the "claim" is first made, or the "insured" first discovers such "pollution condition" or "indoor environmental condition", during the "policy period". Any such "claim" or "first-party claim" must be reported to the Insurer, in writing, during the "policy period" or within thirty (30) days after the expiration of the "policy period", or during any applicable "extended reporting period".

The coverage afforded pursuant to this Coverage A. only applies to "pollution conditions" or "indoor environmental conditions" that first commence, in their entirety, on or after the retroactive date identified in Item 5. of the Declarations, if applicable, and prior to the expiration of the "policy period".

### B.   TRANSPORTATION COVERAGE (Coverage B.)

"Claims" and "first-party claims" arising out of a "pollution condition" resulting from "transportation", provided the "claim" is first made, or the "insured" first discovers such "pollution condition", during the "policy period". Any such "claim" or "first-party claim" must be reported to the Insurer, in writing, during the "policy period" or within thirty (30) days after the expiration of the "policy period", or during any applicable "extended reporting period".

The coverage afforded pursuant to this Coverage B. only applies to "pollution conditions" that first commence, in their entirety, on or after the retroactive date identified in Item 5. of the Declarations, if applicable, and prior to the expiration of the "policy period".

### C.   NON-OWNED DISPOSAL SITE COVERAGE (Coverage C.)

"Claims" arising out of a "pollution condition" on, at, under or migrating from a "non-owned disposal site", provided the "claim" is first made during the "policy period". Any such "claim" must be reported to the Insurer,

in writing, during the "policy period" or within thirty (30) days after the expiration of the "policy period", or during any applicable "extended reporting period".

The coverage afforded pursuant to this Coverage C. only applies to "pollution conditions" that are attributable to a "named insured's" waste generated at a "covered location" and received at the "non-owned disposal site", in its entirety, on or after the retroactive date identified in Item 5. of the Declarations, if applicable, and prior to the expiration of the "policy period".

## II. LIMITS OF LIABILITY AND SELF-INSURED RETENTION

A. It is expressly agreed that the Insurer's obligation to pay for any covered "loss" (exclusive of "business interruption loss") pursuant to this Policy shall attach to the Insurer only after the "first named insured" has paid, or has provided evidence to the Insurer that another "named insured" has paid, the full amount of the "self-insured retention" with respect to any covered "pollution condition" or "indoor environmental condition". Under no circumstances, including, but not limited to, an "insured's" insolvency and/or bankruptcy, shall the Insurer be liable to pay any amount within the "self-insured retention". In the event that the "first named insured" cannot provide satisfactory evidence that a "named insured" has paid the full amount of the "self-insured retention" with respect to any covered "pollution condition" or "indoor environmental condition", the "first named insured" shall remain responsible to pay the "self-insured retention" before the Insurer's payment obligation pursuant to this Policy shall attach with respect to coverage sought by any "insured".

Notwithstanding the foregoing, if the "insured" agrees with the Insurer to use "mediation" to successfully resolve any "claim" for which "legal defense expenses" have been incurred, then the "self-insured retention" applicable to the "pollution condition" or "indoor environmental condition" that corresponds to such "claim" shall be reduced by fifty percent (50%), subject to a maximum reduction in the "self-insured retention" of twenty-five thousand dollars ($25,000).

In addition to the foregoing, it is expressly agreed that the Insurer's obligation to pay for any covered "business interruption loss" pursuant to this Policy shall attach to the Insurer only after the relevant "insured" has also borne the full amount of the "business interruption loss" within the deductible period identified in Item 4. of the Declarations to this Policy.

B. One "self-insured retention" shall apply to all "loss" (exclusive of "business interruption loss") arising out of the same, continuous, repeated, or related "pollution condition" or "indoor environmental condition". If the same, continuous, repeated, or related "pollution condition" or "indoor environmental condition" triggers coverage pursuant to multiple coverage parts, or otherwise involves multiple exposures that have been assigned exposure-specific "self-insured retention" amounts by endorsement to this Policy, the single largest of the associated "self-insured retention" amounts identified in: 1) Item 4. of the Declarations; 2) any Supplemental Coverage added by endorsement to this Policy; or 3) any exposure-specific "self-insured retention" endorsement identified as part of this Policy, shall apply to all "loss" and other covered exposures arising out of such "pollution condition" or "indoor environmental condition", except for any "catastrophe management costs" that are assigned an exposure-specific "self-insured retention" by endorsement to this Policy, if any (hereinafter Catastrophe Management-Specific SIR Obligation). Amounts within any such Catastrophe Management-Specific SIR Obligation shall be independent of, and shall not otherwise erode, the single largest "self-insured retention" applicable to all other covered exposures arising out of the same "pollution condition" or "indoor environmental condition" as contemplated herein.

C. One deductible period shall apply to all "business interruption loss" arising out of the same, continuous, repeated, or related "pollution condition" or "indoor environmental condition".

D. Subject to Subsections E. and F., below, the most the Insurer shall pay for all "loss" arising out of the same, continuous, repeated, or related "pollution condition" or "indoor environmental condition" is the Per Pollution Condition or Indoor Environmental Condition Limit of Liability identified in Item 3.a. of the Declarations to this Policy.

E. Subject to Subsection D., above, and Subsection F., below, $250,000 shall be the maximum amount the Insurer shall pay for all "catastrophe management costs" arising out of all "pollution conditions" and "indoor environmental conditions".

F. Subject to Subsections D. and E., above, the Total Policy and Program Aggregate Limit of Liability identified in Item 3.b. of the Declarations shall be the maximum liability of the Insurer pursuant to this Policy with respect to all "loss".

G. If the Insurer or an affiliate has issued pollution liability coverage afforded on a discovered and reported basis or claims-made and reported basis consistent with coverage afforded pursuant to this Policy in one or more policy

periods, and a "pollution condition" or "indoor environmental condition" is first discovered and reported to the Insurer, or a "claim" is first made and reported to the Insurer with respect to a "pollution condition" or "indoor environmental condition", in accordance with the terms and conditions of this Policy, then:

1. Any continuous, repeated, or related "pollution condition" or "indoor environmental condition" that is subsequently reported to the Insurer during later policy periods shall be deemed to be one "pollution condition" or "indoor environmental condition" discovered during this "policy period"; and

2. All "claims" arising out of:

   a. The same, continuous, repeated, or related "pollution condition" or "indoor environmental condition" that was discovered during this "policy period"; or

   b. The same, continuous, repeated, or related "pollution condition" or "indoor environmental condition" that was the subject of a "claim" first made and reported in accordance with the terms and conditions of this Policy,

shall be deemed to have been first made and reported during this "policy period" and no other policy shall respond.

## III. DEFENSE AND SETTLEMENT

A. The Insurer shall have the right and, subject to the "self-insured retention" obligation, the duty to defend the "insured" against a "claim" to which this insurance applies. The Insurer shall have no duty to defend the "insured" against any "claim" to which this insurance does not apply. The Insurer's duty to defend the "insured" ends once the Limits of Liability are exhausted or are tendered into a court of applicable jurisdiction, or once the "insured" refuses a settlement offer as provided in Subsection E., below.

B. The Insurer shall have the right to select legal counsel to: 1) represent the "insured" for the investigation, adjustment, and defense of any "claims" covered pursuant to this Policy; and 2) assist the "insured" with clarifying the extent of, and to help minimize, any "first-party remediation costs". Selection of legal counsel by the Insurer shall not be done without the consent of the "insured"; such consent shall not be unreasonably withheld.

In the event the "insured" is entitled by law to select independent counsel to defend itself at the Insurer's expense, the attorney fees and all other litigation expenses the Insurer shall pay to that counsel are limited to the rates the Insurer actually pays to counsel that the Insurer normally retains in the ordinary course of business when defending "claims" or lawsuits of similar complexity in the jurisdiction where the "claim" arose or is being defended. In addition, the "insured" and the Insurer agree that the Insurer may exercise the right to require that such counsel: 1) have certain minimum qualifications with respect to their competency, including experience in defending "claims" similar to those being asserted against the "insured"; 2) maintain suitable errors and omissions insurance coverage; 3) be located within a reasonable proximity to the jurisdiction of the "claim"; and 4) agree in writing to respond in a timely manner to the Insurer's requests for information regarding the "claim". The "insured" may at any time, by its signed consent, freely and fully waive its right to select independent counsel.

C. The "insured" shall have the right and the duty to retain a qualified environmental consultant or "catastrophe management firm" to: 1) perform any investigation and/or remediation of any "pollution condition" or "indoor environmental condition" covered pursuant to this Policy; or 2) perform "catastrophe management services" covered pursuant to this Policy, respectively. The "insured" must receive the consent of the Insurer prior to the selection and retention of such consultant or "catastrophe management firm", except in the event of a "first-party claim" that results in "emergency response costs".

D. "Legal defense expenses" reduce the Limits of Liability identified in the Declarations to this Policy, and, unless specifically stated otherwise herein, any applicable Limits or Sublimits of Liability identified in any endorsement hereto. "Legal defense expenses" shall also be applied to the "self-insured retention".

E. The Insurer shall present all settlement offers to the "insured". If the Insurer recommends a settlement which is acceptable to a claimant, exceeds any applicable "self-insured retention", is within the Limits of Liability, and does not impose any additional unreasonable burdens on the "insured", and the "insured" refuses to consent to such settlement offer, then the Insurer's duty to defend such "claim" shall end. Thereafter, the "insured" shall defend such "claim" independently and at the "insured's" own expense. The Insurer's liability shall not exceed the amount for which the "claim" could have been settled if the Insurer's recommendation had been accepted, exclusive of the "self-insured retention".

## IV. COVERAGE TERRITORY

The coverage afforded pursuant to this Policy shall only apply to "pollution conditions" or "indoor environmental conditions" located, and "claims" made, within the United States of America.

## V. DEFINITIONS

A. "Additional insured" means any person or entity specifically endorsed onto this Policy as an "additional insured", if any. Such "additional insured" shall maintain only those rights that are specified by endorsement to this Policy.

B. "Adverse media coverage" means national or regional news exposure in television, radio, print or internet media that is reasonably likely to have a negative impact on the "insured" with respect to its income, reputation, community relations, public confidence or good will.

C. "Bodily injury" means physical injury, illness, disease, mental anguish, emotional distress, or shock, sustained by any person, including death resulting therefrom, and any prospective medical monitoring costs that are intended to confirm any such physical injury, illness or disease.

D. "Business income" means:

1. Net profit or loss, before income taxes, including "rental income" from tenants, that would have been realized had there been no "business interruption";

2. The "insured's" continuing operating and payroll expense (excluding payroll expense of officers, executives, department managers and contract employees);

3. Costs incurred by the "insured" as rent for temporary premises when a portion of a "covered location" becomes untenantable due to a "pollution condition" or "indoor environmental condition" and temporary premises are required to continue the "insured's" operations. Such rental costs cannot exceed the fair rental value of the untenantable portion of the "covered location" immediately preceding the "pollution condition" or "indoor environmental condition".

E. "Business interruption" means the necessary partial or complete suspension of the "insured's" operations at a "covered location" for a period of time, which is directly attributable to a "pollution condition" or "indoor environmental condition" to which Coverage A. of this Policy applies. Such period of time shall extend from the date that the operations are necessarily suspended and end when such "pollution condition" or "indoor environmental condition" has been remediated to the point at which the "insured's" normal operations could reasonably be restored.

F. "Business interruption loss" means:

1. "Business income";

2. "Extra expense"; and

3. "Delay expense".

G. "Catastrophe management costs" means reasonable and necessary expenses approved by the Insurer, in writing, except for those expenses incurred during the same seven (7) day period associated with "emergency response costs", which have been incurred by the "insured" for the following:

1. Responsive consulting services rendered by a "catastrophe management firm";

2. Printing, advertising, mailing of materials of public relations materials;

3. Travel by directors, officers, employees or agents of the "insured", or the "catastrophe management firm", incurred at the direction of a "catastrophe management firm";

4. To secure the scene of a "pollution condition" or "indoor environmental condition"; or

5. Sums advanced to third-parties directly harmed by the "pollution condition" or "indoor environmental condition" for their medical costs; funeral costs; psychological counseling; travel expenses costs; temporary living costs or other necessary response costs,

but solely in those instances when, in the good faith opinion of a "key executive", the associated "pollution condition" or "indoor environmental condition" has resulted in or is reasonably likely to result in: a) "loss" (exclusive of "catastrophe management costs") that will exceed the applicable "self-insured retention"; and b) a need for "catastrophe management services" due to "adverse media coverage".

"Catastrophe management costs" do not include any "legal defense expense".

H. "Catastrophe management firm" means any firm that is approved, in writing, except for firms retained for the same seven (7) day period associated with "emergency response costs", by the Insurer to perform "catastrophe management services" in connection with a "pollution condition" or "indoor environmental condition".

I. "Catastrophe management services" means advising the "insured" with respect to minimizing potential harm to the "insured" from a covered "pollution condition" or "indoor environmental condition" by managing "adverse media coverage" and maintaining and restoring public confidence in the "insured", and its services or products.

J. "Claim" means the written assertion of a legal right received by the "insured" from a third-party, or from another "insured" that is party to an "environmental indemnity obligation", including, but not limited to, a "government action", suits or other actions alleging responsibility or liability on the part of the "insured" for "bodily injury", "property damage" or "remediation costs" arising out of "pollution conditions" or "indoor environmental conditions" to which this insurance applies.

K. "Covered location" means:

1. Any location specifically identified in Item 9. of the Declarations to this Policy;

2. Any location that is specifically identified on a Schedule of Covered Locations attached to this Policy; and

3. Any location that meets the prerequisites to coverage identified in the Automatic Acquisition and Due Diligence Endorsement attached to this Policy, if any.

L. "Delay expense" means, for a "covered location" under development where a "pollution condition" or "indoor environmental condition" causes a delay in the completion or development during the "business interruption", any of the following expenses:

1. Additional interest on money the "insured" has borrowed to finance the construction, development, or remediation of a project at a "covered location";

2. Additional realty taxes and other assessments;

3. Additional advertising or promotional expense;

4. Additional expenses incurred resulting from the renegotiation of leases, including associated usual and customary legal representation expense; and

5. Additional engineering, architectural, and consulting fees.

M. "Emergency response costs" means "first-party remediation costs" incurred within seven (7) days following the discovery of a "pollution condition" or "indoor environmental condition" by a "responsible person" in order to abate or respond to an imminent and substantial threat to human health or the environment arising out of:

1. A "pollution condition" or "indoor environmental condition" on, at, under or migrating from a "covered location"; or

2. A "pollution condition" resulting from "transportation",

provided such "emergency response costs" are reported to the Insurer within fourteen (14) days of when that "responsible person" first became aware of such "pollution condition" or "indoor environmental condition".

N. "Environmental indemnity obligations" means an "insured's" obligations to defend or indemnify a third-party with respect to a "pollution condition" or "indoor environmental condition" to which this insurance otherwise applies, provided that such defense or indemnity obligation is explicitly included within a contract identified or described on the Schedule of Insured Contracts Endorsement attached to this Policy, if any.

O. "Environmental law" means any Federal, state, commonwealth, municipal or other local law, statute, ordinance, rule, guidance document, regulation, and all amendments thereto (collectively Laws), including voluntary cleanup or risk-based corrective action guidance, or the direction of an "environmental professional" acting pursuant to the authority provided by any such Laws, along with any governmental, judicial or administrative order or directive, governing the liability or responsibilities of the "insured" with respect to a "pollution condition" or "indoor environmental condition".

P. "Environmental professional" means a licensed professional that is:

1. Mutually agreed upon by the Insurer and the "insured", except with respect to "emergency response costs"; and

2. Qualified by licensure, knowledge, skill, education and training to perform an assessment, prepare an investigation protocol, interpret the results and prepare a scope of work to remediate a "pollution condition" or "indoor environmental condition".

Q. "Extended reporting period" means the additional period of time in which to report a "claim" first made against the "insured" during or subsequent to the end of the "policy period".

R. "Extra damages" means punitive, exemplary or multiplied damages, and civil fines, penalties and assessments, but solely to the extent that the punitive, exemplary or multiplied damages, and civil fines, penalties and assessments:

1. Are insurable under applicable law; and

2. Arise out of a "pollution condition" or "indoor environmental condition" that results in "bodily injury", "property damage", "remediation costs" or "first-party remediation costs" to which this insurance otherwise applies.

S. "Extra expense" means costs incurred by the "insured" due to a "pollution condition" or "indoor environmental condition" that are necessary to avoid or mitigate any "business interruption". Such costs must be incurred to actually minimize the amount of foregone "business income" that would otherwise be covered pursuant to this Policy.

T. "First named insured" means the person or entity as identified in Item 1. of the Declarations to this Policy. The "first named insured" is the party responsible for the payment of any premiums and the payment of, or evidencing payment of, any applicable "self-insured retention" amounts. The "first named insured" shall also serve as the sole agent on behalf of all "insureds" with respect to the provision and receipt of notices, including notice of cancellation or non-renewal, receipt and acceptance of any endorsements or any other changes to this Policy, return of any premium, assignment of any interest pursuant to this Policy, as well as the exercise of any applicable "extended reporting period", unless any such responsibilities are otherwise designated by endorsement.

U. "First-party claim" means the first-party discovery of a "pollution condition" or an "indoor environmental condition" during the "policy period" by an "insured" to which this insurance applies.

V. "First-party remediation costs" means reasonable and necessary "remediation costs" incurred by an "insured" resulting from a "first-party claim". If no applicable laws exist that govern the remediation, investigation, quantification, monitoring, removal, disposal, treatment, neutralization, or immobilization of such "pollution condition" or "indoor environmental condition" in the jurisdiction of the "covered location", necessary "remediation costs" may be established by securing the written professional recommendations of an "environmental professional".

"First-party remediation costs" also means reasonable and necessary expenses required to restore, repair or replace real or personal property to substantially the same condition it was in prior to being damaged during the course of responding to a "pollution condition" or "indoor environmental condition". Such expenses shall not include costs associated with betterments or improvements, except to the extent that such betterments or improvements are exclusively associated with the use of building materials which are environmentally superior to those materials which comprised the original damaged property. Any such environmentally superior material must be: a) certified as such by an applicable independent certifying institution, where such certification is available; or b) in the absence of any such certification, based solely on the judgment of the Insurer and at its sole discretion.

W. "Fungi" means any type or form of fungus, including mold or mildew, and any mycotoxins, spores, scents, or byproducts produced or released by "fungi".

X. "Government action" means action taken or liability imposed by any Federal, state, commonwealth, municipal or other local government agency or body acting pursuant to the authority of "environmental law".

Y. "Illicit abandonment" means:

1. Solely with respect to coverage for "covered locations", the intentional placement or abandonment of any solid, liquid, gaseous or thermal irritant, contaminant, or pollutant, including contaminated soil, contaminated silt, contaminated sedimentation, smoke, soot, vapors, fumes, acids, alkalis, chemicals, hazardous substances, hazardous materials, or waste materials, including "low-level radioactive waste", "mixed waste" and medical, red bag, infectious and pathological wastes, on, at or into a "covered location", by a person or entity that:

   a. Is not an "insured"; and

   b. Is not affiliated by common ownership with an "insured", and,

2. Solely with respect to coverage for "transportation", the intentional placement or abandonment of any waste, goods, materials or product beyond the boundaries of a "covered location" during "transportation" by a person or entity that:

   a. Is not an "insured"; and

   b. Is not affiliated by common ownership with an "insured".

   "Illicit abandonment" does not mean any such placement or abandonment, above, which takes place, in whole or in part, prior to the inception date identified in Item 2. of the Declarations of this Policy.

Z. "Indoor environmental condition" means:

   1. The presence of "fungi" in a building or structure, or the ambient air within such building or structure; or

   2. The discharge, dispersal, release, escape, migration or seepage of *legionella pneumophila* in a building or structure, or the ambient air within such building or structure,

   provided that such "fungi" or *legionella pneumophila* are not naturally occurring in the environment in the amounts and concentrations found within such building or structure.

AA. "Insured" means the "first named insured", any "named insured", any "additional insured", and any past or present director or officer of, partner in, employee of, temporary or leased worker of, or, with respect to a limited liability company, a member of, any of the foregoing while acting within the scope of his or her duties as such.

BB. "Key executive" means the Chief Executive Officer, Chief Operating Officer, Chief Financial Officer, President, General Counsel, general partner or managing partner (if the "insured" is a partnership), managing member (if the "insured" is a limited liability company) or sole proprietor (if the "insured" is a sole proprietorship) of the "insured". A "key executive" also means any other person holding a title designated by the "first named insured", approved by the Insurer, and identified by endorsement to this Policy.

CC. "Legal defense expense" means reasonable legal costs, charges, and expenses, including expert charges, incurred by the "insured":

   1. In the investigation, adjustment or defense of "claims"; or,

   2. Solely with respect to those instances where the "insured" has secured the prior consent of the Insurer, except in the event of a "first-party claim" that results in "emergency response costs", in order to clarify the extent of, minimize, and effect resolution of, any obligation to incur "first-party remediation costs".

DD. "Loss" means:

   Coverage A.

   1. A monetary judgment, award or settlement of compensatory damages arising from "bodily injury", "property damage" or "remediation costs", including associated "extra damages";

   2. "Legal defense expense";

   3. "First-party remediation costs";

   4. "Emergency response costs";

   5. "Business interruption loss"; and

   6. "Catastrophe management costs".

   Coverage B.

   7. A monetary judgment, award or settlement of compensatory damages arising from "bodily injury", "property damage" or "remediation costs", including associated "extra damages";

   8. "Legal defense expense";

   9. "First-party remediation costs";

   10. "Emergency response costs"; and

   11. "Catastrophe management costs".

   Coverage C.

   12. A monetary judgment, award or settlement of compensatory damages arising from "bodily injury", "property damage" or "remediation costs", including associated "extra damages" and "legal defense expense"; and

13. "Catastrophe management costs".

<u>Supplemental Coverages</u>

Any other liability or first-party exposure insured pursuant to any Supplemental Coverage added by endorsement to this Policy.

EE. "Low-level radioactive waste" means waste that is radioactive but not classified as the following: high-level waste (spent nuclear fuel or the highly radioactive waste produced if spent fuel is reprocessed), uranium milling residues, and waste with greater than specified quantities of elements heavier than uranium.

FF. "Mediation" means a conciliatory, non-binding attempt to resolve a "claim" using a neutral, third-party facilitator.

GG. "Mixed waste" means waste containing both radioactive and hazardous components as defined pursuant to United States law within the Atomic Energy Act and the Resource Conservation and Recovery Act, as either may be amended.

HH. "Named insured" means the "first named insured" and any other person or entity specifically endorsed onto this Policy as a "named insured", if any. "Named insureds" shall maintain the same rights pursuant to this Policy as the "first named insured", except for those rights specifically: 1) reserved to the "first named insured" as defined herein; or 2) limited by endorsement to this Policy.

II. "Natural resource damage" means injury to, destruction of, or loss of, including the resulting loss of value of, fish, wildlife, biota, land, air, water, groundwater, drinking water supplies, and other such resources belonging to, managed by, held in trust by, appertaining to, or otherwise controlled by the United States of America (including the resources of the fishery conservation zone established by the Magnuson-Stevens Fishery Conservation and Management Act (16 U.S.C. § 1801 et. seq.)), any state, commonwealth or local government, or any Native American Tribe, or, if such resources are subject to a trust restriction on alienation, any members of any Native American Tribe, including the reasonable costs of assessing such injury, destruction or loss resulting therefrom.

JJ. "Non-owned disposal site" means:

1. Any treatment, storage, transfer, disposal or recycling site or facility located within the United States of America that has not at any time been owned or operated, in whole or in part, by any "insured", which receives, or has historically received, a "named insured's" waste for disposal; provided that such treatment, storage, transfer, disposal or recycling site or facility:

   a. Was properly permitted and licensed pursuant to "environmental law" to accept the "named insured's" waste at the time of such disposal by the Federal, state, commonwealth, municipal or other local government agencies or bodies with applicable jurisdiction;

   b. Was not owned or operated by any person, corporation or unincorporated association that was in bankruptcy at the time the "named insured's" waste was received for disposal; and

   c. Has not, prior to the time the "named insured's" waste was received for disposal, been identified on the United States EPA (CERCLA) National Priorities List or pursuant to any functional equivalent of that list made by Federal, state, commonwealth, municipal or other local government agency or body with applicable jurisdiction pursuant to "environmental law", or

2. Any treatment, storage, transfer, disposal or recycling site or facility specifically identified on a Schedule of Non-Owned Disposal Sites Endorsement attached to this Policy, if any.

KK. "Policy period" means:

1. The period of time specifically identified in Item 2. of the Declarations to this Policy; or,

2. Solely with respect to "covered locations" added to this Policy during the period of time specifically identified in Item 2. of the Declarations to the Policy, if any, the period of time following the effective date of such addition through the expiration date of the Policy identified in Item 2. of the Declarations to this Policy; or

3. Any shorter period of time resulting from the cancellation of this Policy.

LL. "Pollution condition" means:

1. "Illicit abandonment"; or

2. The discharge, dispersal, release, escape, migration, or seepage of any solid, liquid, gaseous or thermal irritant, contaminant, or pollutant, including soil, silt, sedimentation, smoke, soot, vapors, fumes, acids, alkalis, chemicals, electromagnetic fields (EMFs), hazardous substances, hazardous materials, waste

materials, "low-level radioactive waste", "mixed waste" and medical, red bag, infectious or pathological wastes, on, in, into, or upon land and structures thereupon, the atmosphere, surface water, or groundwater.

MM. "Property damage" means:

1. Physical injury to, or destruction of, tangible property of a third-party, including all resulting loss of use of that property;

2. Loss of use of tangible property of a third-party, that is not physically injured or destroyed;

3. Diminished value of tangible property owned by a third-party; or

4. "Natural resource damages".

"Property damage" does not mean "remediation costs".

NN. "Remediation costs" means expenses incurred to investigate, quantify, monitor, remove, dispose, treat, neutralize, or immobilize "pollution conditions" or "indoor environmental conditions" to the extent required by "environmental law" in the jurisdiction of such "pollution conditions" or "indoor environmental conditions".

OO. "Rental income" means the actual rental fees lost as a result of a "suspension" of a rented "covered location".

PP. "Responsible person" means any employee of an "insured" responsible for environmental affairs, control, or compliance at a "covered location", or any "key executive" of, officer or director of, or partner in, an "insured".

QQ. "Self-insured retention" means the largest applicable dollar amount among triggered coverage parts identified in Item 4. of the Declarations to this Policy, or as otherwise designated by endorsement to this Policy, if any.

RR. "Suspension" means that part of, or all of, a rented "covered location" is rendered untenantable for the purposes identified to the Insurer prior to the inception date of this Policy due to a "pollution condition" or "indoor environmental condition".

SS. "Terrorism" means activities against persons, organizations or property of any nature:

1. That involve the following or preparation for the following:

   a. Use or threat of force or violence; or

   b. Commission or threat of a dangerous act; or

   c. Commission or threat of an act that interferes with or disrupts an electronic, communication, information, or mechanical system; and

2. When one or both of the following applies:

   a. The effect is to intimidate or coerce a government or the civilian population or any segment thereof, or to disrupt any segment of the economy; or

   b. It appears that the intent is to intimidate or coerce a government, or to further political, ideological, religious, social or economic objectives or to express (or express opposition to) a philosophy or ideology.

TT. "Transportation" means the movement of an "insured's" waste, materials, goods or products to or from a "covered location" by automobile, aircraft, watercraft, railcar or other conveyance, including any associated loading or unloading thereof, by an "insured", or any third-party vendor engaged by an "insured" in the business of transporting property for hire, provided that any such movement, and associated loading and unloading activities, are performed beyond the boundaries of a "covered location".

UU. "Underground storage tank" means any tank and associated piping and appurtenances connected thereto which tank has more than ten percent (10%) of its volume below ground.

"Underground storage tank" does not mean:

1. Any flow-through process tank, including, but not limited to, a septic tank, oil/water separator, sump, or any stormwater or wastewater collection/treatment vessel or system; or

2. Any tank that is located below ground, provided that such tank is located on or above the floor of a basement of a building or on or above the floor of any shaft or tunnel.

VV. "War" means war, whether or not declared, civil war, martial law, insurrection, revolution, invasion, bombardment or any use of military force, usurped power or confiscation, nationalization or damage of property by any government, military or other authority.

## VI. EXCLUSIONS

This insurance shall not apply to:

### A. Asbestos

"Loss" arising out of or related to asbestos or asbestos-containing materials.

This exclusion shall not apply to:

1. Monetary judgments, awards or settlements of compensatory damages resulting from "bodily injury" or "property damage", or any associated "extra damages" or "legal defense expenses";

2. Monetary judgments, awards or settlements of compensatory damages resulting from "remediation costs", or any associated "extra damages" or "legal defense expense", arising out of asbestos or asbestos-containing materials discovered in soil or groundwater; and

3. "First-party remediation costs", "emergency response costs", "catastrophe management costs" or "business interruption loss", or any associated "legal defense expense", resulting from "first-party claims" arising out of asbestos or asbestos-containing materials discovered in soil or groundwater.

### B. Contractual Liability

"Loss" arising out of or related to liability of others assumed by any "insured" through contract or agreement, except if the liability would have attached to the "insured" in the absence of such contract or agreement.

This exclusion shall not apply to "environmental indemnity obligations".

### C. Criminal Fines and Criminal Penalties

"Loss" arising out of or related to criminal fines, criminal penalties or criminal assessments.

### D. Divested Property

"Loss" arising out of or related to a "pollution condition" on, at, under or migrating from, or "indoor environmental condition" at, any "covered location":

1. That had been sold, abandoned, or given away by any "insured", or was condemned (collectively hereinafter Divested), prior to the "policy period"; or

2. When such "pollution condition" or "indoor environmental condition" first commenced after the "covered location" had been Divested.

This exclusion shall not apply to any "pollution conditions" or "indoor environmental conditions" that first commenced, in whole or in part, prior to the effective date that any such "covered location" was Divested as identified on the Divested Properties Coverage Endorsement attached to this Policy, if any.

### E. Employers Liability

"Claims" arising out of or related to "bodily injury" to:

1. Any "insured" or any employee of its parent corporation, subsidiary or affiliate:

   a. Arising out of, or in the course of, employment by any "insured", its parent corporation, subsidiary or affiliate; or

   b. Performing duties related to the conduct of the business of any "insured", its parent corporation, subsidiary or affiliate.

2. The spouse, child, parent, brother or sister of any "insured" or employee of its parent corporation, subsidiary or affiliate as a consequence of Paragraph 1., above.

This exclusion applies:

1. Whether any "insured" may be liable as an employer or in any other capacity; and

2. To any obligation to share damages with or repay someone else who must pay damages because of such "bodily injury".

F.  First-Party Property Damage

"Loss" arising out of or related to damage to real or personal property owned by, leased to, loaned to, or rented by any "insured", or otherwise in the care, custody, or control of any "insured".

This exclusion shall not apply to "first-party remediation costs", "emergency response costs", "business interruption loss" and "catastrophe management costs".

G.  Fraud or Misrepresentation

"Loss" arising out of or related to:

1.  Fraudulent acts or material misrepresentations on the part of the "first named insured" made:

    a.  Within an Application to this Policy; or

    b.  During the Application or underwriting process prior to the inception date of this Policy,

    which would have affected the Insurer's decision to either issue this Policy, or issue this Policy and its endorsements pursuant to the financial terms identified in the Declarations to this Policy; or

2.  Fraudulent acts or material misrepresentations on the part of any "responsible person" during the "policy period".

H.  Insured's Internal Expenses

"Loss" arising out of or related to expenses incurred by any "insured" for services performed by its salaried staff and any employees.

This exclusion shall not apply to:

1.  "Emergency response costs", along with any associated "catastrophe management costs" incurred during that same seven (7) day period; or

2.  Any other costs, charges or expenses incurred with the prior approval of the Insurer at its sole discretion.

I.  Insured vs. Insured

"Claims" made by any "insured" against any other "insured".

This exclusion shall not apply to:

1.  "Claims" initiated by third-parties, including cross claims, counterclaims or claims for contribution by such parties against any "insured"; or

2.  "Claims" that arise out of an indemnification provided by one "insured" to another "insured" in an "environmental indemnity obligation".

J.  Intentional Non-Compliance

"Loss" arising out of or related to the intentional disregard of, or knowing, willful, or deliberate non-compliance with, any law, statute, regulation, administrative complaint, notice of violation, notice letter, instruction of any governmental agency or body, or any executive, judicial or administrative order, by, or at the direction of, any "responsible person".

K.  Known Conditions

"Loss" arising out of or related to "pollution conditions" or "indoor environmental conditions" in existence and reported to a "responsible person":

1.  Prior to the "policy period"; or,

2.  Solely with respect to "covered locations" added to this Policy during the period of time specifically identified in Item 2. of the Declarations to the Policy, if any, prior to the effective date of coverage for such "covered location",

and not affirmatively disclosed to the Insurer in an Application or supplemental underwriting materials provided to the Insurer to secure coverage for such "covered location" pursuant to this Policy.

L.  Lead-Based Paint

"Loss" arising out of or related to lead-based paint.

This exclusion shall not apply to:

1. Monetary judgments, awards or settlements of compensatory damages resulting from "bodily injury" or "property damage", or any associated "extra damages" or "legal defense expenses";

2. Monetary judgments, awards or settlements of compensatory damages resulting from "remediation costs" , or any associated "extra damages" or "legal defense expenses", arising out of lead-based paint discovered in soil or groundwater; and

3. "First-party remediation costs", "emergency response costs", "catastrophe management costs" or "business interruption loss", or any associated "legal defense expense", resulting from "first-party claims" arising out of lead-based paint discovered in soil or groundwater.

M. Material Change in Risk

"Loss" arising out of or related to a change in the use or operations at a "covered location" that materially increases the likelihood or severity of a "pollution condition", "indoor environmental condition", "claim" or "first-party claim" from the intended uses or operations identified:

1. By the "first named insured" for the Insurer in an Application or supplemental underwriting materials provided prior to the effective date of coverage for such "covered location", if any; or

2. Solely with respect to "covered locations" added to the Policy pursuant to an Automatic Acquisition and Due Diligence Endorsement attached to this Policy, if any, as part of the due diligence materials and supplemental underwriting materials provided to the Insurer as part of the notice required pursuant to that endorsement, if any.

This exclusion shall only apply to the "covered location" associated with the change in use or operations and shall not limit coverage for other "covered locations" to which this insurance applies.

N. Non-Owned Disposal Sites

"Loss" arising out of or related to "pollution conditions" on, at, under or migrating from any treatment, storage, disposal, transfer or recycling site or facility that is not a "non-owned disposal site".

O. Underground Storage Tanks

"Loss" arising out of or related to "pollution conditions" emanating from an "underground storage tank" located at a "covered location", when the existence of such "underground storage tank" was known to a "responsible person":

1. Prior to the "policy period"; or,

2. Solely with respect to "underground storage tanks" situated at "covered locations" added to this Policy during the "policy period", prior to the effective date of coverage for such "covered location".

This exclusion shall not apply to any "underground storage tank" that:

1. Is identified on the Schedule of Underground Storage Tanks Endorsement or Schedule of Covered Storage Tanks (Financial Responsibility) Endorsement attached to this Policy, if any; or

2. Has been removed or closed-in-place prior to the inception date of this Policy and such removal or closure was conducted in accordance with "environmental law".

P. Vehicle Damage

"Claims" or associated "legal defense expense" for "property damage" to any automobile, aircraft, watercraft, railcar or other conveyance utilized for "transportation".

Q. War or Terrorism

"Loss" arising out of or related to "pollution conditions" or "indoor environmental conditions" attributable, whether directly or indirectly, to any acts that involve, or that involve preparation for, "war" or "terrorism" regardless of any other cause or event that contributes concurrently or in any sequence to the injury or damage.

R. Workers' Compensation

"Loss" arising out of or related to any obligation of any "insured" pursuant to the Jones Act or any workers' compensation, unemployment compensation, or disability benefits law or related laws.

VII. REPORTING AND COOPERATION

A. Without limiting the specific requirements contained in any Insuring Agreement or any other exposure-specific reporting requirements contained within this Policy, the "insured" shall also see to it that the Insurer receives notice of any "claim" or "first-party claim", as soon as practicable, by one or more of the following:

1. Provide written notice to the address, fax number, or email address identified in Item 8.a. of the Declarations to this Policy; or

2. Provide verbal or electronic notice utilizing the Environmental Incident Alert 24-hour Emergency Response and Incident Reporting System by calling the telephone number identified in Item 8. of the Declarations to this Policy or by using the associated telephone web application, respectively.

Such notice should include reasonably detailed information as to:

1. The identity of the "insured", including contact information for an appropriate person to contact regarding the handling of the "claim" or "first-party claim";

2. The identity of the "covered location";

3. The nature of the "claim" or "first-party claim"; and

4. Any steps undertaken by the "insured" to respond to the "claim" or "first-party claim".

B. The "insured" must:

1. As soon as practicable, send the Insurer copies of any demands, notices, summonses or legal papers received in connection with any "claim";

2. Authorize the Insurer to obtain records and other information;

3. Cooperate with the Insurer in the investigation, settlement or defense of the "claim";

4. Assist the Insurer, upon the Insurer's request, in the enforcement of any right against any person or organization which may be liable to the "insured" because of "loss" to which this Policy may apply; and

5. Provide the Insurer with such information and cooperation as it may reasonably require.

C. No "insured" shall make or authorize an admission of liability or attempt to settle or otherwise dispose of any "claim", without the written consent of the Insurer. Nor shall any "insured" retain any consultants or "catastrophe management firms", or incur any "first-party remediation costs" or "catastrophe management costs" with respect to a "first-party claim", without the prior consent of the Insurer, except for "emergency response costs".

D. Upon the discovery of a "pollution condition" or "indoor environmental condition", the "insured" shall make every attempt to mitigate any loss and comply with applicable "environmental law". The Insurer shall have the right, but not the duty, to mitigate such "pollution conditions" or "indoor environmental condition" if, in the sole judgment of the Insurer, the "insured" fails to take reasonable steps to do so. In that event, any "remediation costs" or "catastrophe management costs" incurred by the Insurer shall be deemed incurred by the "insured", and shall be subject to the "self-insured retention" and Limits of Liability identified in the Declarations to this Policy.

For the purposes of fulfilling the notice requirements contained in the Insuring Agreements to this Policy, notice supplied pursuant to one or more of the verbal or electronic notice mechanisms specifically contemplated in Subsection A., above, or on the Declarations, shall constitute written notice to the Insurer.

VIII. EXTENDED REPORTING PERIOD

A. Provided the "first named insured" has not purchased any other insurance to replace this Policy, the "first named insured" shall be entitled to a basic "extended reporting period", and may purchase an optional supplemental "extended reporting period", following Cancellation, as described in Subsection A., Paragraph 1. of Section IX., GENERAL CONDITIONS, or nonrenewal of this Policy, in accordance with the terms and conditions described in Subsections B. through D., below.

B. "Extended reporting periods" shall not reinstate or increase any of the Limits of Liability. "Extended reporting periods" shall not extend the "policy period" or change the scope of coverage provided. A "claim" first made against an "insured" and reported to the Insurer within the basic "extended reporting period" or supplemental "extended reporting period", whichever is applicable, shall be deemed to have been made and reported on the last day of the "policy period". In addition, if an "insured" first discovers a "pollution condition" or "indoor environmental condition" during the "policy period" and reports such "first-party claim" to the Insurer within the basic "extended reporting period" or supplemental "extended reporting period", whichever is applicable, then

such "first-party claim" shall also be deemed to have been first discovered and reported on the last day of the "policy period".

C. The "first named insured" shall have a ninety (90) day basic "extended reporting period" without additional charge.

D. The "first named insured" shall also be entitled to purchase a supplemental "extended reporting period" of up to thirty-three (33) months for not more than two hundred percent (200%) of the full premium identified in Item 6. of the Declarations to this Policy, and any additional premiums resulting from coverage added during the "policy period". Such supplemental "extended reporting period" starts when the basic "extended reporting period" ends. The Insurer shall issue an endorsement providing a supplemental "extended reporting period" provided that the "first named insured":

   1. Makes a written request, to the address identified in Item 8.b. of the Declarations to this Policy, for such endorsement which the Insurer receives prior to the expiration of the "policy period"; and

   2. Pays the additional premium when due. If that additional premium is paid when due, the supplemental "extended reporting period" may not be cancelled, provided that all other terms and conditions of the Policy are met.

## IX. GENERAL CONDITIONS

### A. Cancellation

   1. This Policy may be cancelled only by the "first named insured", or through the "first named insured's" agent, by mailing to the Insurer at the address identified in Item 8.b. of the Declarations to this Policy, written notice stating when such cancellation shall be effective.

   2. This Policy may be cancelled by the Insurer for the following reasons:

      a. Non-payment of premium; or

      b. Fraud or material misrepresentation on the part of any "insured",

      by mailing to the "first named insured" at the "first named insured's" last known address, written notice stating when, not less than sixty (60) days thereafter, fifteen (15) days if cancellation is for non-payment of any unpaid portion of the premium, such cancellation shall be effective. The mailing of notice shall be sufficient proof of notice. The effective date and hour of cancellation stated in the notice shall be the end of the "policy period".

      Subparagraph 2.b., herein, shall apply only to that "insured" that engages in the fraud or misrepresentation. This exception shall not apply to any "insured" that is a parent corporation, subsidiary, employer of, or otherwise affiliated by ownership with, such "insured".

   3. In the event of cancellation, the premium percentage identified in Item 6. of the Declarations to this Policy shall be the minimum-earned premium upon the inception date of this Policy. Thereafter, the remaining unearned premium, if any, shall be deemed earned by the Insurer on a *pro rata* basis over the remainder of the "policy period". Any unearned premium amounts due the "first named insured" upon cancellation of this Policy shall be calculated on a *pro rata* basis and refunded within thirty (30) days of the effective date of cancellation.

### B. Inspection and Audit

To the extent of the "insured's" ability to provide such access, and with reasonable notice to the "insured", the Insurer shall be permitted, but not obligated, to inspect and sample the "covered locations". The "insured" shall have the concurrent right to collect split samples. Neither the Insurer's right to make inspections, the making of said inspections, nor any report thereon shall constitute an undertaking, on behalf of or for the benefit of the "insured" or others, to determine or warrant that such property or operations are safe or in compliance with "environmental law", or any other law.

The Insurer may examine and audit the "insured's" books and records during this "policy period" and extensions thereof and within three (3) years after the final termination of this Policy.

### C. Legal Action Against the Insurer

No person or organization other than an "insured" has a right pursuant to this Policy:

   1. To join the Insurer as a party or otherwise bring the Insurer into a suit against any "insured"; or

2.  To sue the Insurer in connection with this insurance unless all of the Policy terms have been fully complied with.

A person or organization may sue the Insurer to recover after an agreed settlement or on a final judgment against an "insured". However, the Insurer shall not be liable for amounts that are not payable pursuant to the terms of this Policy or that are in excess of the applicable Limit of Liability. An agreed settlement means a settlement and release of liability signed by the Insurer, the "insured", and the claimant or the claimant's legal representative.

D.  Bankruptcy

The insolvency or bankruptcy of any "insured", or any "insured's" estate, shall not relieve the Insurer of its obligations pursuant to this Policy. However, any such insolvency or bankruptcy of the "insured", or the "insured's" estate, shall not relieve the "insured" of its "self-insured retention" or deductible period obligations pursuant to this Policy. This insurance shall not replace any other insurance to which this Policy is excess, nor shall this Policy drop down to be primary, in the event of the insolvency or bankruptcy of any underlying insurer.

E.  Subrogation

In the event of any payment pursuant to this Policy by the Insurer, the Insurer shall be subrogated to all of the rights of recovery against any person or organization, and the "insured" shall execute and deliver instruments and papers and do whatever else is necessary to secure such rights. All "insureds" shall do nothing to prejudice such rights. Any recovery as a result of subrogation proceedings arising pursuant to this Policy shall accrue first to the "insureds" to the extent of any payments in excess of the limit of coverage; then to the Insurer to the extent of its payment pursuant to the Policy; and then to the "insured" to the extent of the "self-insured retention". Expenses incurred in such subrogation proceedings shall be apportioned among the interested parties in the recovery in the proportion that each interested party's share in the recovery bears to the total recovery.

F.  Representations

By accepting this Policy, the "first named insured" agrees that:

1.  The statements in the Declarations, schedules and endorsements to, and Application for, this Policy are accurate and complete;

2.  Those statements and representations constitute warranties that the "first named insured" made to the Insurer; and

3.  This Policy has been issued in reliance upon the "first named insured's" warranties.

G.  Separation of Insureds

Except with respect to the Limits of Liability, Cancellation condition 2.a., and any applicable exclusions, this Policy applies:

1.  As if each "named insured" were the only "insured"; and

2.  Separately to each "named insured" against whom a "claim" is made,

and any fraud, misrepresentation, breach of a condition or violation of any duty (hereinafter Breach) by an "insured" shall not prejudice coverage for any "named insured" pursuant to this Policy, provided that: 1) such "named insured" did not participate in, know of or assist in such Breach; and 2) such "named insured" is not a parent, subsidiary, partner, member, director, officer of, employer of or otherwise affiliated with, the "insured" that committed such Breach.

H.  Other Insurance

If other valid and collectible insurance is available to any "insured" covering "loss" also covered by this Policy, other than a policy that is specifically written to apply in excess of this Policy, the insurance afforded by this Policy shall apply in excess of and shall not contribute with such other insurance.

I.  Changes and Assignment

Notice to or knowledge possessed by any person shall not effect waiver or change in any part of this Policy or estop the Insurer from asserting any right pursuant to the terms of this Policy. The terms, definitions, conditions, exclusions and limitations of this Policy shall not be waived or changed, and no assignment of any interest in this Policy shall bind the Insurer, except as provided by endorsement and attached to this Policy.

J.  Headings

The descriptions in the headings and sub-headings of this Policy are inserted solely for convenience and do not constitute any part of the terms or conditions hereof.

K. Consent

Where the consent of the Insurer, or an "insured", is required pursuant to this Policy, such consent shall not be unreasonably withheld, delayed, conditioned, or denied.

# SCHEDULE OF ADDITIONAL INSUREDS (BROAD – WITH BY CONTRACT) ENDORSEMENT

| Named Insured<br>The Administrators of the Tulane Educational Fund | | | Endorsement Number<br>001 |
|---|---|---|---|
| Policy Symbol<br>PPL | Policy Number<br>G71496776 001 | Policy Period<br>02/27/2019 to 02/27/2022 | Effective Date of Endorsement<br>02/27/2019 |
| Issued By (Name of Insurance Company)<br>Illinois Union Insurance Company | | | |

Insert the policy number. The remainder of the information is to be completed only when this endorsement is issued subsequent to the preparation of the policy.

## THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

The "insured" and the Insurer hereby agree to the following changes to this Policy:

The persons or entities within the scope of the description contained in the Schedule of Additional Insureds, below, are "additional insureds" pursuant to this Policy, but solely with respect to their vicarious liability arising out of any "named insured's" direct liability for a "pollution condition" on, at, under or migrating from, or an "indoor environmental condition" at, a "covered location" to which this insurance applies.

### Schedule of Additional Insureds

1. All corporations, limited partnerships, limited liability partnerships, limited liability companies or other business entities or associations, other than joint ventures and general partnerships, as now or may hereinafter exist during the "policy period", in which a "named insured" maintains an ownership interest;

2. All joint ventures or general partnerships, as now or may hereafter exist during the "policy period", to which a "named insured" is a party, but only to the extent of the "named insured's" legal responsibility for the vicarious liability of such joint venture or general partnership"; and

3. All counterparties of a "named insured" where such status as an "additional insured" is required by a written contract that has been executed between the "named insured" and such counterparty prior to the relevant "claim" or "first-party claim" to which this insurance applies.

All other terms and conditions of this Policy remain unchanged.

_____
Authorized Representative

# SCHEDULE OF NAMED INSUREDS ENDORSEMENT

| Named Insured | Endorsement Number |
|---|---|
| The Administrators of the Tulane Educational Fund | 002 |

| Policy Symbol | Policy Number | Policy Period | Effective Date of Endorsement |
|---|---|---|---|
| PPL | G71496776 001 | 02/27/2019 to 02/27/2022 | 02/27/2019 |

| Issued By (Name of Insurance Company) |
|---|
| Illinois Union Insurance Company |

Insert the policy number. The remainder of the information is to be completed only when this endorsement is issued subsequent to the preparation of the policy.

## THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

The "insured" and the Insurer hereby agree to the following changes to this Policy:

The persons or entities identified in the Schedule of Named Insureds, below, are "named insureds" pursuant to this Policy.

### Schedule of Named Insureds

1. Riversphere One, LLC
2. Riversphere Two, LLC
3. Square 245, LLC
4. Tulane Cary Land, LLC
5. Tulane Cary Working Interests, LLC
6. Tulane Cary Royalty Interests, LLC

All other terms and conditions of this Policy remain unchanged.

_____
Authorized Representative

# ASBESTOS AND/OR LEAD-BASED PAINT LIMITATIONS ENDORSEMENT

| Named Insured<br>The Administrators of the Tulane Educational Fund | | Endorsement Number<br>003 |
|---|---|---|
| Policy Symbol<br>PPL | Policy Number<br>G71496776 001 | Policy Period<br>02/27/2019 to 02/27/2022 | Effective Date of Endorsement<br>02/27/2019 |

| Issued By (Name of Insurance Company)<br>Illinois Union Insurance Company |
|---|

Insert the policy number. The remainder of the information is to be completed only when this endorsement is issued subsequent to the preparation of the policy.

## THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

Solely to the extent that there is an **X** indicated in either Section **I.** or Section **II.** of this Endorsement, below, the "insured" and the Insurer hereby agree to the following corresponding changes to this Policy:

**I.** ☒ **Asbestos Sublimits of Liability**

**Per Asbestos Condition Sublimit of Liability: $** 10,000,000

**Aggregate Asbestos Conditions Sublimit of Liability: $** 20,000,000

The amount that the Insurer shall pay pursuant to this Policy for "loss" arising out of or related to "pollution conditions" involving, in whole or in part, asbestos or asbestos-containing materials (hereinafter Asbestos Conditions) is subject to the Per Asbestos Condition Sublimit of Liability and Aggregate Asbestos Conditions Sublimit of Liability identified above.  Therefore, the Per Asbestos Condition Sublimit of Liability, above, shall be the maximum amount the Insurer shall pay for all "loss" arising out of or related to the same, continuous, repeated, or related Asbestos Condition to which this insurance applies.  Moreover, the Aggregate Asbestos Conditions Sublimit of Liability, above, shall be the maximum amount the Insurer shall pay for all "loss" arising out of or related to all Asbestos Conditions to which this insurance applies.  These Sublimits of Liability are subject to, and payments made within these Sublimits of Liability shall erode, the Limits of Liability identified in Item **3.** of the Declarations to this Policy, along with any other applicable exposure-specific Limits or Sublimits of Liability added by endorsement hereto.  Under no circumstance shall the Insurer be liable to pay any amount in excess of any applicable Limit or Sublimit of Liability.

**II.** ☒ **Lead-Based Paint Sublimits of Liability**

**Per Lead Condition Sublimit of Liability: $** 10,000,000

**Aggregate Lead Conditions Sublimit of Liability: $** 20,000,000

The amount that the Insurer shall pay pursuant to this Policy for "loss" arising out of or related to "pollution conditions" involving, in whole or in part, lead-based paint (hereinafter Lead Conditions) is subject to the Per Lead Condition Sublimit of Liability and Aggregate Lead Conditions Sublimit of Liability identified above. Therefore, the Per Lead Condition Sublimit of Liability, above, shall be the maximum amount the Insurer shall pay for all "loss" arising out of or related to the same, continuous, repeated, or related Lead Condition to which this insurance applies.  Moreover, the Aggregate Lead Conditions Sublimit of Liability, above, shall be the maximum amount the Insurer shall pay for all "loss" arising out of or related to all Lead Conditions to which this insurance applies.  These Sublimits of Liability are subject to, and payments made within these Sublimits of Liability shall erode, the Limits of Liability identified in Item **3.** of the Declarations to this Policy, along with any other applicable exposure-specific Limits or Sublimits of Liability added by endorsement hereto. Under no circumstance shall the Insurer be liable to pay any amount in excess of any applicable Limit or Sublimit of Liability.

**III.** ☐ **Location-Specific Endorsement Application**

The modifications identified in Sections **I.** and/or **II.** of this Endorsement only apply to "pollution conditions" on, at, under or migrating from the "covered locations" specifically identified in the Schedule of Covered Locations, below:

**<u>Schedule of Covered Locations</u>**

All other terms and conditions of this Policy remain unchanged.

_____
Authorized Representative

# AUTOMATIC ACQUISITION AND DUE DILIGENCE (FUNGI - NO LEASE DUE DILIGENCE) ENDORSEMENT

| Named Insured | | | Endorsement Number |
|---|---|---|---|
| The Administrators of the Tulane Educational Fund | | | 004 |

| Policy Symbol | Policy Number | Policy Period | Effective Date of Endorsement |
|---|---|---|---|
| PPL | G71496776 001 | 02/27/2019 to 02/27/2022 | 02/27/2019 |

| Issued By (Name of Insurance Company) |
|---|
| Illinois Union Insurance Company |

Insert the policy number. The remainder of the information is to be completed only when this endorsement is issued subsequent to the preparation of the policy.

## THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

The "insured" and the Insurer hereby agree to the following changes to this Policy:

Section IX., GENERAL CONDITIONS, of this Policy is hereby amended by addition of the following:

### Automatic Acquisition and Due Diligence

1. It is understood and agreed that, for an additional premium amount, any property acquired or leased by a "named insured" during the "policy period" shall be added to the Policy as a "covered location" upon the closing date of such acquisition or the effective date of such lease, respectively; provided that the Insurer receives written notice of the property acquisition or lease within ninety (90) days of closing date of such acquisition or the effective date of such lease, respectively, and, with respect to property acquisitions, only, the "named insured" completes an environmental due diligence assessment of the property prior to such acquisition consistent with either Subparagraph a. or b., below:

    a. The "named insured" commissions and receives a Phase I Environmental Site Assessment report on the property that is performed by a qualified environmental consultant in accordance with the ASTM Standard for Environmental Site Assessments: Phase I Environmental Site Assessment Process in effect as of the inception of this Policy (hereinafter Phase I Report), along with:

       1) A Visual Moisture Assessment Process Report on the property that has been conducted by a qualified environmental consultant in accordance with ASTM Standard E3026, *Guide for Readily Observable Moisture Affected Materials and Conditions Conducive to Elevated Moisture in Commercial Buildings: Visual Moisture Assessment Process* in effect as of the inception of this Policy (hereinafter VMAP Report); or

       2) A Property Condition Assessment Process Report on the property that has been conducted by a qualified professional in accordance with ASTM Standard E2018-15, *Standard Guide for Property Condition Assessments: Baseline Property Condition Assessment Process* in effect as of the inception of this Policy (hereinafter PCAP Report).

    b. The "named insured" receives a Phase I Report on the property that has been conducted by a qualified environmental consultant for a third-party, along with:

       1) A VMAP Report on the property that has been conducted by a qualified environmental consultant for a third-party; or

       2) A PCAP Report on the property that has been conducted by a qualified professional for a third-party,

       and that the consultant and/or professional, as applicable, responsible for the reports has provided the "named insured" with written confirmation that the "named insured" is

entitled to rely on the conclusions of the reports as if the assessment had been performed on its behalf.

2. If the Phase I Report does not identify any Recognized Environmental Conditions, as defined by the ASTM Standard for Environmental Site Assessments: Phase I Environmental Site Assessment Process in effect as of the inception of this Policy (hereinafter RECs), and the MVAP Report or PCAP Report, as applicable, does not identify "fungi", *legionella pneumophila* or conditions conducive to the growth of "fungi" or *legionella pneumophila* (hereinafter Conducive Conditions) the property shall automatically be added to the Policy as an additional "covered location" effective on the date the "named insured" acquired the property.

3. If the Phase I Report identifies any RECs, then, before the property may be added to the Policy as a "covered location", the "named insured" must complete a Phase II Environmental Site Assessment. Thereafter, the Insurer shall have thirty (30) days to review and approve the Phase II Environmental Assessment report. Said approval shall not be unreasonably withheld, but the Insurer reserves the right to limit coverage with respect to any RECs identified at the property, and any "pollution conditions" or "indoor environmental conditions" identified during further investigation of such RECs. Upon such approval, the Insurer shall provide a written endorsement to the "first named insured" confirming the effective date that the property has been added to the Policy as an additional "covered location", and describing the extent of the coverage being afforded with respect to the RECs and associated "pollution conditions" or "indoor environmental conditions" identified at the property.

4. If the VMAP Report or PCAP Report, as applicable, identifies "fungi", *legionella pneumophila* or Conducive Conditions, then, before coverage may be afforded for "indoor environmental conditions" at the property, the "named insured" must complete additional assessment or remediation activities to address such "fungi", *legionella pneumophila* or Conducive Conditions. Thereafter, the Insurer shall have thirty (30) days to review and approve the results of the additional assessment and/or remediation activities. Said approval shall not be unreasonably withheld, but the Insurer reserves the right to limit coverage with respect to "indoor environmental conditions" or any identified Conducive Conditions at the property. Upon such approval, the Insurer shall provide a written endorsement to the "first named insured" confirming the effective date and extent of the coverage being afforded with respect to "indoor environmental conditions" or any identified Conducive Conditions at the property.

5. Any property first leased during the "policy period" by the "first named insured", or any "named insured" that is affiliated by ownership with the "first named insured", shall also automatically be added to the Policy as a "covered location" upon the effective date of any such lease. However, no coverage shall be afforded pursuant to this Policy for "pollution conditions" on, at, under, or migrating from, or "indoor environmental conditions" at, such "covered location", which first commenced, in whole or in part, prior to the effective date of such lease agreement.

6. Additional premium for "covered locations" added to this Policy pursuant to Paragraphs 1. through 5., above, shall be calculated using the following rates:

### Additional Premium Schedule

| Acquired Property Type | Additional Premium |
|---|---|
| Office, Administrative, Educational, Habitation, Vacant, Undeveloped or Mineral Rights (Year 1) | $800 (subject to a minimum premium of $N/A ) |
| Office, Administrative, Educational, Habitation, Vacant, Undeveloped or Mineral Rights (Year 2) | $400 (subject to a minimum premium of $N/A ) |

| | |
|---|---|
| Office, Administrative, Educational, Habitation, Vacant, Undeveloped or Mineral Rights (Year 3) | $200  (subject to a minimum premium of $N/A ) |
| Commercial or Retail (Year 1) | $1,000  (subject to a minimum premium of $N/A ) |
| Commercial or Retail (Year 2) | $500  (subject to a minimum premium of $N/A ) |
| Commercial or Retail (Year 3) | $250  (subject to a minimum premium of $N/A ) |
| Light Industrial (Year 1) | $2,000  (subject to a minimum premium of $N/A ) |
| Light Industrial (Year 2) | $1,000  (subject to a minimum premium of $N/A ) |
| Light Industrial (Year 3) | $500  (subject to a minimum premium of $N/A ) |

<u>In the event a property of a type not described in the Additional Premium Schedule, above, is acquired or leased by a "named insured", the terms and conditions of this Subsection shall not apply.</u>

All other terms and conditions of this Policy remain unchanged.


_____
Authorized Representative

# BIOTERRORISM COVERAGE ENDORSEMENT

| Named Insured | | | Endorsement Number |
|---|---|---|---|
| The Administrators of the Tulane Educational Fund | | | 005 |

| Policy Symbol | Policy Number | Policy Period | Effective Date of Endorsement |
|---|---|---|---|
| PPL | G71496776 001 | 02/27/2019 to 02/27/2022 | 02/27/2019 |

| Issued By (Name of Insurance Company) |
|---|
| Illinois Union Insurance Company |

Insert the policy number. The remainder of the information is to be completed only when this endorsement is issued subsequent to the preparation of the policy.

## THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

Solely with respect to coverage afforded for "pollution conditions" or "indoor environmental conditions" pursuant to this Policy, which first commence, in their entirety, during the "policy period", the "insured" and the Insurer agree to the following changes to this Policy:

I.    Section V., DEFINITIONS, Subsection Z., of this Policy is hereby amended by addition of the following:

"Indoor environmental condition" also means the illicit and intentional discharge, dispersal or release by a third-party of a "bioterrorism constituent" in a building or structure, or the ambient air within such building or structure, without an "insured's" consent.

II.   Section V., DEFINTIONS, of this Policy is hereby amended by addition of the following:

"Bioterrorism constituents" means bacteria, viruses or other causative agents, as defined by the United States Center for Disease Control, whether such bacteria, viruses or other causative agents are living or not, provided such materials were deliberately released, discharged or dispersed intentionally by a third-party to this Policy.

III.  Notwithstanding the foregoing changes to this Policy, the "insured and the Insurer agree that any coverage afforded pursuant to this Endorsement is explicitly qualified by the coverage limitations contained in Section VI., EXCLUSIONS, Subsection Q., War or Terrorism, of this Policy, as modified by any endorsement attached to this Policy.

IV.   If this "policy period" extends beyond December 31, 2020, please note that the TRIA premium, above, is premised on the parties' assumption that TRIA will later be extended through the end of the "policy period", thereby mandating that Insurer make available coverage for "certified acts of terrorism" for the entire "policy period".  In the event that TRIA is not extended beyond December 31, 2020, or otherwise expires at some point during the "policy "period", the Insurer will refund the unearned portion of our TRIA premium to the insured on a pro-rata basis.  In the event that new TRIA extension or replacement legislation is enacted requiring the Insurer to offer coverage for terrorism that is materially different than the coverage requirements included in the current version of TRIA that expires on December 31, 2020, the Insurer reserves the right to re-price and prospectively modify terrorism coverage to conform with the statutory requirements and risks presented by any such new legislation.

All other terms and conditions of this Policy remain unchanged.

_____
Authorized Representative

# BUSINESS INTERRUPTION COVERAGE LIMITATIONS ENDORSEMENT

| Named Insured<br>The Administrators of the Tulane Educational Fund | | | Endorsement Number<br>006 |
|---|---|---|---|
| Policy Symbol<br>PPL | Policy Number<br>G71496776 001 | Policy Period<br>02/27/2019 to 02/27/2022 | Effective Date of Endorsement<br>02/27/2019 |
| Issued By (Name of Insurance Company)<br>Illinois Union Insurance Company | | | |

Insert the policy number. The remainder of the information is to be completed only when this endorsement is issued subsequent to the preparation of the policy.

## THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

<u>Solely to the extent that there is an X indicated in Sections I., II. and/or III. of this Endorsement, below,</u> the "insured" and the Insurer hereby agree to the following changes to this Policy:

I.  [X] <u>Sublimits of Liability</u>

Per Pollution Condition or Indoor Environmental Condition Sublimit of Liability: $ 10,000,000

Aggregate Pollution Conditions or Indoor Environmental Conditions Sublimit of Liability: $ 20,000,000

The amount that the Insurer shall pay pursuant to this Policy for "business interruption loss" arising out of or related to "pollution conditions" or "indoor environmental conditions" is subject to the Per Pollution Condition or Indoor Environmental Condition Sublimit of Liability and Aggregate Pollution Conditions or Indoor Environmental Conditions Sublimit of Liability identified above. Therefore, the Per Pollution Condition or Indoor Environmental Condition Sublimit of Liability, above, shall be the maximum amount the Insurer shall pay for all "business interruption loss" arising out of or related to the same, continuous, repeated, or related "pollution condition" or "indoor environmental condition" to which this insurance applies. Moreover, the Aggregate Pollution Conditions or Indoor Environmental Conditions Sublimit of Liability, above, shall be the maximum amount the Insurer shall pay for all "business interruption loss" arising out of or related to all "pollution conditions" or "indoor environmental conditions" to which this insurance applies. These Sublimits of Liability are subject to, and payments made within these Sublimits of Liability shall erode, the Limits of Liability identified in Item 3. of the Declarations to this Policy, along with any other applicable exposure-specific Limits or Sublimits of Liability added by endorsement hereto. Under no circumstance shall the Insurer be liable to pay any amount in excess of any applicable Limit or Sublimit of Liability.

II.  [ ] <u>Exclusion</u>

a.  Section V., DEFINITIONS, Subsection DD., of this Policy is hereby modified by deletion of the phrase "business interruption loss"; and

b.  Section VI., EXCLUSIONS, of this Policy is hereby amended to include the addition of the following:

This insurance also shall not apply to "business interruption loss".

III.  [X] <u>Location-Specific Endorsement Application</u>

Solely to the extent that there is an X indicated in this Section III., above, the "insured" and the Insurer hereby agree that the modifications identified in Sections I. and/or II. of this Endorsement only apply to "pollution conditions" or "indoor environmental conditions" associated with the "covered locations" specifically identified in the Schedule of Covered Locations, below:

## Schedule of Covered Locations

1.  Applies to all covered locations in the 2018_SOV04022018.xlsx Excel spreadsheet on file with the Insurer except for any specific activities related to any/all "covered locations" at the Tulane National Primate Research Center located at 18703 Three Rivers Road, Covington, LA 70433 including any operations performed that are related to the Tulane National Primate Research Center that may be performed at any "covered location", as coverage is not being considered.

All other terms and conditions of the Policy remain unchanged.

_____
Authorized Representative

# COVERAGE LIMITATION AND REOPENER ENDORSEMENT

| Named Insured<br>The Administrators of the Tulane Educational Fund | | | Endorsement Number<br>007 |
|---|---|---|---|
| Policy Symbol<br>PPL | Policy Number<br>G71496776 001 | Policy Period<br>02/27/2019 to 02/27/2022 | Effective Date of Endorsement<br>02/27/2019 |
| Issued By (Name of Insurance Company)<br>Illinois Union Insurance Company | | | |

Insert the policy number. The remainder of the information is to be completed only when this endorsement is issued subsequent to the preparation of the policy.

## THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

The "insured" and the Insurer hereby agree to the following changes to this Policy:

I. <u>COVERAGE LIMITATION:</u>

[ ] monetary awards, judgments or settlements of compensatory damages for "bodily injury", including associated "extra damages" and "legal defense expense"

[ ] monetary awards, judgments or settlements of compensatory damages for "property damage", including associated "extra damages" and "legal defense expense"

[X] monetary awards, judgments or settlements of compensatory damages for "remediation costs", including associated "extra damages" and "legal defense expense"

[X] "business interruption loss"

[X] "first-party remediation costs", including associated "legal defense expense"

[X] "emergency response costs", including associated "legal defense expense"

[X] "catastrophe management costs"

[X] "diminution in value"*

[X] "loss of rental income"*

*to the extent applicable due to such Supplemental Coverage being added to this Policy by endorsement hereto.*

Coverage is not afforded pursuant to this Policy for any of the "loss" exposures indicated with an X above that are in any way associated with "pollution conditions" or "indoor environmental conditions" [X] affirmatively disclosed to the Insurer in an Application for coverage pursuant to this Policy and/or [X] identified in the Schedule of Limited Coverage, below.

II. <u>RE-OPENER OF COVERAGE:</u>

In the event that "closure" is achieved with respect any of the "pollution conditions" or "indoor environmental conditions" addressed in Section I., above, then coverage limitations set forth in Section I., above, may be deleted with respect to the specific "pollution condition" or 'indoor environmental condition" that achieves such "closure". The coverage limitations identified in Section I., above, can only be deleted by endorsement to this Policy issued by the Insurer.

III. For the purposes of this Endorsement, "closure" shall mean that the "insured" obtains a written No Further Action determination, or otherwise achieves closure in accordance with the regulatory requirements applicable to the subject "pollution conditions" or "indoor environmental conditions", which has been confirmed in writing by the regulatory agency or authority with jurisdiction over the "pollution conditions" or "indoor environmental conditions".

If such "closure" is contingent upon: 1) certain additional actions with respect to the subject "pollution conditions" or "indoor environmental conditions" in order to be effective; or 2) on the use of institutional or engineering controls in effect at a "covered location", then any such additional actions must be completed in order for coverage to be effective pursuant to this Endorsement, and such coverage shall be contingent upon the continued maintenance of said engineering controls and the continued use of the "covered location" in a manner consistent with said institutional control, as applicable, during the "policy period" or any "extended reporting period".

## SCHEDULE OF LIMITED COVERAGE

1.  3rd Party BI/PD give-back.

2.  SVOCs and Heavy Metals on, at, under or migrating from the Carnizaro River Front Property, New Orleans, LA, along with the daughter or degradation byproducts thereof, or additives thereto, along with any "pollution conditions" discovered during the course of further investigation or remediation activities performed at that "covered location".

All other terms and conditions of this Policy remain unchanged.

_____
Authorized Representative

# COVERED LOCATION AMENDATORY (INADVERTENTLY OMITTED LOCATIONS — NEW CONDITIONS ONLY) ENDORSEMENT

| Named Insured<br>The Administrators of the Tulane Educational Fund | | | Endorsement Number<br>008 |
|---|---|---|---|
| Policy Symbol<br>PPL | Policy Number<br>G71496776 001 | Policy Period<br>02/27/2019 to 02/27/2022 | Effective Date of Endorsement<br>02/27/2019 |
| Issued By (Name of Insurance Company)<br>Illinois Union Insurance Company | | | |

Insert the policy number. The remainder of the information is to be completed only when this endorsement is issued subsequent to the preparation of the policy.

## THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

The "insured" and the Insurer hereby agree to the following changes to this Policy:

I.   Section V., DEFINITIONS, Subsection K., of this Policy is hereby amended by addition of the following:

"Covered Location" also means any location that was: 1) inadvertently omitted from the 2018_SOVO4O22O18.xlsx and Tulane Ou ; and 2) owned, operated, managed or leased as of the inception date identified in Item 2. of the Declarations to this Policy (hereinafter Inception Date), provided that, notwithstanding any more general retroactive date identified in Item 5. of the Declarations, the retroactive date applicable to such inadvertently omitted locations shall be the Inception Date.  As such, no coverage shall be afforded for "pollution conditions" on, at, under or migrating from, or "indoor environmental conditions" at, such "covered locations" to the extent that they commenced, in whole or in part, prior to the Inception Date.

II.   [X] Inadvertently Omitted Locations Sublimit

Per Condition Sublimit of Liability: $10,000,000

Aggregate Conditions Sublimit of Liability:  $10,000,000

Solely to the extent that there is an X indicated in this Section II., above, the amount that the Insurer shall pay pursuant to this Policy for all of the "loss" exposures specifically indicated below that arise out of "pollution conditions" on, at, under or migrating from, or "indoor environmental conditions" at, the "covered locations" contemplated in this Endorsement is subject to the Per Condition Sublimit of Liability and Aggregate Conditions Sublimit of Liability identified above.

### Identified Exposures

[X] monetary awards, judgments or settlements of compensatory damages for "bodily injury", including associated "extra damages" and "legal defense expense"

[X] monetary awards, judgments or settlements of compensatory damages for "property damage", including associated "extra damages" and "legal defense expense"

[X] monetary awards, judgments or settlements of compensatory damages for "remediation costs", including associated "extra damages" and "legal defense expense"

[X] "business interruption loss"

[X] "first-party remediation costs", including associated "legal defense expense"

[X] "emergency response costs", including associated "legal defense expense"

[X] "catastrophe management costs"

[X] "diminution in value"*

[X] "loss of rental income"*

*to the extent applicable due to such Supplemental Coverage being added to this Policy by endorsement hereto.

These Sublimits of Liability shall be subject to, and payments made within these Sublimits of Liability shall erode, the Limits of Liability identified in Item 3. of the Declarations to this Policy, along with any other applicable exposure-specific Limits or Sublimits of Liability added by endorsement hereto. Under no circumstance shall the Insurer be liable to pay any amount in excess of any applicable Limit or Sublimit of Liability.

III. ☒ <u>Inadvertently Omitted Locations Self-Insured Retention</u>

Solely to the extent that there is an X indicated in this Section III., above, and notwithstanding anything identified in Item 4. of the Declarations to this Policy that might be construed to the contrary, $250,000 shall be the "self-insured retention" applicable to each and every "pollution condition" on, at, under or migrating from, or "indoor environmental condition" at, the "covered locations" contemplated in this Endorsement.

All other terms and conditions of this Policy remain unchanged.

_____
Authorized Representative

# COVERED OPERATIONS COVERAGE (SCHEDULED) ENDORSEMENT

| Named Insured | | Endorsement Number |
|---|---|---|
| The Administrators of the Tulane Educational Fund | | 009 |

| Policy Symbol | Policy Number | Policy Period | Effective Date of Endorsement |
|---|---|---|---|
| PPL | G71496776 001 | 02/27/2019 to 02/27/2022 | 02/27/2019 |

| Issued By (Name of Insurance Company) |
|---|
| Illinois Union Insurance Company |

Insert the policy number. The remainder of the information is to be completed only when this endorsement is issued subsequent to the preparation of the policy.

## THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

The "insureds" and the Insurer hereby agree to the following changes to this Policy:

I.   Section I., INSURING AGREEMENTS, of this Policy is hereby amended by addition of the following:

### SUPPLEMENTAL COVERAGE - COVERED OPERATIONS

"Claims" and "first-party claims" arising out of a "pollution condition" or "indoor environmental condition" resulting from "covered operations", provided the "claim" is first made, or the "insured" first discovers such "pollution condition" or "indoor environmental condition", during the "policy period". Any such "claim" or "first-party claim" must be reported to the Insurer, in writing, during the "policy period" or within thirty (30) days after the expiration of the "policy period", or during any applicable "extended reporting period".

The coverage afforded pursuant to this Supplemental Coverage shall only apply to "pollution conditions" or "indoor environmental conditions" that first commence, in their entirety, on or after the Retroactive Date identified below and prior to the expiration of the "policy period".

Retroactive Date:  09/09/2014

II.  Solely with respect to the coverage afforded pursuant to this Supplemental Coverage, the following additional provisions apply:

### Limits of Liability and Self-Insured Retention

Per Operations Condition Sublimit of Liability: $ 1,000,000

Aggregate Operations Conditions Sublimit of Liability:  $1,000,000

The amount that the Insurer shall pay pursuant to this Policy for "loss" for coverage afforded pursuant to this Endorsement shall be subject to the Per Operations Condition Sublimit of Liability and Aggregate Operations Conditions Sublimit of Liability identified above. Therefore, the Per Operations Condition Sublimit of Liability, above, shall be the maximum amount the Insurer shall pay for all "loss" arising out of or related to the same, continuous, repeated, or related "pollution condition" or "indoor environmental condition" resulting from "covered operations" to which this insurance applies. Moreover, the Aggregate Operations Conditions Sublimit of Liability, above, shall be the maximum amount the Insurer shall pay for all "loss" arising out of or related to all "pollution conditions" and "indoor environmental conditions" resulting from "covered operations" to which this insurance applies. These Sublimits of Liability are subject to, and payments made within these Sublimits of Liability shall erode, the Limits of Liability identified in Item 3. of the Declarations to this Policy, along with any other applicable exposure-specific Limits or Sublimits of Liability added by endorsement hereto. Under no circumstance shall the Insurer be liable to pay any amount in excess of any applicable Limit or Sublimit of Liability.

Per Operations Condition Self-insured Retention: $ 250,000

Notwithstanding anything identified in Item 4. of the Declarations to this Policy that might be construed to the contrary, the Per Operations Condition Self-Insured Retention, above, shall be the "self-insured retention" applicable to any coverage provided pursuant to this Policy for each "pollution condition" or "indoor environmental condition" resulting from "covered operations" to which this insurance applies.

III. Section V., DEFINITIONS, of this Policy is hereby amended by addition of the following:

"Covered operations" means the following scheduled services performed by or on behalf of a "named insured" outside of the physical boundaries of a "covered location".

1.      Collection of air and soil samples at the Hollygrove Housing Location through the use of non-mechanical devices for the soil sampling, by Jeffrey Wickland, PhD, who is employed at the Tulane University School of Public Health and Tropical Medicine, Department of Global Environmental Health Services, as presented in the Cooperative Agreement between the City of New Orleans and "The Administrators of the Tulane Educational Fund", executed on September 2014.

"Covered operations" does not mean "transportation".

IV. Solely with respect to the coverage afforded pursuant to this Supplemental Coverage, Section V., DEFINITIONS, Subsections M. and DD., of this Policy are hereby deleted in their entirety and replaced with the following:

13. "Emergency response costs" means "first-party remediation costs" incurred within seven (7) days following the discovery of a "pollution condition" or "indoor environmental condition" by a "responsible person" in order to abate or respond to an imminent and substantial threat to human health or the environment arising out of:

1.   A "pollution condition" or "indoor environmental condition" on, at, under or migrating from a "covered location";

2.   A "pollution condition" or "indoor environmental condition" resulting from "covered operations"; or

3.   A "pollution condition" resulting from "transportation",

provided such "emergency response costs" are reported to the Insurer within fourteen (14) days of when that "responsible person" first became aware of such "pollution condition" or "indoor environmental condition".

DD.  Loss" means:

1.   A monetary judgment, award or settlement of compensatory damages arising from "bodily injury", "property damage" or "remediation costs", including associated "extra damages" and "legal defense expense";

2.    "Emergency response costs" and associated "legal defense expense"; and

3.   "Catastrophe management costs".

V. Solely with respect to the coverage afforded pursuant to this Supplemental Coverage, Section VI., EXCLUSIONS, Subsection M., Material Change in Risk, of this Policy is hereby deleted in its entirety and replaced with the following:

M. Material Change in Risk

"Loss" arising out of or related to a change in "covered operations" that materially increases the likelihood or severity of a "pollution condition", "indoor environmental condition", "claim" or "first-party claim" from the operations identified by the "first named insured" for the Insurer an Application or supplemental underwriting materials provided prior to the effective date of coverage for such "covered operations", if any.

This exclusion shall only apply to the changed operations and shall not limit coverage for other "covered operations" to which this insurance applies.

VI. Solely with respect to the coverage afforded pursuant to this Supplemental Coverage, Section VI., EXCLUSIONS, of this Policy is hereby amended by addition of the following:

Professional Liability

"Loss" arising out of or related to the rendering of, or failure to render, professional services, including, but not limited to, recommendations, opinions, and strategies rendered for architectural, consulting, design and engineering work, such as drawings, designs, maps, reports, surveys, change orders, plan specifications, assessment work, remedy selection, site maintenance, equipment selection, and related construction management, supervisory, inspection or engineering services.

This exclusion shall not apply to "pollution conditions" or "indoor environmental conditions" that arise as a result of "covered operations" performed by or on behalf of a "named insured".

VII. Section VII., REPORTING AND COOPERATION, Subsection A., Paragraph 2., of this Policy is hereby deleted in its entirety and replaced with the following:

2. The identity of the "covered location" or a detailed description of the "covered operations";

VIII. Section IX., GENERAL CONDITIONS, Subsection A., Cancellation, Paragraph 2., of this Policy is hereby amended by addition of the following:

c. Material change in the "covered operations" from the description identified in the Application to this Policy and supporting materials, which results in an increased likelihood of "claims", "first-party claims", "pollution conditions" or "indoor environmental conditions",

All other terms and conditions of this Policy remain unchanged.

_____
Authorized Representative

## DEFINITION OF RESPONSIBLE PERSON AMENDATORY (GENERIC) ENDORSEMENT

| Named Insured<br>The Administrators of the Tulane Educational Fund | | | Endorsement Number<br>010 |
|---|---|---|---|
| Policy Symbol<br>PPL | Policy Number<br>G71496776 001 | Policy Period<br>02/27/2019 to 02/27/2022 | Effective Date of Endorsement<br>02/27/2019 |
| Issued By (Name of Insurance Company)<br>Illinois Union Insurance Company | | | |

Insert the policy number. The remainder of the information is to be completed only when this endorsement is issued subsequent to the preparation of the policy.

### THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

The "insured" and the Insurer hereby agree to the following changes to this Policy:

Section V., DEFINITIONS, Subsection PP., of this Policy is hereby deleted in its entirety and replaced with the following:

PP. "Responsible person" means the manager responsible for environmental affairs of an "insured", and any officer or director of, or partner in, an "insured".

All other terms and conditions of this Policy remain unchanged.

---

Authorized Representative

# DELETION OF DISCOVERY (PREMISES POLLUTION – REMEDIATION COSTS BY GOVERNMENT ACTION ONLY) ENDORSEMENT

| Named Insured | Endorsement Number |
|---|---|
| The Administrators of the Tulane Educational Fund | 011 |

| Policy Symbol | Policy Number | Policy Period | Effective Date of Endorsement |
|---|---|---|---|
| PPL | G71496776 001 | 02/27/2019 to 02/27/2022 | 02/27/2019 |

| Issued By (Name of Insurance Company) |
|---|
| Illinois Union Insurance Company |

Insert the policy number. The remainder of the information is to be completed only when this endorsement is issued subsequent to the preparation of the policy.

## THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

The "insured" and the Insurer hereby agree to the following changes to this Policy:

I. Section I., INSURING AGREEMENTS, Subsection A., POLLUTION CONDITIONS OR INDOOR ENVIRONMENTAL CONDITIONS COVERAGE, of this Policy is hereby deleted in its entirety and replaced with the following:

A. POLLUTION CONDITIONS OR INDOOR ENVIRONMENTAL CONDITIONS COVERAGE

1. "Claims" and "first-party claims" arising out of a "pollution condition" on, at, under or migrating from a "covered location", provided the "claim" is first made, or the "insured" first discovers such "pollution condition", during the "policy period". Any such "claim" or "first-party claim" must be reported to the Insurer, in writing, during the "policy period" or within thirty (30) days after the expiration of the "policy period", or during any applicable "extended reporting period".

2. "Claims" and "first-party claims" arising out of an "indoor environmental condition" at a "covered location", provided the "claim" is first made, or the "insured" first discovers such "indoor environmental condition", during the "policy period". Any such "claim" or "first-party claim" must be reported to the Insurer, in writing, during the "policy period" or within thirty (30) days after the expiration of the "policy period", or during any applicable "extended reporting period".

The coverage afforded pursuant to this Coverage A. only applies to "pollution conditions" or "indoor environmental conditions" that first commence, in their entirety, on or after the retroactive date identified in Item 5. of the Declarations, if applicable, and prior to the expiration of the "policy period".

II. Solely with respect to coverage afforded pursuant to Coverages A.1. and A.2. as modified pursuant to this Endorsement, Section V., DEFINITIONS, Subsections J. and DD., of this Policy are hereby deleted in their entirety and replaced with the following:

J. "Claim" means:

Coverage A.1.

The written assertion of a legal right received by the "insured" from a third-party, or from another "insured" that is party to an "environmental indemnity obligation", including, but not limited to, a "government action", suits or other actions alleging responsibility or liability on the part of the "insured" for "bodily injury", "property damage", or, with respect to "government action", _only_, "remediation costs", arising out of "pollution conditions" to which this insurance applies.

Coverages A.2.

The written assertion of a legal right received by the "insured" from a third-party, or from another "insured" that is party to an "environmental indemnity obligation", including, but not limited to, a

"government action", suits or other actions alleging responsibility or liability on the part of the "insured" for "bodily injury", "property damage" or "remediation costs" arising out of "pollution conditions" or "indoor environmental conditions" to which this insurance applies.

DD.    "Loss" means:

Coverage A.1.

1.   A monetary judgment, award or settlement of compensatory damages arising from "bodily injury", "property damage", or, with respect to "government action", _only_, "remediation costs", including associated "extra damages" and "legal defense expense";

2.   "Emergency response costs" and associated "legal defense expense" and

3.   "Catastrophe management costs".

Coverage A.2.

4.   A monetary judgment, award or settlement of compensatory damages arising from "bodily injury", "property damage" or "remediation costs", including associated "extra damages";

5.   "Legal defense expense";

6.   "First-party remediation costs";

7.   "Emergency response costs";

8.   "Business interruption loss"; and

9.   "Catastrophe management costs".

III. Section VI., EXCLUSIONS, of this Policy is hereby amended by addition of the following:

## Pollution Remediation Costs and Interruption

1.   Monetary judgments, awards or settlements of compensatory damages for "remediation costs", including associated "extra damages" or "legal defense expense", arising out of or related to a "pollution condition" on, at, under or migrating from or onto a "covered location", but solely to the extent that such judgments, awards or settlements are the result of a "claim" other than a "government action"; and

2.   "First-party remediation costs", exclusive of "emergency response costs", along with any associated "legal defense expense" or "business interruption loss", arising out of or related to a "pollution condition" on, at under or migrating from or onto a "covered location".

IV. ☐ Pre-Existing Pollution Conditions Endorsement Application

Solely to the extent that there is an X indicated in this Section IV., above, the "insured" and the Insurer hereby agree that the modifications identified in Sections I., II., and III. of this Endorsement only apply to "pollution conditions" that first commence, in whole or in part, prior to .

V. ☒ Location-Specific Endorsement Application

Solely to the extent that there is an X indicated in this Section V., above, the "insured" and the Insurer hereby agree that the modifications identified in Sections I., II. and III. of this Endorsement only apply to "pollution conditions" associated with the "covered locations" specifically identified in the Schedule of Covered Locations, below:

### Schedule of Covered Locations

1.        All "covered locations" in the Tulane Out of State Prop 2-11-19 excl. Cary.xlsx Excel spreadsheet on file with the Insurer.

2.       1506 Conery Street, New Orleans, LA 70118

3.       401 North Roadway, New Orleans, LA 70124

4.       1340 Poydras Street, Suite 740, New Orleans, LA 70122

5.       900 Camp Street, New Orleans, LA 70130

6.       101 Judge Tanner Blvd., Suite 402, Covington, LA 70433

7.       323 Patterson Street, Lafayette, LA 70501

VI. ☐ Specific Pollution Conditions Endorsement Application

Solely to the extent that there is an X indicated in this Section VI., above, the "insured" and the Insurer hereby agree that the modifications identified in Sections I., II. and III. of this Endorsement only apply to "pollution conditions" specifically identified below:

<u>Pollution Conditions</u>

All other terms and conditions of this Policy remain unchanged.

_____
Authorized Representative

# KNOWN CONDITIONS EXCLUSION AMENDATORY ENDORSEMENT

| Named Insured<br>The Administrators of the Tulane Educational Fund | | | Endorsement Number<br>012 |
|---|---|---|---|
| Policy Symbol<br>PPL | Policy Number<br>G71496776 001 | Policy Period<br>02/27/2019 to 02/27/2022 | Effective Date of Endorsement<br>02/27/2019 |
| Issued By (Name of Insurance Company)<br>Illinois Union Insurance Company | | | |

Insert the policy number. The remainder of the information is to be completed only when this endorsement is issued subsequent to the preparation of the policy.

## THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

The "insured" and the Insurer hereby agree to the following changes to this Policy:

Section **VI.**, **EXCLUSIONS**, Subsection **K.**, **Known Conditions**, of this Policy is hereby deleted in its entirety and replaced by the following:

**K. Known Conditions**

"Loss" arising out of or related to "pollution conditions" or "indoor environmental conditions" in existence and reported to a "responsible person":

**1.** Prior to the "policy period"; or,

**2.** Solely with respect to "covered locations" added to this Policy during the period of time specifically identified in Item **2.** of the Declarations to the Policy, if any, prior to the effective date of coverage for such "covered location",

including any "pollution conditions" or "indoor environmental conditions" discovered during the normal course of further investigation or remediation of such reported "pollution conditions" or "indoor environmental conditions".

This exclusion shall not apply to:

**1.** "Pollution conditions" or "indoor environmental conditions" specifically referenced in, or identified in documents listed on, the Schedule of Disclosed Conditions Endorsement attached to this Policy, if any; or

**2.** "Pollution conditions" or "indoor environmental conditions" that have been reported to the "responsible person" as not being actionable pursuant to "environmental law" in any Phase I or Phase II Environmental Site Assessment report (or its functional equivalent) specifically prepared for a "named insured" by a qualified environmental consultant. To the extent that the qualified consultant's actionability determination is premised, in whole or in part, on the use of institutional or engineering controls in effect at a "covered location", any coverage afforded pursuant to this paragraph shall be contingent upon:

**a.** The continued maintenance of said engineering controls; and

**b.** The continued use of the property in a manner consistent with the consultant's reported assumptions,

during the "policy period".

All other terms and conditions of this Policy remain unchanged.

_____
Authorized Representative

# NON-OWNED DISPOSAL SITES COVERAGE LIMITATION ENDORSEMENT

| Named Insured<br>The Administrators of the Tulane Educational Fund | | | Endorsement Number<br>013 |
|---|---|---|---|
| Policy Symbol<br>PPL | Policy Number<br>G71496776 001 | Policy Period<br>02/27/2019 to 02/27/2022 | Effective Date of Endorsement<br>02/27/2019 |
| Issued By (Name of Insurance Company)<br>Illinois Union Insurance Company | | | |

Insert the policy number. The remainder of the information is to be completed only when this endorsement is issued subsequent to the preparation of the policy.

## THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

Solely to the extent that there is an X indicated in Sections I., II., III., IV. and/or V. of this Endorsement, below, the "insured" and the Insurer hereby agree to the following changes to this Policy:

I. [X] <u>Sublimits of Liability</u>

Per NODS Condition Sublimit of Liability: $ 10,000,000

Aggregate NODS Conditions Sublimit of Liability: $ 20,000,000

The amount that the Insurer shall pay pursuant to this Policy for "loss" arising out of or related to "pollution conditions" on, at, under or migrating from a "non-owned disposal site" (collectively NODS Conditions), is subject to the Per NODS Condition Sublimit of Liability and Aggregate NODS Conditions Sublimit of Liability identified above. Therefore, the Per NODS Condition Sublimit of Liability, above, shall be the maximum amount the Insurer shall pay for all "loss" arising out of or related to the same, continuous, repeated, or related NODS Condition to which this insurance applies. Moreover, the Aggregate NODS Conditions Sublimit of Liability, above, shall be the maximum amount the Insurer shall pay for all "loss" arising out of or related to all NODS Conditions to which this insurance applies. These Sublimits of Liability are subject to, and payments made within these Sublimits of Liability shall erode, the Limits of Liability identified in Item 3. of the Declarations to this Policy, along with any other applicable exposure-specific Limits or Sublimits of Liability added by endorsement hereto. Under no circumstance shall the Insurer be liable to pay any amount in excess of any applicable Limit or Sublimit of Liability.

II. [ ] <u>Exclusion</u>

Section VI., EXCLUSIONS, Subsection N., Non-Owned Disposal Sites, of this Policy is hereby deleted in its entirety and replaced with the following:

N. Non-Owned Disposal Sites

"Loss" arising out of or related to "pollution conditions" on, at, under or migrating from any treatment, storage, disposal, transfer or recycling site or facility.

III. [ ] <u>Exposure-Specific Self-Insured Retention</u>

NODS-Specific Self Insured Retention: $

Notwithstanding anything identified in the Declarations to the contrary, the "self-insured retention" amount, above, shall apply to each and every "pollution condition" on, at, under or migrating from a "non-owned disposal site".

IV. [ ] <u>Exposure-Specific Retroactive Date</u>

NODS-Specific Retroactive Date:

Solely to the extent that there is an X indicated in this Section IV., above, and notwithstanding anything identified in the Declarations to the contrary, the retroactive date identified above shall apply to coverage

afforded pursuant to this Policy for "pollution conditions" on, at, under or migrating from a "non-owned disposal site". Therefore, no coverage shall be afforded for any such "pollution conditions" that are attributable to a "named insured's" waste generated at "covered location" and received at the "non-owned disposal site", in whole or in part, prior to the retroactive date, above. This exposure-specific retroactive date shall be subject to any more specific retroactive date identified in any Schedule of Non-Owned Disposal Sites Endorsement or other endorsement to this Policy.

V. ☐ Location-Specific Endorsement Application

Solely to the extent that there is an X indicated in this Section V., above, the "insured" and the Insurer hereby agree that the modifications identified in Sections I., II., III. and/or IV. of this Endorsement only apply to "pollution conditions" associated with the treatment, storage, disposal, transfer or recycling sites or facilities specifically identified in the Schedule of Sites and Facilities, below:

<u>Schedule of Sites and Facilities</u>

All other terms and conditions of this Policy remain unchanged.

_____
Authorized Representative

# NOTICE OF CANCELLATION AMENDATORY (GENERIC TIME FRAME) ENDORSEMENT

| Named Insured<br>The Administrators of the Tulane Educational Fund | | | Endorsement Number<br>014 |
|---|---|---|---|
| Policy Symbol<br>PPL | Policy Number<br>G71496776 001 | Policy Period<br>02/27/2019 to 02/27/2022 | Effective Date of Endorsement<br>02/27/2019 |
| Issued By (Name of Insurance Company)<br>Illinois Union Insurance Company | | | |

Insert the policy number. The remainder of the information is to be completed only when this endorsement is issued subsequent to the preparation of the policy.

## THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

The "insured" and the Insurer hereby agree to the following changes to this Policy:

Section **IX.**, **GENERAL CONDITIONS**, Subsection **A.**, **Cancellation**, Paragraph **2.**, of this Policy is hereby deleted in its entirety and replaced with the following:

**2.** This Policy may be cancelled by the Insurer for the following reasons:

**a.** Non-payment of premium; or

**b.** Fraud or material misrepresentation on the part of any "insured",

by mailing to the "first named insured" at the "first named insured's" last known address, written notice stating when, not less than **ninety** (**90**) days thereafter, fifteen (15) days if cancellation is for non-payment of any unpaid portion of the premium, such cancellation shall be effective. The mailing of notice shall be sufficient proof of notice. The effective date and hour of cancellation stated in the notice shall be the end of the "policy period".

Subparagraph **2.b.**, herein, shall apply only to that "insured" that engages in the fraud or misrepresentation. This exception shall not apply to any "insured" who is a parent corporation, subsidiary, employer of, or otherwise affiliated by ownership with, such "insured".

All other terms and conditions of the Policy remain unchanged.

_____
Authorized Representative

# OTHER INSURANCE (PRIMARY WHEN NO TANK FUND OR COVERAGE - SIR CREDIT) ENDORSEMENT

| Named Insured The Administrators of the Tulane Educational Fund | | | Endorsement Number 015 |
|---|---|---|---|
| Policy Symbol **PPL** | Policy Number **G71496776 001** | Policy Period **02/27/2019  to  02/27/2022** | Effective Date of Endorsement **02/27/2019** |
| Issued By (Name of Insurance Company) Illinois Union Insurance Company | | | |

Insert the policy number. The remainder of the information is to be completed only when this endorsement is issued subsequent to the preparation of the policy.

## THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

The "insured" and the Insurer hereby agree to the following changes to this Policy:

**I.** Section **II.**, **LIMITS OF LIABILITY AND SELF-INSURED RETENTION**, Subsection **A.**, of this Policy is hereby amended by addition of the following:

> Notwithstanding the foregoing, the Insurer and "insured" hereby agree that, with respect to "pollution conditions" that are covered pursuant to the Storage Tank Coverages, such "pollution conditions" shall not be subject to a "self-insured retention" pursuant to this Policy, provided that: **1)** the applicable deductible or retention amount that is part of the Storage Tank Coverages has been paid by the applicable "insured" with respect to such "pollution conditions"; and **2)** the aggregate amount of the "insured's" deductible or retention pursuant to the Storage Tank Coverages, and the amount paid for such "pollution condition" pursuant to the Storage Tank Coverages, equal or exceed the "self-insured retention" amount of this Policy. In the event that the aggregate amount of the deductible and payments made pursuant to the Storage Tank Coverages does not meet or exceed the "self-insured retention" amount, then the "first named insured" shall remain responsible for any remaining amounts necessary to meet the entirety of its "self-insured retention" obligation pursuant to this Policy.

**II.** Section **IX.**, **GENERAL CONDITIONS**, Subsection **H.**, **Other Insurance**, of this Policy is hereby deleted in its entirety and replaced with the following:

### H.  Other Insurance

> If other valid and collectible insurance is available to an "insured" covering any exposure also covered by this Policy, the insurance afforded by this Policy shall apply as primary Insurance, except for: **1)** any Federal, state, commonwealth, county or municipality administered storage tank fund, or any functional equivalent to such fund; and **2)** any storage tank-specific insurance coverage (collectively Storage Tank Coverage), which shall each be considered primary insurance to which the insurance afforded pursuant to this Policy shall only apply in excess.

> If at any time during the "policy period", Storage Tank Coverages are terminated, declared insolvent, phased out or in some way made inaccessible to the "insured" for any reason other than the availability of insurance, then the Insurer will pay such amounts excess of any payments already made by the Storage Tank Coverages, subject to the "self-insured retention" amount and all of the other terms and conditions of this Policy. If the Storage Tank Coverages later become available and begin making payments, again, the "first named insured" agrees to reimburse the Insurer for any amounts paid by the Insurer, which are subsequently available to the "insured" pursuant to the Storage Tank Coverages.

> It is a condition precedent to coverage pursuant to this Policy that the "insured" take all necessary steps to ensure that it becomes and remains eligible for all available Federal, state, commonwealth, county or municipality administered underground storage tank funds, or any functional equivalent to such funds.

All other terms and conditions of this Policy remain unchanged.

_____
Authorized Representative

# PREMIUM EARN-OUT (STAGGERED - MULTIPLE YEARS- ACCELERATION) ENDORSEMENT

| Named Insured | Endorsement Number |
|---|---|
| The Administrators of the Tulane Educational Fund | 016 |

| Policy Symbol | Policy Number | Policy Period | Effective Date of Endorsement |
|---|---|---|---|
| PPL | G71496776 001 | 02/27/2019 to 02/27/2022 | 02/27/2019 |

| Issued By (Name of Insurance Company) |
|---|
| Illinois Union Insurance Company |

Insert the policy number. The remainder of the information is to be completed only when this endorsement is issued subsequent to the preparation of the policy.

## THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

The "insured" and the Insurer hereby agree to the following changes to this Policy:

Section **IX., GENERAL CONDITIONS,** Subsection **A., Cancellation,** Paragraph **3.,** of this Policy is hereby deleted in its entirety and replaced with the following:

**3.** Premium Earn-Out

    **a.** Subject to Subparagraph **b.,** below, in the event of cancellation, **twenty-five** percent (**25** %) of the premium identified in Item **6.** of the Declarations shall be minimum earned upon the inception date identified in Item **2.** of the Declarations. Thereafter, an additional **twenty-five** percent (**25** %) of the premium shall be deemed earned by the Insurer on a *pro rata* basis over the first year of the "policy period". Thereafter, the remaining unearned premium shall be deemed earned by the Insurer on a *pro rata* basis over **the remainder of the "policy period"** .

    **b.** In the event a "claim" is first made against an "insured", or a "pollution condition" or "indoor environmental condition" is first discovered by an "insured", during the "policy period", to which this insurance may apply, in whole or in part, the premium identified in Item **6.** of the Declarations shall be immediately deemed one hundred percent (100%) earned upon such event.

Subject to the foregoing, any unearned premium amounts due the "first named insured", if any, shall be refunded within thirty (30) days of the effective date of cancellation.

All other terms and conditions of this Policy remain unchanged.

                                               Authorized Representative

# PRIOR CLAIMS EXCLUSIONARY (BROAD) ENDORSEMENT

| Named Insured | | | Endorsement Number |
|---|---|---|---|
| The Administrators of the Tulane Educational Fund | | | 017 |

| Policy Symbol | Policy Number | Policy Period | Effective Date of Endorsement |
|---|---|---|---|
| PPL | G71496776 001 | 02/27/2019  to  02/27/2022 | 02/27/2019 |

| Issued By (Name of Insurance Company) |
|---|
| Illinois Union Insurance Company |

Insert the policy number. The remainder of the information is to be completed only when this endorsement is issued subsequent to the preparation of the policy.

## THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

The "insured" and the Insurer hereby agree to the following changes to this Policy:

Section **VI., EXCLUSIONS,** of this Policy is hereby amended by addition of the following:

**Prior Claims**

"Loss" arising out of or related to "claims" made against an "insured" prior to the inception date identified in Item **2.** of the Declarations to this Policy, as applicable (collectively Prior Claims), along with any current or subsequent "claims" made in conjunction with such Prior Claims (e.g., counterclaims, cross-claims or third-party claims made as part of the Prior Claims, any associated appeals of the Prior Claims, any "claims" ultimately consolidated with the Prior Claims, or any "claims" involving different plaintiffs but the same collection of operative facts and/or allegations contained in the Prior Claims).

All other terms and conditions of this policy remain unchanged.

_____
Authorized Representative

# SCHEDULE OF COVERED LOCATIONS ENDORSEMENT

| Named Insured<br>The Administrators of the Tulane Educational Fund | | | Endorsement Number<br>018 |
|---|---|---|---|
| Policy Symbol<br>PPL | Policy Number<br>G71496776 001 | Policy Period<br>02/27/2019 to 02/27/2022 | Effective Date of Endorsement<br>02/27/2019 |
| Issued By (Name of Insurance Company)<br>Illinois Union Insurance Company | | | |

Insert the policy number. The remainder of the information is to be completed only when this endorsement is issued subsequent to the preparation of the policy.

## THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

The "insured" and the Insurer hereby agree to the following changes to this Policy:

The locations identified in the Schedule of Covered Locations, below, are hereby added to this Policy as additional "covered locations".

## SCHEDULE OF COVERED LOCATIONS

| | *Location* | *Retroactive Date* |
|---|---|---|
| 1. | All covered locations in the 2018_SOV04022018.xlsx Excel spreadsheet on file with the Insurer except for any address/covered location associated with the Tulane National Primate Research Center. | FULL RETRO |
| 2. | All covered locations in the Tulane Out of State Prop 2-11-19 excl Cary.xlsx Excel spreadsheet on file with the Insurer except for any address/location associated with the Tulane National Primate Research Center. | FULL RETRO |
| 3. | The Stephen Paul Jacobs House: 8317 Freret Street, New Orleans, LA 70118 | 02/27/2013 |
| 4. | Heart Study Office Clinic: 712 Willis Avenue, Bogalusa, LA 70427 | 02/27/2013 |
| 5. | Louisiana Cancer Research Center: 170 Tulane New Orleans, LA 70112 | 02/27/2013 |
| 6. | Baton Rouge Medical Center: 3600 Florida Blvd. Baton Rouge, LA 70806 | 02/27/2013 |
| 7. | The Drop-In Center: 1461 N. Claiborne Avenue New Orleans, LA 70116 | 02/27/2013 |
| 8. | Ryan White Clinic: 801 Bolton Avenue, Alexandria, LA 70131 | 02/27/2013 |
| 9. | Fairfield: 4641 Fairfield Street, Metairie, LA 70006 | 02/27/2013 |
| 10. | Tulane Continuing Studies Madison: 2115 Main Street Madison, MS 39110 | 02/27/2013 |
| 11. | Tulane TIS Recovery Site at LSU: 200 Frey Computing Services, Baton Rouge, LA 70803 | 02/27/2013 |
| 12. | Uplink Equipment at Broadpoint, Inc. for Business School: 5901 Earhart Expressway, Harahan, LA 70123 | 02/27/2013 |
| 13. | Tanglewood Apartments: 2114 Shreveport Highway Pineville, LA 71360 | 02/27/2013 |

14. Teaching Kitchen at Whole Foods: 300 N. Broad     02/27/2013
    New Orleans, LA 70119

15. Tulane City Center: 1725 Baronne Street, New Orleans, LA 70113     02/27/2013

16. Bayou Pediatrics: 2120 Main Street, Suite 300, Houma, LA 70360     02/27/2016

17. Neurosurgery Clinic East Jefferson Complex: 4224 Houma Blvd.,     02/27/2016
    Suite 550, Metairie, LA 70006

18. Greenbaum House: 6823 St. Charles Avenue     01/01/2014
    New Orleans, LA 70118

19. IT Services: 1323 Broadway, New Orleans, LA 70118     02/27/2013

20. Ruth Fertel Medical Clinic: 711 N. Broad Street     02/27/2013
    New Orleans, LA 70427

21. Surgery @ Gastroenterology Associates, LLC: 9103 Jefferson     02/27/2016
    Highway, Baton Rouge, LA 70809

22. Walter L. Cohen High School - School-Based Health Center: 3250     02/27/2016
    Dryades Street, New Orleans, LA 70115

23. Warren Easton Senior High School - School-Based Health Center:     02/27/2016
    3019 Canal Street, New Orleans, LA 70119

24. Pediatrics Clinic Port Sulphur, LAS: 27136 Highway 23, Port     02/27/2016
    Sulphur, LA 70083

25. The Drop-In Clinic at Covenant House: 611 Rampart     02/27/2016
    New Orleans, LA 70112

26. Tulane Pediatric Cardiology Clinic - St. Tammany Hospital: 16300     02/27/2016
    Highway 1085, Covington, LA 70433

27. Heart & Vascular Clinic - St. Luke's Medical Center - Westbank:     02/27/2016
    4201 Woodland Drive, New Orleans, LA 70131

28. Tulane Dermatology Clinic:101 Judge Tanner Blvd., Suite 406,     02/27/2016
    Covington, LA 70433

29. Medicine - G.I. Transplant Clinic: 130 Lakeview Circle     02/27/2016
    Covington, LA 70433

30. Otolaryngology/Surgery Joint Effort, Suite 360: 1120 Robert Road     02/27/2016
    Slidell, LA 70458

31. Huey P. Long Hospital Office: 352 Hospital Blvd.     02/27/2016
    Pineville, LA 71360

32. Heart & Vascular Clinic - Medical Center of New Orleans East: 5640     02/27/2016
    Read Blvd., New Orleans, LA 70127

33. TU Multispecialty Clinic at Women's & Children's Hospital: 4704     02/27/2016
    Ambassador Caffery Parkway, Lafayette, LA 70508

34. Tulane Hemophilia Clinic: 1317 Jefferson Street     02/27/2016
    Lafayette, LA 70501

35. Surgery @ Rneal Associates of Baton Rouge: 5131 O'Donovan     02/27/2016
    Drive, Suite 100, Baton Rouge, LA 70808

36. Surgery/Medicine Baton Rouge Clinic: 7373 Perkins Road, Baton     02/27/2016
    Rouge, LA 70808

37. Lakeview Medical Office Building:101 Judge Tanner Blvd.,     02/27/2016
    Covington, LA 70433

| | | |
|---|---|---|
| **38.** | 1506 Conery Street, New Orleans, LA 70118 | 11/15/2017 |
| **39.** | 401 North Roadway, New Orleans, LA 70124 | 11/15/2017 |
| **40.** | 1340 Poydras Street, Suite 740, New Orleans, LA 70122 | 11/15/2017 |
| **41.** | 900 Camp Street, New Orleans, LA 70130 | 11/15/2017 |
| **42.** | 101 Judge Tanner Blvd., Suite 402, Covington, LA 70433 | 11/15/2017 |
| **43.** | 323 Patterson Street, Lafayette, LA 70501 | 11/15/2017 |
| **44.** | All covered locations in the Insurance Property Sched 2.11.19.xlsx Excel spreadsheet on file with the Insurer except for any address/location associated with the Tulane National Primate Research Center. | 02/27/2019 |
| **45.** | All covered locations in the Cary Acreage Interest Rpt. 2-11-19.pdf document on file with the Insurer except for any address/location associated with the Tulane National Primate Research Center. | 02/27/2019 |

If a "covered location", above, is identified with a corresponding Retroactive Date, then that date shall supersede the general Retroactive Date identified for premises coverage afforded pursuant to Coverage **A.** within Item **5.** of the Declarations to this Policy for "pollution conditions" on, at under or migrating from, or "indoor environmental conditions" at, that specific "covered location".  Also, if a "covered location", above, is identified with the phrase **"FULL RETRO"**, then full retroactive coverage is afforded pursuant to this Policy for "pollution conditions" on, at under or migrating from, or "indoor environmental conditions" at, that specific "covered location".  Notwithstanding the foregoing, any retroactive coverage indicated herein is subject to any other exposure-specific Retroactive Date added to this Policy by endorsement.

All other terms and conditions of this Policy remain unchanged.

_____
Authorized Representative

# SCHEDULE OF NON-OWNED DISPOSAL SITES ENDORSEMENT

| Named Insured<br>The Administrators of the Tulane Educational Fund | | | Endorsement Number<br>019 |
|---|---|---|---|
| Policy Symbol<br>PPL | Policy Number<br>G71496776 001 | Policy Period<br>02/27/2019 to 02/27/2022 | Effective Date of Endorsement<br>02/27/2019 |
| Issued By (Name of Insurance Company)<br>Illinois Union Insurance Company | | | |

Insert the policy number. The remainder of the information is to be completed only when this endorsement is issued subsequent to the preparation of the policy.

## THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

The "insured" and the Insurer hereby agree that the following disposal sites and/or recycling facilities are identified on this Schedule of Non-Owned Disposal Sites Endorsement:

### SCHEDULE OF NON-OWNED DISPOSAL SITES

| | *Location* | *Retroactive Date* |
|---|---|---|
| 1. | Pollution Control Industries: 5485 Victory Lane, Millington, TN 38053 | 02/27/2008 |
| 2. | LEI (Formerly Lamp Recyclers of LA, Inc.): 46257 Morris Road, Hammond, LA 70404 | 02/27/2008 |
| 3. | Treatment One (SET), Inc.: 5738 Cheswood, Houston, TX 77087 | 02/27/2008 |
| 4. | Fisher Industries: 402 Webster Chapel Road, Glencoe, AL 35905 | 02/27/2008 |
| 5. | Safety Kleen: 960 Turnpike Street, Canton, MA 02021 | 02/27/2008 |
| 6. | Cure Oil Company: 3000 Meadow Drive, Violet, LA 70092 | 02/27/2008 |
| 7. | International Oil Services: 14890 Intercostal Drive, New Orleans, LA 70129 | 02/27/2008 |
| 8. | Crescent City X-Ray Company, Inc.: 301 Grefer Lane Harvey, LA 70058 | 02/27/2008 |
| 9. | River Birch Landfill: 2000 S. Kenner Avenue, Avondale, LA 70094 | 02/27/2008 |
| 10. | Reliable Landfill: 9533 Moore Lane, Livonia, LA 70755 | 02/27/2008 |
| 11. | Central Landfill: Highway 11 North, McNeill, MS 39457 | 02/27/2008 |
| 12. | Southern Management Landfill: Highway 61 South Fayette, MS 39060 | 02/27/2008 |
| 13. | Stericycle, Inc.: 517 West 19th Street, Reserve, LA 70084 | 02/27/2008 |
| 14. | Chambers County (Stericycle): 7505 Highway 65 Anahuac, TX 77514 | 02/27/2008 |
| 15. | BFI Medical Waste Incinerator: 5328 Highway 70 Sorrento, LA 70778 | 02/27/2008 |
| 16. | Pollution Control Industries: 4343 Kennedy Avenue East Chicago, IL 46312 | 02/27/2008 |
| 17. | Stericycle, Inc.: 254 W. Keene Road, Apopka, FL 32703 | 02/27/2008 |
| 18. | Clean Harbors: 2027 Battleground Road, Walker, LA 70785 | 02/27/2008 |
| 19. | Waste Management of Baton Rouge: 29340 Woodside Drive, | 02/27/2008 |

Walker, LA 70785

| | | |
|---|---|---|
| 20. | Stranco, Inc.: 70459 Highway 59, Abita Springs, LA 70420 | 02/27/2008 |
| 21. | P&W Industries, Inc.: 68668 Highway 69, Mandeville, LA 70448 | 02/27/2008 |
| 22. | Jefferson Battery Company: 700 Jefferson Highway Jefferson, LA 70121 | 02/27/2008 |
| 23. | WMI/Reliable - Livonia Landfill: U.S. Highway 190 Livonia, LA 70755 | 02/27/2008 |
| 24. | Safety Kleen: 2423 Tyler Street, Kenner, LA 70062 | 02/27/2008 |
| 25. | Ash Grove Cement: 4457 Highway 108, Foreman, AR 71836 (EPA ID No. ARD981512270) | 02/27/2008 |
| 26. | Chemical Waste Management: 7170 John Brannon Road, Sulphur, LA 70665 (EPA ID No. LAD000777201) | 02/27/2008 |
| 27. | Systech Environmental Corp.: South Cement Road, Fredonia, KS 66736 (EPA ID No. KSD980633259) | 02/27/2008 |
| 28. | U.S. Ecology Texas LP: P.O. Box 307, 3.5 Mile South Petronia Road, Robstown, TX 78380 (EPA ID No. TXD069452340) | 02/27/2008 |
| 29. | Veolia ES Technical Solutions07: Highway 73outh Petronia Road, 3.5 Miles W. of Taylor's Bayou, Port Arthur, TX 77640 (EPA ID No. TXD000838896) | 02/27/2008 |
| 30. | Veolia ES Technical Solutions: W124 N9451 Boundary Road, Menomonee Falls, WI 53051 (EPA ID No. WID003967148) | 02/27/2008 |
| 31. | Veolia ES Technical Solutions: 5736 West Jefferson Street, Phoenix, AZ 85043 (EPA ID No. AZ0000337360) | 02/27/2008 |
| 32. | Veolia ES Technical Solutions: 7 Mobile Avenue, Sauget, IL 62201 (EPA ID No. ILD098642424) | 02/27/2008 |

If a "non-owned disposal site", above, is identified with a corresponding Retroactive Date, then that date shall supersede the general Retroactive Date identified for non-owned disposal sites liability coverage afforded pursuant to Coverage C. within Item 5. of the Declarations to this Policy for "pollution conditions" on, at, under or migrating from that specific "non-owned disposal site". Also, if a "non-owned disposal site", above, is identified with the phrase "FULL RETRO", then full retroactive coverage is afforded pursuant to this Policy for "pollution conditions" on, at under or migrating from that specific "non-owned disposal site". Notwithstanding the foregoing, any retroactive coverage indicated herein is subject to any other exposure-specific Retroactive Date added to this Policy by endorsement.

All other terms and conditions of this Policy remain unchanged.

_____
Authorized Representative

# SCHEDULE OF UNDERGROUND STORAGE TANKS ENDORSEMENT

| Named Insured<br>The Administrators of the Tulane Educational Fund | | | Endorsement Number<br>020 |
|---|---|---|---|
| Policy Symbol<br>PPL | Policy Number<br>G71496776 001 | Policy Period<br>02/27/2019  to  02/27/2022 | Effective Date of Endorsement<br>02/27/2019 |
| Issued By (Name of Insurance Company)<br>Illinois Union Insurance Company | | | |

<small>Insert the policy number. The remainder of the information is to be completed only when this endorsement is issued subsequent to the preparation of the policy.</small>

## THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

The "insured" and the Insurer hereby agree that the following "underground storage tanks" are identified on this Schedule of Underground Storage Tanks:

### Schedule of Underground Storage Tanks

| | Covered Location | Tank ID No. | Tank Size | Tank Contents | Retro Date |
|---|---|---|---|---|---|
| 1. | Power Plant Building:<br>Building U086<br>New Orleans, LA 70118 | 1 | 12,000 | Diesel | UST Installation Date |
| 2. | Power Plant Building:<br>Building U086<br>New Orleans, LA 70118 | 2 | 12,000 | Diesel | UST Installation Date |
| 3. | Power Plant Building:<br>Building U086<br>New Orleans, LA 70118 | 3 | 12,000 | Diesel | UST Installation Date |
| 4. | Facilities Services Garage:<br>Building U089<br>New Orleans, LA 70118 | 14 | 4,000 | Gasoline | UST Installation Date |
| 5. | Reily Student Recreation<br>Center: Building U106<br>New Orleans, LA 70118 | 1 | 550 | Diesel | UST Installation Date |
| 6. | Murphy Oil Building Garage:<br>131 S. Robertson, Building<br>D009<br>New Orleans, LA 70112 | 1 | 1,000 | Diesel | UST Installation Date |
| 7. | Building 20 RBL<br>New Orleans, LA 70118 | 1 | 15,000 | Diesel | UST Installation Date |

**I.   Retroactive Date**

Solely with respect to the "underground storage tanks" identified with a Retroactive Date, above, and, notwithstanding any other general Retroactive Date identified within this Policy, no coverage pursuant to this Policy shall be afforded for any "pollution condition" emanating from such "underground storage tanks" that commences, in whole or in part, prior to the identified Retroactive Date.

**II.   ☐ Sublimits of Liability**

Solely to the extent that there is an **X** indicated in this Section **II.**, above, the "insured" and the Insurer hereby agree that the Sublimits of Liability, below, apply to coverage afforded for "underground storage tanks" pursuant to this Policy.

**Per Storage Tank Condition Sublimit of Liability: $**

**Aggregate Storage Tank Conditions Sublimit of Liability:  $**

The amount that the Insurer shall pay pursuant to this Policy for "pollution conditions" emanating from "underground storage tanks" is subject to the Per Storage Tank Condition Sublimit of Liability and Aggregate Storage Tank Conditions Sublimit of Liability identified above.  Therefore, the Per Storage Tank Condition Sublimit of Liability, above, shall be the maximum amount the Insurer shall pay for all "loss" arising out of or related to the same, continuous, repeated, or related "pollution condition" to which this insurance applies. Moreover, the Aggregate Storage Tank Conditions Sublimit of Liability, above, shall be the maximum amount the Insurer shall pay for all "loss" arising out of or related to all "pollution conditions" to which this insurance applies.  These Sublimits of Liability are subject to, and payments made within these Sublimits of Liability shall erode, the Limits of Liability identified in Item **3.** of the Declarations to this Policy, along with any other applicable exposure-specific Limits or Sublimits of Liability added by endorsement hereto. Under no circumstance shall the Insurer be liable to pay any amount in excess of any applicable Limit or Sublimit of Liability.

All other terms and conditions of this Policy remain unchanged.

_____
Authorized Representative

# SITE DEVELOPMENT AND/OR VAPOR MITIGATION EXCLUSIONARY ENDORSEMENT

| Named Insured | | | Endorsement Number |
|---|---|---|---|
| The Administrators of the Tulane Educational Fund | | | 021 |

| Policy Symbol | Policy Number | Policy Period | Effective Date of Endorsement |
|---|---|---|---|
| PPL | G71496776 001 | 02/27/2019 to 02/27/2022 | 02/27/2019 |

| Issued By (Name of Insurance Company) |
|---|
| Illinois Union Insurance Company |

Insert the policy number. The remainder of the information is to be completed only when this endorsement is issued subsequent to the preparation of the policy.

## THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

<u>Solely to the extent that there is an X indicated in Sections I., II., III., IV. and/or V. of this Endorsement, below,</u> the "insured" and the Insurer hereby agree to the following changes to this Policy:

I.  [X] Section VI., EXCLUSIONS, of this Policy is hereby amended by addition of the following:

Site Development (Broad)

"Loss" arising out of or related to the excavation, extraction, treatment, transportation, or disposal of soil or groundwater during development or improvement activities at a "covered location", which would not otherwise be actionable pursuant to "environmental laws" but for such site development or improvement activities.

[X] If an X is present in the box immediately preceding this sentence, then this exclusion shall also not apply to "pollution conditions" that were in existence prior to the "policy period" and not reported to a "responsible person", provided they are otherwise covered pursuant to this Policy, generally.

II.  [ ] Section VI., EXCLUSIONS, of this Policy is hereby amended by addition of the following:

Site Development (Give-Back)

"Loss" arising out of or related to the excavation, extraction, treatment, transportation, or disposal of soil or groundwater during development or improvement activities at a "covered location", which would not otherwise be actionable pursuant to "environmental laws" but for such site development or improvement activities.

This exclusion shall not apply to monetary judgments, awards or settlements of compensatory damages for "bodily injury" or "property damage", including any associated "extra damages" or "legal defense expense".

[ ] If an X is present in the box immediately preceding this sentence, then this exclusion shall also not apply to "pollution conditions" that were in existence prior to the "policy period" and not reported to a "responsible person", provided they are otherwise covered pursuant to this Policy, generally.

III. [ ] Section VI., EXCLUSIONS, of this Policy is hereby amended by addition of the following:

Vapor Mitigation (Broad)

"Loss" arising out of or related to purchasing, installing, operating or maintaining any passive or active vapor mitigation or barrier systems at a "covered location".

IV. [ ] Section VI., EXCLUSIONS, of this Policy is hereby amended by addition of the following:

### Vapor Mitigation (Give-Back)

"Loss" arising out of or related to purchasing, installing, operating or maintaining any passive or active vapor mitigation or barrier systems at a "covered location".

This exclusion shall not apply to monetary judgments, awards or settlements of compensatory damages for "bodily injury" or "property damage", including any associated "extra damages" or "legal defense expense".

### V. ☐ Location-Specific Endorsement Application

Solely to the extent that there is an X indicated in this Section V., above, the "insured" and the Insurer hereby agree that the modifications identified in Sections I., II., III. and/or IV. of this Endorsement only apply to "pollution conditions" associated with the "covered locations" specifically identified in the Schedule of Covered Locations, below:

<u>Schedule of Covered Locations</u>

All other terms and conditions of this Policy remain unchanged.

_____
Authorized Representative

# SPECIFIC ACTIVITIES EXCLUSIONARY ENDORSEMENT

| Named Insured | Endorsement Number |
|---|---|
| The Administrators of the Tulane Educational Fund | 022 |

| Policy Symbol | Policy Number | Policy Period | Effective Date of Endorsement |
|---|---|---|---|
| PPL | G71496776 001 | 02/27/2019 to 02/27/2022 | 02/27/2019 |

| Issued By (Name of Insurance Company) |
|---|
| Illinois Union Insurance Company |

Insert the policy number. The remainder of the information is to be completed only when this endorsement is issued subsequent to the preparation of the policy.

## THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

<u>Solely to the extent that there is an X indicated in Sections I. and/or II. of this Endorsement, below,</u> the "insured" and the Insurer hereby agree to the following changes to this Policy:

I.  [X]  Section VI., EXCLUSIONS, of this Policy is hereby amended by addition of the following:

Specific Activities (Broad)

"Loss" arising out of or related to: Applicable to any specific activities related to any/all covered locations at the Tulane National Primate Research Center located at 18703 Three Rivers Road, Covington, LA 70433 including any operations performed that are related to the Tulane National Primate Research Center that may be performed at any "covered location".

II.  [ ]  Section VI., EXCLUSIONS, of this Policy is hereby amended by addition of the following:

Specific Activities (Give-Back)

"Loss" arising out of or related to:

This exclusion shall not apply to monetary judgments, awards or settlements of compensatory damages for "bodily injury" or "property damage", including any associated "extra damages" or "legal defense expense".

All other terms and conditions of this Policy remain unchanged.

_____
Authorized Representative

# TRANSPORTATION COVERAGE LIMITATION ENDORSEMENT

| Named Insured | Endorsement Number |
|---|---|
| The Administrators of the Tulane Educational Fund | 023 |

| Policy Symbol | Policy Number | Policy Period | Effective Date of Endorsement |
|---|---|---|---|
| PPL | G71496776 001 | 02/27/2019 to 02/27/2022 | 02/27/2019 |

| Issued By (Name of Insurance Company) |
|---|
| Illinois Union Insurance Company |

Insert the policy number. The remainder of the information is to be completed only when this endorsement is issued subsequent to the preparation of the policy.

## THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

Solely to the extent that there is an X indicated in Sections I. and/or II. of this Endorsement, below, the "insured" and the Insurer hereby agree to the following changes to this Policy:

I.  [X]  Sublimits of Liability

Per Transportation Condition Sublimit of Liability: $ 10,000,000

Aggregate Transportation Conditions Sublimit of Liability: $ 10,000,000

The amount that the Insurer shall pay pursuant to this Policy for "loss" arising out of or related to "pollution conditions" resulting from "transportation" (collectively Transportation Conditions), is subject to the Per Transportation Condition Sublimit of Liability and Aggregate Transportation Conditions Sublimit of Liability identified above. Therefore, the Per Transportation Condition Sublimit of Liability, above, shall be the maximum amount the Insurer shall pay for all "loss" arising out of or related to the same, continuous, repeated, or related Transportation Condition to which this insurance applies. Moreover, the Aggregate Transportation Conditions Sublimit of Liability, above, shall be the maximum amount the Insurer shall pay for all "loss" arising out of or related to all Transportation Conditions to which this insurance applies. These Sublimits of Liability are subject to, and payments made within these Sublimits of Liability shall erode, the Limits of Liability identified in Item 3. of the Declarations to this Policy, along with any other applicable exposure-specific Limits or Sublimits of Liability added by endorsement hereto. Under no circumstance shall the Insurer be liable to pay any amount in excess of any applicable Limit or Sublimit of Liability.

II.  [X]  Exposure-Specific Self-Insured Retention

Transportation-Specific Self Insured Retention: $ 250,000

Notwithstanding anything identified in the Declarations to the contrary, the "self-insured retention" amount, above, shall apply to each and every "pollution condition" resulting from "transportation".

All other terms and conditions of this Policy remain unchanged.

_____
Authorized Representative

# WAIVER OF SUBROGATION (BY CONTRACT) ENDORSEMENT

| Named Insured | | | Endorsement Number |
|---|---|---|---|
| The Administrators of the Tulane Educational Fund | | | 024 |

| Policy Symbol | Policy Number | Policy Period | Effective Date of Endorsement |
|---|---|---|---|
| PPL | G71496776 001 | 02/27/2019 to 02/27/2022 | 02/27/2019 |

| Issued By (Name of Insurance Company) |
|---|
| Illinois Union Insurance Company |

Insert the policy number. The remainder of the information is to be completed only when this endorsement is issued subsequent to the preparation of the policy.

## THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

The "insured" and the Insurer hereby agree to the following changes to this Policy:

Section **IX.**, **GENERAL CONDITIONS**, Subsection **E.**, **Subrogation**, of this Policy is hereby amended by addition of the following:

Notwithstanding the foregoing, the Insurer hereby waives its rights to subrogate against all counterparties of a "named insured" where such waiver is required by written contract executed between a "named insured" and such counterparty prior to the relevant "claim" or discovery of a "pollution condition" or "indoor environmental condition" to which this insurance applies.

All other terms and conditions of this Policy remain unchanged.

_____
Authorized Representative



# SCHEDULE OF EXCLUDED PROPERTIES

| Named Insured | Endorsement Number |
|---|---|
| The Administrators of the Tulane Educational Fund | 025 |

| Policy Symbol | Policy Number | Policy Period | Effective Date of Endorsement |
|---|---|---|---|
| PPL | G71496776 001 | 02/27/2019 to 02/27/2022 | 02/27/2019 |

| Issued By (Name of Insurance Company) |
|---|
| Illinois Union Insurance Company |

Insert the policy number. The remainder of the information is to be completed only when this endorsement is issued subsequent to the preparation of the policy.

## THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

Notwithstanding anything in the terms of this Policy that might be construed otherwise, including, but no limited to, the definition of "covered locations in this Policy, the "insureds" and the Insurer agree that the following properties are not "covered locations" and no coverage is afforded pursuant to this Policy with respect to "pollution conditions" on, at under or migrating from, or "indoor environmental conditions" at, these properties.

### Schedule of Excluded Properties

1. Tulane National Primate Research Center, 18703 Three Rivers Road, Covington, LA 70433

All other terms and conditions of this Policy remain unchanged.

_____
Authorized Representative



# INDOOR ENVIRONMENTAL CONDITIONS COVERAGE LIMITATIONS (No Fungi) ENDORSEMENT

| | |
|---|---|
| Named Insured<br>The Administrators of the Tulane Educational Fund | Endorsement Number<br>026 |

| Policy Symbol<br>PPL | Policy Number<br>G71496776 001 | Policy Period<br>02/27/2019 to 02/27/2022 | Effective Date of Endorsement<br>02/27/2019 |
|---|---|---|---|

| Issued By (Name of Insurance Company)<br>Illinois Union Insurance Company |
|---|

Insert the policy number. The remainder of the information is to be completed only when this endorsement is issued subsequent to the preparation of the policy.

## THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

The "insured" and the Insurer hereby agree to the following changes to this Policy:

I.   Section V., DEFINITIONS, Subsection Z., of this Policy is hereby deleted in its entirety and replaced with the following:

Z.   "Indoor environmental condition" means the discharge, dispersal, release, escape, migration or seepage of *legionella pneumophila* in a building or structure, or the ambient air within such building or structure, provided that such *legionella pneumophila* are not naturally occurring in the environment in the amounts and concentrations found within such building or structure.

II.  Section VI., EXCLUSIONS, of this Policy is hereby amended by addition of the following:

Fungi

"Loss" arising out of or related to "fungi".

III. ☒  Location-Specific Endorsement Application

<u>Solely to the extent that there is an X indicated in the box next to Item III. above,</u> the modifications identified in Sections I. and II. of this Endorsement only apply to "indoor environmental conditions" at the "covered locations" specifically identified in the Schedule of Covered Locations, below:

<u>Schedule of Covered Locations</u>

1.   1506 Conery Street, New Orleans, LA 70115

2.   401 North Roadway, New Orleans, LA 70124

3.   1340 Poydras Street, New Orleans, LA 70112

4.   900 Camp Street, New Orleans, LA 70130

5.   101 Judge Tanner Blvd., Suite 402, Covington, LA 70433

6.   323 Patterson Street, Lafayette, LA 70501

All other terms and conditions of this Policy remain unchanged.

_____
Authorized Representative



# FUNGI EXCLUSIONARY (BI/PD & Water Intrusion Event Give-Back)
# ENDORSEMENT

| Named Insured | | | Endorsement Number |
|---|---|---|---|
| The Administrators of the Tulane Educational Fund | | | 027 |

| Policy Symbol | Policy Number | Policy Period | Effective Date of Endorsement |
|---|---|---|---|
| PPL | G71496776 001 | 02/27/2019 to 02/27/2022 | 02/27/2019 |

| Issued By (Name of Insurance Company) |
|---|
| Illinois Union Insurance Company |

Insert the policy number. The remainder of the information is to be completed only when this endorsement is issued subsequent to the preparation of the policy.

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

The "insured" and the Insurer hereby agree to the following changes to this Policy:

I.   Section VI., EXCLUSIONS, of this Policy is hereby amended by addition of the following:

Fungi

"Loss" arising out of or related to "fungi".

This exclusion shall not apply:

1.  To monetary judgments, awards or settlements of compensatory damages for "bodily injury" or "property damage", including any associated "extra damages" or "legal defense expense"; or

2.  To "indoor environmental conditions" involving the presence of "fungi", provided that the presence of such "fungi" is the direct result of a "water intrusion event".

II.   ☒ Section V., DEFINITIONS of this Policy is hereby amended with the addition of the following:

"Water intrusion event" means water intrusion into a building or structure at a "covered location" that:

1.  First commences, in its entirety, during the "policy period" or within six (6) calendar days preceding the "policy period";

2.  Is unintended and unexpected from the standpoint of the "insured";

3.  Is first discovered by the "insured" within seven (7) calendar days of commencement and during the "policy period"; and

4.  Is reported to the Insurer within twenty-one (21) calendar days following the discovery of such water intrusion by the "insured",

provided that any such water intrusion:

5.  Is the result of a piping leak, including, but not limited to potable, sewer or sprinkler pipes (or sprinkler heads);

6.  Is the result of a named storm event as determined by the U.S. National Weather Service, the U.S. National Hurricane Center or the U.S. National Oceanic and Atmosphere Administration; or

7.  Is the result of a "flood".

It is a condition precedent to coverage pursuant to this Endorsement that the "insured" provide conclusive documentation of strict compliance with requirements 1. through 7., above, regardless of whether the Insurer was prejudiced by the failure to meet these requirements.

"Flood" means a general and temporary condition involving the partial or complete inundation of:

1.  Two (2) or more acres of normally dry land area; or

2.  Two (2) or more properties (at least one (1) of which is a "covered location"),

provided that any such inundation results from: a) overflow of inland or tidal waters; b) unusual and rapid accumulation or runoff of surface waters from any source; or c) mudflow.

III. ☐ Location-Specific Endorsement Application

Solely to the extent that there is an X indicated in the box next to Item III., above, the modifications identified in Sections I. and II. of this Endorsement only apply to "indoor environmental conditions" involving "fungi" at the "covered locations" specifically identified in the Schedule of Covered Locations, below:

Schedule of Covered Locations

7.

8.

9.

10.

IV. ☒ Building/Structure-Specific Endorsement Application

Solely to the extent that there is an X indicated in the box next to Item IV., above, the modifications identified in Sections I. and II. of this Endorsement, above, only apply to "indoor environmental conditions" involving "fungi" at the buildings or structures specifically identified in the Schedule of Buildings/Structures, below:

Schedule of Buildings/Structures

1.  School of Public Health and Tropical Medicine: 1440 Canal Street, New Orleans, LA 70112

2.  Tulane Xavier National Women's Center & Clinic: 147 S. Liberty, New Orleans, LA 70112

3.  School of Medicine: 131 S. Robertson, New Orleans, LA 70112

4.  Crescent Care: 711 N. Broad Street, New Orleans, LA 70119

5.  Heart Study Office Clinic: 712 Willis Avenue, Bogalusa, LA 70427

6.  Tulane Cancer Center: 150 S. Liberty, New Orleans, LA 70112

7.  Louisiana Cancer Research Center: 1700 Tulane Avenue, New Orleans, LA 70112

8.  Tulane Hospital & Clinic: 1415 Tulane Avenue, New Orleans, LA 70112

9.  Baton Rouge Medical Center: 3600 Florida Blvd., Baton Rouge, LA 70806

10. Surgery & Gastroenterology Associates: 9103 Jefferson Highway, Baton Rouge, LA 70809

11. Neurosurgery Clinic East Jefferson Complex: 4224 Houma Blvd., Suites 540 and 550, Metairie, LA 70006

12. The Drop-In Clinic at Covenant House: 611 N. Rampart Street, New Orleans, LA 70112

13. The Drop-In Center: 1416 N. Claiborne Avenue, New Orleans, LA 70116

14. Tulane Dermatology Clinic and Neurosurgery/Neuroscience Clinic: 101 Judge Tanner Blvd., Suites 402 and 406, Covington, LA 70433

15. Ryan White Clinic: 1208 Wisteria Street, Alexandria, LA 71301

16. TU Multispecialty Clinic at Women's & Children's Hospital: 4704 Ambassador Caffery Parkway, Lafayette, LA 70508

17. Surgery & Renal Associates of Baton Rouge, 5131 O'Donovan Drive, Suite 100, Baton Rouge, LA 70808

18. Surgery/Medicine Baton Rouge Clinic: 7373 Perkins Road, Baton Rouge, LA 70808

19. Traumatic Stress Clinic Child Counseling Associates: 4641 Fairfield Street, Metairie, LA 70006

20. Tulane Child Psychiatry Department: 1340 Poydras Street, Suite 740, New Orleans, LA 70122

21. Tulane Hemophilia Clinic: 323 Patterson Street, Lafayette, LA 70501

22. Urology Clinic at Touro: 3525 Prytania Street, Suite 614, 6th Floor, New Orleans, LA 70115

23. Tulane Hemophilia Clinic UMC Campus: 2000 Canal Street, 5th Floor, New Orleans, LA 70112

24. Orthopedics: 4300 Houma Blvd., Suite 105, Metairie, LA 70006

25. Part Time Student Clinic at Salvation Army: 4500 S. Claiborne, 1st Floor, New Orleans, LA 70125

26. Heart & Vascular Clinic: 2800 Veterans Blvd., Suite 140, 1st Floor, Metairie, LA 70002

27. Any covered location at the Tulane University Biodiversity Research Institute: 3888 Main Street, Belle Chasse, LA 70037

All other terms and conditions of this Policy remain unchanged.

_____
Authorized Representative



## CATASTROPHE MANGEMENT COVERAGE LIMITATIONS ENDORSEMENT

| Named Insured<br>The Administrators of the Tulane Educational Fund | | Endorsement Number<br>028 |
|---|---|---|

| Policy Symbol<br>PPL | Policy Number<br>G71496776 001 | Policy Period<br>02/27/2019 to 02/27/2022 | Effective Date of Endorsement<br>02/27/2019 |
|---|---|---|---|

| Issued By (Name of Insurance Company)<br>Illinois Union Insurance Company |
|---|

Insert the policy number. The remainder of the information is to be completed only when this endorsement is issued subsequent to the preparation of the policy.

### THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

Solely to the extent that there is an X indicated in Sections I., II., III., IV. and/or IV. of this Endorsement, below, the "insured" and the Insurer hereby agree to the following changes to this Policy:

I.　☒ Sublimits of Liability

Section II., Limits of Liability and Self-Insured Retention, Subsection E., of this Policy is hereby deleted in its entirety and replaced with the following:

E.　Subject to Subsection D., above, and Subsection F., below, $1,000,000 shall be the maximum amount the Insurer shall pay for all "catastrophe management costs" arising out of all "pollution conditions" and "indoor environmental conditions".

II.　☐ Exclusion

Section V., DEFINITIONS, Subsection DD., of this Policy is hereby modified by deletion of the phrase "catastrophe management costs".

Section VI., EXCLUSIONS, of this Policy is hereby amended to include the addition of the following:

　　This insurance also shall not apply to "catastrophe management costs".

III.　☐ Pre-Existing Conditions Endorsement Application

Solely to the extent that there is an X indicated in this Section III., above, the "insured" and the Insurer hereby agree that the modifications identified in Sections I. and/or II. of this Endorsement only apply to "pollution conditions" or "indoor environmental conditions" that first commence, in whole or in part, prior to .

IV.　☐ Location-Specific Endorsement Application

Solely to the extent that there is an X indicated in this Section IV., above, the "insured" and the Insurer hereby agree that the modifications identified in Sections I. and/or II. of this Endorsement only apply to "pollution conditions" or "indoor environmental conditions" associated with the "covered locations" specifically identified in the Schedule of Covered Locations, below:

Schedule of Covered Locations

　　1.

　　2.

　　3.

　　4.

V.　☐ Specific Conditions Endorsement Application

Solely to the extent that there is an X indicated in this Section V., above, the "insured" and the Insurer hereby agree that the modifications identified in Sections I. and/or II. of this Endorsement only apply to "pollution conditions" or "indoor environmental conditions" specifically identified below:

Conditions

　　1.

2.

3.

4.

All other terms and conditions of this Policy remain unchanged.

_____

Authorized Representative

## FUNGI CONDITIONS SUBLIMIT AND GIVE-BACK ENDORSEMENT

| Named Insured<br>The Administrators of the Tulane Educational Fund | | | Endorsement Number<br>029 |
|---|---|---|---|
| Policy Symbol<br>PPL | Policy Number<br>G71496776 001 | Policy Period<br>02/27/2019  to  02/27/2022 | Effective Date of Endorsement<br>02/27/2019 |
| Issued By (Name of Insurance Company)<br>Illinois Union Insurance Company | | | |

Insert the policy number. The remainder of the information is to be completed only when this endorsement is issued subsequent to the preparation of the policy.

### THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

The "insured" and the Insurer hereby agree to the following changes to this Policy:

I.  Sublimits of Liability

Per Fungi Condition Sublimit of Liability: $5,000,000

Aggregate Fungi Conditions Sublimit of Liability:  $10,000,000

The amount that the Insurer shall pay pursuant to this Policy for "loss" arising out of or related to "indoor environmental conditions" involving, in whole or in part, the presence of "fungi" at a "covered location" (hereinafter Fungi Conditions) is subject to the Per Fungi Condition Sublimit of Liability and Aggregate Fungi Conditions Sublimit of Liability identified above. Therefore, the Fungi Condition Sublimit of Liability, above, shall be the maximum amount the Insurer shall pay for all "loss" arising out of or related to the same, continuous, repeated, or related Fungi Conditions to which this insurance applies. Moreover, the Fungi Conditions Sublimit of Liability, above, shall be the maximum amount the Insurer shall pay for all "loss" arising out of or related to all Fungi Conditions to which this insurance applies. These Sublimits of Liability are subject to, and payments made within these Sublimits of Liability shall erode, the Limits of Liability identified in Item 3. of the Declarations to this Policy, along with any other applicable exposure-specific Limits or Sublimits of Liability added by endorsement hereto. Under no circumstance shall the Insurer be liable to pay any amount in excess of any applicable Limit or Sublimit of Liability.

II.  Coverage Give-Back

In the event that a "named insured" commissions and receives a water intrusion/mold  management plan authored by a qualified environmental consultant, which is approved by the Insurer within sixty (60) days after binding of this Policy, the Aggregate Sublimit of Liability limitation, above, may be deleted by subsequent endorsement to this Policy issued by the Insurer.

III. Section VI., EXCLUSIONS, of this Policy is hereby amended by addition of the following:

Failure to Maintain and Construction Defects

"Loss" arising out of or related to any "insureds" failure to properly maintain, or the improper design and construction of any structure erected upon the "covered locations", or any system contained therein, which leads to an "indoor environmental condition".

Failure to follow implemented Mold  Plan

"Loss" arising out of or related to an "insureds" failure to follow any water intrusion/mold management plan approved by the Insurer pursuant to the Fungi and Legionella Coverage Limitation and Give-Back Endorsement attached to this Policy.

All other terms and conditions of this Policy remain unchanged.

_____
Authorized Representative



## FUNGI EXCLUSIONARY (Capital Improvements) ENDORSEMENT

| Named Insured | | Endorsement Number |
|---|---|---|
| The Administrators of the Tulane Educational Fund | | 030 |

| Policy Symbol | Policy Number | Policy Period | Effective Date of Endorsement |
|---|---|---|---|
| PPL | G71496776 001 | 02/27/2019 to 02/27/2022 | 02/27/2019 |

| Issued By (Name of Insurance Company) |
|---|
| Illinois Union Insurance Company |

Insert the policy number. The remainder of the information is to be completed only when this endorsement is issued subsequent to the preparation of the policy.

### THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

The "insured" and the Insurer hereby agree to the following changes to this Policy:

I.  Section VI., EXCLUSIONS, of this Policy is hereby amended by addition of the following:

Fungi (Capital Improvements)

"Loss" arising out of or related to the presence of "fungi" that is discovered during, or associated with, the performance of renovations or capital improvements at such "covered location", including any discoveries made during any associated pre-renovation or pre-development planning, inspection, or design activities.

This exclusion shall not apply to monetary judgments, awards or settlements of compensatory damages for "bodily injury" or "property damage", including any associated "extra damages" or "legal defense expense".

II. ☐ Location-Specific Endorsement Application

Solely to the extent that there is an X indicated in this Section II., above, the "insured" and the Insurer hereby agree that the modification identified in Section I. of this Endorsement only applies to "indoor environmental conditions" involving "fungi" associated with the "covered locations" specifically identified in the Schedule of Covered Locations, below:

Schedule of Covered Locations

1.

2.

3.

4.

All other terms and conditions of this Policy remain unchanged.

_____
                                    Authorized Representative



## PRIMATE OPERATIONS COVERAGE LIMITATION ENDORSEMENT

| Named Insured<br>The Administrators of the Tulane Educational Fund | Endorsement Number<br>031 |
| --- | --- |

| Policy Symbol<br>PPL | Policy Number<br>G71496776 001 | Policy Period<br>02/27/2019 to 02/27/2022 | Effective Date of Endorsement<br>02/27/2019 |
| --- | --- | --- | --- |

| Issued By (Name of Insurance Company)<br>Illinois Union Insurance Company |
| --- |

Insert the policy number. The remainder of the information is to be completed only when this endorsement is issued subsequent to the preparation of the policy.

### THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

The "insured" and the Insurer hereby agree to the following changes to this Policy:

I.   Section V., DEFINITIONS, Subsection LL., of this Policy is hereby amended by addition of the following:

> For the purposes of this definition, irritants, contaminants or pollutants do not include any material or substance in any way involving, in whole or in part, primate research operations of a "named insured", including, but not limited to, the acquisition, housing, movement, treatment or disposal of, or medical or other scientific testing of or experimentation on, any primates, along with the operational or medical waste streams created thereby.

II.  Section VI., EXCLUSIONS, of this Policy is hereby amended by addition of the following:

Specific Activities

"Loss" arising out of or related to operation of the Tulane National Primate Research Center located at 18703 Three Rivers Road, Covington, LA 70433, including any ancillary operations that are related to the Tulane National Primate Research Center that may be performed at any "covered location" pursuant to this Policy.

This exclusion shall not apply to purely ministerial or shared service administrative support operations at other "covered locations" (e.g., common human resources, accounting, payroll or other shared services support operations).

All other terms and conditions of this Policy remain unchanged.

_____
Authorized Representative

# DISCLOSURE PURSUANT TO TERRORISM RISK INSURANCE ACT

| Named Insured | | | Endorsement Number |
|---|---|---|---|
| The Administrators of the Tulane Educational Fund | | | 032 |

| Policy Symbol | Policy Number | Policy Period | Effective Date of Endorsement |
|---|---|---|---|
| PPL | G71496776 001 | 02/27/2019 to 02/27/2022 | 02/27/2019 |

| Issued By (Name of Insurance Company) |
|---|
| Illinois Union Insurance Company |

Insert the policy number. The remainder of the information is to be completed only when this endorsement is issued subsequent to the preparation of the policy.

## THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

**Disclosure Of Premium**

In accordance with the federal Terrorism Risk Insurance Act, we are required to provide you with a notice disclosing the portion of your premium, if any, attributable to coverage for terrorist acts certified under the Terrorism Risk Insurance Act.  The portion of your premium attributable to such coverage is shown in this endorsement or in the policy Declarations.

**Disclosure Of Federal Participation In Payment Of Terrorism Losses**

The United States Government, Department of the Treasury, will pay a share of terrorism losses insured under the federal program. The federal share equals 85% for year 2015, 84% beginning on January 2016; 83% beginning on January 1 2017, 82% beginning on January 1, 2018; 81% beginning on January 1, 2019 and 80% beginning on January 1, 2020 of that portion of the amount of such insured losses that exceeds the applicable insurer retention.  However, if aggregate insured losses attributable to terrorist acts certified under the Terrorism Risk Insurance Act exceed $100 billion in a calendar year, the Treasury shall not make any payment for any portion of the amount of such losses that exceeds $100 billion.

**Cap On Insurer Participation In Payment Of Terrorism Losses**

If aggregate insured losses attributable to terrorist acts certified under the Terrorism Risk Insurance Act exceed $100 billion in a calendar year  and we have met our insurer deductible under the Terrorism Risk Insurance Act, we shall not be liable for the payment of any portion of the amount of such losses that exceeds $100 billion, and in such case insured losses up to that amount are subject to pro rata allocation in accordance with procedures established by the Secretary of the Treasury.

Terrorism Risk Insurance Act premium: $ **5,392**.

_____
Authorized Representative

# SERVICE OF SUIT ENDORSEMENT

| Named Insured | | | Endorsement Number |
|---|---|---|---|
| The Administrators of the Tulane Educational Fund | | | 033 |

| Policy Symbol | Policy Number | Policy Period | Effective Date of Endorsement |
|---|---|---|---|
| PPL | G71496776 001 | 02/27/2019 to 02/27/2022 | 02/27/2019 |

| Issued By (Name of Insurance Company) |
|---|
| Illinois Union Insurance Company |

Insert the policy number. The remainder of the information is to be completed only when this endorsement is issued subsequent to the preparation of the policy.

## THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

Information about service of suits upon the company is given below. Service of process of suits against the company may be made upon the following person, or another person the company may designate:

> Mr. Paul Bech, Esq., Assistant General Counsel
> Chubb
> 436 Walnut Street
> Philadelphia, PA 19106-3703

The person named above is authorized and directed to accept service of process on the company's behalf in any action, suit or proceeding instituted against the company. If the insured requests, the company will give the insured a written promise that a general appearance will be entered on the company's behalf if a suit is brought.

If the insured requests, the company will submit to the jurisdiction of any court of competent jurisdiction. The company will accept the final decision of that court or any Appellate Court in the event of an appeal. However, nothing in this endorsement constitutes a waiver of the company's right to: remove an action to a United States District Court, seek a transfer of a case to another court, or to enforce policy provisions governing choice of law or venue selection, as may be permitted by the laws of the United States, or of any state in the United States.

The law of some jurisdictions of the United States of America requires that the Superintendent, Commissioner or Director of Insurance (or their successor in office) be designated as the company's agent for service of process. In these jurisdictions, the company designates the Director of Insurance as the company's true and lawful attorney upon whom service of process on the company's behalf may be made. The company also authorizes the Director of Insurance to mail process received on the company's behalf to the company person named above.

If the insured is a resident of Canada, the insured may also serve suit upon the company by serving the government official designated by the law of the insured's province.

NOTHING HEREIN CONTAINED SHALL BE HELD TO VARY, ALTER, WAIVE OR EXTEND ANY OF THE TERMS, CONDITIONS, OR LIMITATIONS OF THE POLICY TO WHICH THIS ENDORSEMENT IS ATTACHED OTHER THAN AS ABOVE STATED.

_____

Authorized Representative

# TERRORISM RISK INSURANCE ACT ENDORSEMENT

| Named Insured<br>The Administrators of the Tulane Educational Fund | Endorsement Number<br>034 |
|---|---|

| Policy Symbol<br>PPL | Policy Number<br>G71496776 001 | Policy Period<br>02/27/2019 to 02/27/2022 | Effective Date of Endorsement<br>02/27/2019 |
|---|---|---|---|

Issued By (Name of Insurance Company)
Illinois Union Insurance Company

Insert the policy number. The remainder of the information is to be completed only when this endorsement is issued subsequent to the preparation of the policy.

## THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

Terrorism Premium (Certified Acts of Terrorism): **$ 5,392**

In consideration of the additional premium indicated above, which is included in the Premium as listed on the Declarations, the "insured" and the Insurer, hereby agree to the following Policy change(s):

**A.** With respect to any "hostile acts" or "terrorism" exclusions contained in this Policy, or attached to this Policy by endorsement, such exclusions do not apply to a "certified act of terrorism", as defined in Paragraph **C.**, below.

**B.** With respect to any one or more "certified acts of terrorism", the Insurer will not pay any amounts for which the Insurer is not responsible under the terms of the federal Terrorism Risk Insurance Act **("TRIA")**, due to the application of any clause which results in a cap on the Insurer's liability for payments for terrorism losses.

**C.** "Certified act of terrorism" means an act that is certified by the Secretary of the Treasury, in consultation with the Secretary of Homeland Security and the Attorney General of the United States, to be an act of terrorism pursuant to TRIA. The criteria contained TRIA for a "certified act of terrorism" include the following:

    **1.** The act resulted in insured losses in excess of $5 million attributable to all types of insurance subject to TRIA; and

    **2.** The act is a violent act or an act that is dangerous to human life, property or infrastructure and is committed by an individual or individuals as part of an effort to coerce the civilian population of the United States or to influence the policy or affect the conduct of the United States Government by coercion.

**D.** Notwithstanding any coverage that may otherwise be afforded for punitive damages under this Policy, if any, coverage shall not be afforded for damages arising, directly or indirectly, out of a "certified act of terrorism" that are awarded as punitive damages.

**E.** The coverage afforded under this endorsement shall expire at the earlier of the following dates:

    **1.** The end of the "policy period", as indicated on the Declarations; or

    **2.** <u>**December 31, 2020**</u>.

**F**. The premium for "certified acts of terrorism" coverage is calculated based in part on the federal participation in payment of terrorism losses as set forth in TRIA. The federal program established by TRIA is scheduled to terminate at the end of December 31, 2020, unless extended by the federal government.

**G**. If this "policy period" extends beyond December 31, 2020, please note that the TRIA premium, above, is premised on the parties' assumption that TRIA will later be extended through the end of the "policy period", thereby mandating that Insurer make available coverage for "certified acts of terrorism" for the entire "policy period". In the event that TRIA is not extended beyond December 31, 2020, or otherwise expires at some point during the "policy "period", the Insurer will refund the unearned portion of our TRIA premium to the insured on a pro-rata basis. In the event that new TRIA extension or replacement legislation is enacted requiring the Insurer to offer coverage for terrorism that is materially different than the coverage requirements included in the current version of TRIA that expires on December 31, 2020, the Insurer reserves the right to re-price and prospectively modify terrorism coverage to conform with the statutory requirements and risks presented by any such new legislation.

All other terms and conditions of the policy remain unchanged.

_____
Authorized Representative

# TRADE OR ECONOMIC SANCTIONS ENDORSEMENT

| Named Insured | Endorsement Number |
|---|---|
| The Administrators of the Tulane Educational Fund | 035 |

| Policy Symbol | Policy Number | Policy Period | Effective Date of Endorsement |
|---|---|---|---|
| PPL | G71496776 001 | 02/27/2019 to 02/27/2022 | 02/27/2019 |

| Issued By (Name of Insurance Company) |
|---|
| Illinois Union Insurance Company |

Insert the policy number. The remainder of the information is to be completed only when this endorsement is issued subsequent to the preparation of the policy.

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

This insurance does not apply to the extent that trade or economic sanctions or other laws or regulations prohibit us from providing insurance, including, but not limited to, the payment of claims. All other terms and conditions of the policy remain unchanged.

_____
Authorized Representative

# SIGNATURES

| Named Insured The Administrators of the Tulane Educational Fund | | | Endorsement Number 036 |
|---|---|---|---|
| Policy Symbol PPL | Policy Number G71496776 001 | Policy Period 02/27/2019 to 02/27/2022 | Effective Date of Endorsement 02/27/2019 |
| Issued By (Name of Insurance Company) Illinois Union Insurance Company | | | |

Insert the policy number. The remainder of the information is to be completed only when this endorsement is issued subsequent to the preparation of the policy.

THE ONLY SIGNATURES APPLICABLE TO THIS POLICY ARE THOSE REPRESENTING THE COMPANY NAMED ON THE FIRST PAGE OF THE DECLARATIONS.

By signing and delivering the policy to you, we state that it is a valid contract.

**ILLINOIS UNION INSURANCE COMPANY** (A stock company)

525 W. Monroe Street, Suite 400, Chicago, Illinois 60661

**WESTCHESTER SURPLUS LINES INSURANCE COMPANY** (A stock company)

Royal Centre Two, 11575 Great Oaks Way, Suite 200, Alpharetta, GA 30022

REBECCA L. COLLINS, Secretary

JOHN J. LUPICA, President

Authorized Representative

Chubb. Insured.™

# CHUBB®

☒ **Illinois Union Insurance Company**

☐ **Westchester Surplus Lines Insurance Company**

☐ -

Insured:
The Administrators of the Tulane Educational Fund

Attached To Policy No.: PPL G71496776 001

Effective Date: 02/27/2019

---

## LOUISIANA SURPLUS LINES NOTIFICATION

### NOTICE

THIS INSURANCE POLICY IS DELIVERED AS A SURPLUS LINE COVERAGE UNDER THE LOUISIANA INSURANCE CODE.

IN THE EVENT OF THE INSOLVENCY OF THE COMPANY ISSUING THIS CONTRACT, THE POLICYHOLDER OR CLAIMANT IS NOT COVERED BY THE LOUISIANA INSURANCE GUARANTY ASSOCIATION WHICH GUARANTEES ONLY SPECIFIC TYPES OF POLICIES ISSUED BY INSURANCE COMPANIES AUTHORIZED TO DO BUSINESS IN LOUISIANA.

THIS SURPLUS LINES POLICY HAS BEEN PROCURED BY THE FOLLOWING LICENSED LOUISIANA SURPLUS LINES BROKER:

_____
Signature of Licensed Louisiana Surplus Lines Broker or Authorized Representative

_____
Printed Name of Licensed Louisiana Surplus Lines Broker

NOTHING HEREIN CONTAINED SHALL BE HELD TO VARY, ALTER, WAIVE OR EXTEND ANY OF THE TERMS, CONDITIONS, OR LIMITATIONS OF THE POLICY TO WHICH THIS NOTICE IS ATTACHED OTHER THAN AS STATED ABOVE.



# Chubb Producer Compensation
## Practices & Policies

Chubb believes that policyholders should have access to information about Chubb's practices and policies related to the payment of compensation to brokers and independent agents. You can obtain that information by accessing our website at http://www.chubbproducercompensation.com or by calling the following toll-free telephone number: 1-866-512-2862.

# U.S. TREASURY DEPARTMENT'S OFFICE OF FOREIGN ASSETS CONTROL ("OFAC") ADVISORY NOTICE TO POLICYHOLDERS

No coverage is provided by this Policyholder Notice nor can it be construed to replace any provisions of your policy. You should read your policy and review your Declarations page for complete information on the coverages you are provided.

This Notice provides information concerning possible impact on your insurance coverage due to directives issued by OFAC. **Please read this Notice carefully.**

The Office of Foreign Assets Control (OFAC) administers and enforces sanctions policy, based on Presidential declarations of "national emergency". OFAC has identified and listed numerous:

- Foreign agents;
- Front organizations;
- Terrorists;
- Terrorist organizations; and
- Narcotics traffickers;

as "Specially Designated Nationals and Blocked Persons". This list can be located on the United States Treasury's web site – http//www.treas.gov/ofac.

In accordance with OFAC regulations, if it is determined that you or any other insured, or any person or entity claiming the benefits of this insurance has violated U.S. sanctions law or is a Specially Designated National and Blocked Person, as identified by OFAC, this insurance will be considered a blocked or frozen contract and all provisions of this insurance are immediately subject to OFAC. When an insurance policy is considered to be such a blocked or frozen contract, no payments nor premium refunds may be made without authorization from OFAC. Other limitations on the premiums and payments also apply.

# ENDORSEMENT REPLACEMENT CONFIRMATION ENDORSEMENT

| Named Insured | Endorsement Number |
|---|---|
| The Administrators of the Tulane Education Fund | 037 |

| Policy Symbol | Policy Number | Policy Period | Effective Date of Endorsement |
|---|---|---|---|
| PPL | G71496776 001 | 02/27/2019 to 02/27/2022 | 03/28/2019 |

| Issued By (Name of Insurance Company) |
|---|
| Illinois Union Insurance Company |

Insert the policy number. The remainder of the information is to be completed only when this endorsement is issued subsequent to the preparation of the policy.

## THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

Premium (increase/reduction)    $N/A

The "insured" and the Insurer hereby agree to the following changes to this Policy:

Endorsement **No**. 041 of this Policy is hereby deleted in its entirety and replaced with Endorsement **No**. 038.

All other terms and conditions of this Policy remain unchanged.

JOHN J. LUPICA, President
_____
Authorized Representative

# SCHEDULE OF COVERED LOCATIONS (AP) ENDORSEMENT

| Named Insured<br>The Administrators of the Tulane Education Fund | | | Endorsement Number<br>038 |
|---|---|---|---|
| Policy Symbol<br>PPL | Policy Number<br>G71496776 001 | Policy Period<br>02/27/2019 to 02/27/2022 | Effective Date of Endorsement<br>03/28/2019 |
| Issued By (Name of Insurance Company)<br>Illinois Union Insurance Company | | | |

Insert the policy number. The remainder of the information is to be completed only when this endorsement is issued subsequent to the preparation of the policy.

## THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

Premium increase/(reduction) **$ 800**

In consideration of the indicated adjustment of premium identified above, the "insured" and the Insurer hereby agree to the following changes to this Policy:

The locations identified in the Schedule of Covered Locations, below, are hereby added to this Policy as additional "covered locations".

### SCHEDULE OF COVERED LOCATIONS

| | *Location* | *Retroactive Date* |
|---|---|---|
| **1.** | 7030 Canal Blvd., New Orleans, LA 70124 | 03/28/2019 |

If a "covered location", above, is identified with a corresponding Retroactive Date, then that date shall supersede the general Retroactive Date identified for premises coverage afforded pursuant to Coverages **A., B.** and **C.** within Item **5.** of the Declarations to this Policy for "pollution conditions" on, at under or migrating from, or "indoor environmental conditions" at, that specific "covered location". Also, if a "covered location", above, is identified with the phrase **"FULL RETRO"**, then full retroactive coverage is afforded pursuant to this Policy for "pollution conditions" on, at under or migrating from, or "indoor environmental conditions" at, that specific "covered location". Notwithstanding the foregoing, any retroactive coverage indicated herein is subject to any other exposure-specific Retroactive Date added to this Policy by endorsement.

All other terms and conditions of this Policy remain unchanged.

JOHN J. LUPICA, President
Authorized Representative

PF-45024 (09/14)

# ENDORSEMENT REPLACEMENT CONFIRMATION ENDORSEMENT

| Named Insured | | | Endorsement Number |
|---|---|---|---|
| The Administrators of the Tulane Education Fund | | | 039 |

| Policy Symbol | Policy Number | Policy Period | Effective Date of Endorsement |
|---|---|---|---|
| PPL | G71496776 001 | 02/27/2019 to 02/27/2022 | 02/27/2019 |

| Issued By (Name of Insurance Company) |
|---|
| Illinois Union Insurance Company |

Insert the policy number. The remainder of the information is to be completed only when this endorsement is issued subsequent to the preparation of the policy.

## THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

Premium (increase/reduction)     $N/A

The "insured" and the Insurer hereby agree to the following changes to this Policy:

Endorsement **No**. 002  of this Policy is hereby deleted in its entirety and replaced with Endorsement **No**. 040.

All other terms and conditions of this Policy remain unchanged.

JOHN  J.  LUPICA,  President
Authorized Representative

# SCHEDULE OF NAMED INSUREDS ENDORSEMENT

| Named Insured | Endorsement Number |
|---|---|
| The Administrators of the Tulane Education Fund | 040 |

| Policy Symbol | Policy Number | Policy Period | Effective Date of Endorsement |
|---|---|---|---|
| PPL | G71496776 001 | 02/27/2019 to 02/27/2022 | 02/27/2019 |

| Issued By (Name of Insurance Company) |
|---|
| Illinois Union Insurance Company |

Insert the policy number. The remainder of the information is to be completed only when this endorsement is issued subsequent to the preparation of the policy.

## THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

The "insured" and the Insurer hereby agree to the following changes to this Policy:

The persons or entities identified in the Schedule of Named Insureds, below, are "named insureds" pursuant to this Policy.

### Schedule of Named Insureds

1. Riversphere One, LLC
2. Riversphere Two, LLC
3. Square 245, LLC
4. Tulane Cary Land, LLC
5. Tulane Cary Working Interests, LLC
6. Tulane Cary Royalty Interests, LLC
7. Tulane Pharmacy, LLC
8. Richards Trust
9. Howard Memorial Library Assn.
10. Louisiana Alliance for Educational Reform
11. Samuel Z. Stone CIPR Support Trust
12. Alumnae Association of the H. Sophie Newcomb Memorial College of Tulane University
13. Tamanaca Property LLC
14. Tulane Murphy Foundation
15. Tulane Alumni Association
16. Tulane Law Review Association
17. Tulane International LLC
18. Tulane Living Well LLC
19. Vincent Marshlands LLC
20. Trusts on which Tulane is sole trustee
21. Neal and Mary Vanselo Health Policy Trust
22. Board of Regents Chair in Pediatric Cardiology Trust
23. Tulane Quality Care Network

All other terms and conditions of this Policy remain unchanged.

JOHN J. LUPICA, President
Authorized Representative



## SCHEDULE OF COVERED LOCATIONS ENDORSEMENT

| Named Insured<br>The Administrators of the Tulane Education Fund | | | Endorsement Number<br>041 |
|---|---|---|---|
| Policy Symbol<br>PPL | Policy Number<br>G71496776 001 | Policy Period<br>02/27/2019 to 02/27/2022 | Effective Date of Endorsement<br>07/16/2019 |
| Issued By (Name of Insurance Company)<br>Illinois Union Insurance Company | | | |

Insert the policy number. The remainder of the information is to be completed only when this endorsement is issued subsequent to the preparation of the policy.

## THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

The "insured" and the Insurer hereby agree to the following changes to this Policy:

The locations identified in the Schedule of Covered Locations, below, are hereby added to this Policy as additional "covered locations".

## SCHEDULE OF COVERED LOCATIONS

| *Location* | *Retroactive Date* |
|---|---|
| **1.** 501 Medical Center Drive, Suite 4C, Alexandria, LA 71301 | 07/16/2019 |

If a "covered location", above, is identified with a corresponding Retroactive Date, then that date shall supersede the general Retroactive Date identified for premises coverage afforded pursuant to Coverages **A., B.** and **C.** within Item **5.** of the Declarations to this Policy for "pollution conditions" on, at under or migrating from, or "indoor environmental conditions" at, that specific "covered location". Also, if a "covered location", above, is identified with the phrase **"FULL RETRO"**, then full retroactive coverage is afforded pursuant to this Policy for "pollution conditions" on, at under or migrating from, or "indoor environmental conditions" at, that specific "covered location". Notwithstanding the foregoing, any retroactive coverage indicated herein is subject to any other exposure-specific Retroactive Date added to this Policy by endorsement.

All other terms and conditions of this Policy remain unchanged.

JOHN J. LUPICA, President

Authorized Representative



## SCHEDULE OF COVERED LOCATIONS ENDORSEMENT

| Named Insured<br>The Administrators of the Tulane Education Fund | | | Endorsement Number<br>042 |
|---|---|---|---|
| Policy Symbol<br>PPL | Policy Number<br>G71496776 001 | Policy Period<br>02/27/2019 to 02/27/2022 | Effective Date of Endorsement<br>10/11/2019 |
| Issued By (Name of Insurance Company)<br>Illinois Union Insurance Company | | | |

Insert the policy number. The remainder of the information is to be completed only when this endorsement is issued subsequent to the preparation of the policy.

### THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

The "insured" and the Insurer hereby agree to the following changes to this Policy:

The locations identified in the Schedule of Covered Locations, below, are hereby added to this Policy as additional "covered locations".

### SCHEDULE OF COVERED LOCATIONS

| *Location* | *Retroactive Date* |
|---|---|
| 1. 2418 Calhoun Street, New Orleans, LA 70118 | 10/11/2019 |

If a "covered location", above, is identified with a corresponding Retroactive Date, then that date shall supersede the general Retroactive Date identified for premises coverage afforded pursuant to Coverages **A., B.** and **C.** within Item **5.** of the Declarations to this Policy for "pollution conditions" on, at under or migrating from, or "indoor environmental conditions" at, that specific "covered location". Also, if a "covered location", above, is identified with the phrase **"FULL RETRO"**, then full retroactive coverage is afforded pursuant to this Policy for "pollution conditions" on, at under or migrating from, or "indoor environmental conditions" at, that specific "covered location". Notwithstanding the foregoing, any retroactive coverage indicated herein is subject to any other exposure-specific Retroactive Date added to this Policy by endorsement.

All other terms and conditions of this Policy remain unchanged.

JOHN J. LUPICA, President

Authorized Representative

## SCHEDULE OF COVERED LOCATIONS (AP) ENDORSEMENT

| Named Insured<br>The Administrators of the Tulane Education Fund | | | Endorsement Number<br>043 |
|---|---|---|---|
| Policy Symbol<br>PPL | Policy Number<br>G71496776 001 | Policy Period<br>02/27/2019  to  02/27/2022 | Effective Date of Endorsement<br>01/01/2020 |
| Issued By (Name of Insurance Company)<br>Illinois Union Insurance Company | | | |

Insert the policy number. The remainder of the information is to be completed only when this endorsement is issued subsequent to the preparation of the policy.

### THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

Premium increase/(reduction) **$ 800**

In consideration of the indicated adjustment of premium identified above, the "insured" and the Insurer hereby agree to the following changes to this Policy:

The locations identified in the Schedule of Covered Locations, below, are hereby added to this Policy as additional "covered locations".

### SCHEDULE OF COVERED LOCATIONS

| | *Location* | *Retroactive Date* |
|---|---|---|
| **1.** | 1319 Broadway Street, New Orleans, LA 70118 | 01/01/2020 |

If a "covered location", above, is identified with a corresponding Retroactive Date, then that date shall supersede the general Retroactive Date identified for premises coverage afforded pursuant to Coverage **A.** within Item **5.** of the Declarations to this Policy for "pollution conditions" on, at under or migrating from, or "indoor environmental conditions" at, that specific "covered location".  Also, if a "covered location", above, is identified with the phrase **"FULL RETRO"**, then full retroactive coverage is afforded pursuant to this Policy for "pollution conditions" on, at under or migrating from, or "indoor environmental conditions" at, that specific "covered location".  Notwithstanding the foregoing, any retroactive coverage indicated herein is subject to any other exposure-specific Retroactive Date added to this Policy by endorsement.

All other terms and conditions of this Policy remain unchanged.

JOHN J. LUPICA, President
Authorized Representative



# INDOOR ENVIRONMENTAL CONDITIONS AMENDATORY (BACTERIA AND VIRUS) ENDORSEMENT

| Named Insured | | | Endorsement Number<br>044 |
|---|---|---|---|
| Policy Symbol<br>PPL | Policy Number<br>G71496776 001 | Policy Period<br>02/27/2019 to 02/27/2022 | Effective Date of Endorsement<br>02/27/2019 |
| Issued By (Name of Insurance Company)<br>Illinois Union Insurance Company | | | |

Insert the policy number. The remainder of the information is to be completed only when this endorsement is issued subsequent to the preparation of the policy.

## THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

The "insured" and the Insurer hereby agree to the following changes to this Policy:

**I.** Section **V., DEFINITIONS**, Subsection **AA.**, of this Policy is hereby deleted in its entirety and replaced with the following:

AA. **"Indoor environmental condition"** means:

**1.** The presence of "fungi" in a building or structure, or the ambient air within such building or structure;

**2.** The discharge, dispersal, release, escape, migration or seepage of *legionella pneumophila* in a building or structure, or the ambient air within such building or structure; or,

**3.** Solely with respect to coverage for: **a)** "claims" seeking "remediation costs"; and **b)** "first party remediation costs", the discharge, dispersal, release, escape, migration or seepage of bacteria (exclusive of *legionella pneumophila*) or viruses in a building or structure, or the ambient air within such building or structure,

provided that:

**1.** Such "fungi", bacteria or viruses are not naturally occurring in the environment in the amounts and concentrations found within such building or structure; and

**2.** Such bacteria and viruses: **a)** are not the result of communicability through human-to-human or bodily fluid contact; and **b)** are required to be reported to any Federal, state, commonwealth, municipal or other local government agency or body with regulatory jurisdiction over the "covered location".

**II.** ☒ **Decontamination Condition Sublimits of Liability**

**Per Decontamination Condition Sublimit of Liability: $10,000,000**

**Aggregate Decontamination Conditions Sublimit of Liability: $10,000,000**

Solely to the extent that there is an **X** indicated in this Section **II.**, above, the "insured" and the Insurer hereby agree that the amount that the Insurer shall pay pursuant to this Policy for "loss" arising out of or related to "indoor environmental conditions" involving, in whole or in part, the discharge, dispersal, release, escape, migration or seepage of bacteria (exclusive of *legionella pneumophila*) or viruses in a building or structure, or the ambient air within such building or structure (hereinafter Decontamination Conditions) is subject to the Per Decontamination Condition Sublimit of Liability and Aggregate Decontamination Conditions Sublimit of Liability identified above. Therefore, the Per Decontamination Condition Sublimit of Liability, above, shall be the maximum amount the Insurer shall pay for all "loss" arising out of or related to the same, continuous, repeated, or related Decontamination Condition to which this insurance applies. Moreover, the Aggregate Decontamination Conditions Sublimit of Liability, above, shall be the maximum amount the Insurer shall pay for all "loss" arising out of or related to all Decontamination Conditions to which this insurance applies. These Sublimits of Liability are subject to, and payments made within these Sublimits of Liability shall erode, the Limits of Liability identified in Item **3.** of the Declarations to this Policy, along with any other applicable

exposure-specific Limits or Sublimits of Liability added by endorsement hereto. Under no circumstance shall the Insurer be liable to pay any amount in excess of any applicable Limit or Sublimit of Liability.

**III.** ☒ **Exposure-Specific Retroactive date**

Solely to the extent that there is an **X** indicated in this Section **III.,** above, the "insured" and the Insurer hereby agree that coverage afforded for Decontamination Conditions, as defined in Section II. of this Endorsement, above, only applies to any such "indoor environmental conditions" that first commence, in their entirety on or after **02/27/2019**.

All other terms and conditions of this Policy remain unchanged.

JOHN J. LUPICA, President
_____
Authorized Representative



# INDOOR ENVIRONMENTAL CONDITIONS AMENDATORY (LOCATION-SPECIFIC) ENDORSEMENT

| Named Insured | Endorsement Number |
|---|---|
| The Administrators of the Tulane Education Fund | 045 |

| Policy Symbol | Policy Number | Policy Period | Effective Date of Endorsement |
|---|---|---|---|
| PPL | G71496776 001 | 02/27/2019 to 02/27/2022 | 08/27/2020 |

| Issued By (Name of Insurance Company) |
|---|
| Illinois Union Insurance Company |

Insert the policy number. The remainder of the information is to be completed only when this endorsement is issued subsequent to the preparation of the policy.

## THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

The "insured" and the Insurer hereby agree to the following changes to this Policy:

<u>Solely with respect to coverage afforded for the "covered locations" identified in the Schedule of Covered Locations, below,</u> Section **V., DEFINITIONS**, Subsection **AA.**, of this Policy is hereby deleted in its entirety and replaced with the following:

AA.     **"Indoor environmental condition"** means:

**1.** The presence of "fungi" in a building or structure, or the ambient air within such building or structure; or

**2.** The discharge, dispersal, release, escape, migration or seepage of *legionella pneumophila* in a building or structure, or the ambient air within such building or structure,

provided that such "fungi" or *legionella pneumpophila* are not naturally occurring in the environment in the amounts and concentrations found within such building or structure.

| **Covered Location** | **Retroactive Date** |
|---|---|
| 3941 Houma Blvd., Metairie, LA 70006 | 08/27/2020 |

All other terms and conditions of this Policy remain unchanged.

JOHN J. LUPICA, President
Authorized Representative