# EXHIBIT E

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| THE ADMINISTRATORS OF THE TULANE EDUCATIONAL FUND<br><br>v.<br><br>ILLINOIS UNION INSURANCE COMPANY ET AL. | CIVIL ACTION<br><br>NO. 21-820<br><br>SECTION T(1)<br><br>DISTRICT JUDGE GREG G. GUIDRY<br><br>MAGISTRATE JUDGE JANIS VAN MEERVELD |

### DECLARATION OF JOYCE K. FRED, MBA, MPA, ARM, CIC

1.) My name is Joyce K. Fred, and I am an adult of the full age of majority and have personal knowledge of the facts set forth in this Declaration.

2.) I have received a Master of Business Administration degree, a Master of Public Administration degree, an Associate of Risk Management (ARM) designation, and a Certified Insurance Counselor (CIC) designation. I have been a licensed insurance producer since 1983 to the present date in the states of Colorado and Oregon.

Scanned with CamScanner

3.) I was Tulane's Vice President, Enterprise Risk Services, in the Office of Enterprise Risk Services until my departure in October 2020.

4.) I was in that position on February 12, 2019 when I, along with Diane R. Surla and John C. Hadden, Jr., met with representatives of Willis of Tennessee, Inc. n/k/a Willis Towers Southeast, Inc. ("Willis") to discuss proposals from three new carriers including Illinois Union Insurance Company ("Illinois Union") to provide Premises Pollution Liability ("PPL") coverage which Tulane previously had with XL, but which policy was expiring on February 27, 2019 and was non-renewed.

5.) In those discussions, it was my understanding that the proposed Illinois Union/Chubb policy would cover cleaning and disinfection expenses from health-related infectious viruses that cause human diseases of a kind that would require reporting to a governmental or healthcare oversight agency, specifically diseases such as Ebola and Lassa Fever that Tulane was recognized for conducting leading research upon.

6.) Therefore, I handwrote the word "Ebola" in the box on the proposal regarding cleaning and disinfection coverage for such expenses under the Illinois Union/Chubb policy. *See* Exhibit A.

7.) I was especially interested in potential coverage for disinfection expenses related to such viruses since Tulane faculty, including Dr. Robert Garry, MD and Dr. John Schieffelin, MD, had been working on West African viruses such as Ebola and Lassa Fever, which could create a potential for contamination from same in Tulane facilities as well as to other Tulane employees who may be exposed to such viruses via contact with Dr. Garry and Dr. Schieffelin upon their return to the United States from travels to West Africa on their research expeditions.

8.) This coverage notation within this box on the proposal was also relevant to me since Tulane had recently encountered a contamination issue from the release of a *Bp* select agent at its Primate Center facility, at which time, "Disinfection Costs" coverage would have benefited Tulane.

9.) Ebola and Lassa Fever are highly infectious and contagious diseases on which Tulane faculty researchers were actively conducting research, and thus, instrumental in the fight against Ebola and Lassa Fever. These researchers were some of the first responders against the Ebola epidemic in Sierra Leone and helped develop a rapid test to diagnose both diseases in the field.

10.) It was my understanding that the coverage proposed under the "Disinfection" block for the Illinois Union/Chubb policy involved health-related infectious viruses that could lead to some type of human-to-human communicable

Scanned with CamScanner

disease, and that would require reporting to a governmental or healthcare oversight agency.

11.) I thought expenses regarding cleaning and disinfection of viruses causing such communicable diseases would be covered under the Illinois Union/Chubb policy although sub-limited, particularly since I did not make notations of any exclusions of such viruses within the proposal in the subsequent blocks of the "Communicable Disease" section.

12.) I specifically made contemporaneous hand-written notes on the Willis February 12, 2019 proposal regarding the Illinois Union/Chubb policy as follows: "Ebola-disinfection-sublimit $5M." *See* Exhibit A.

13.) The Willis proposal indicated that the expiring XL policy and proposed Allianz policy did "not" include coverage for disinfection costs for "infectious virus" and that such costs were "excluded" under the proposed AWAC policy. *See id.*

14.) The Willis proposal further indicated that coverage was "included" for same under the proposed Illinois Union/Chubb policy which is the box in which I handwrote my notes referencing "Ebola" as a potential example for which Tulane would be entitled to "disinfection costs" although sub-limited. *See id.*

15.) Also, immediately following the "Disinfection Costs" coverage block on the Willis proposal is a block addressing "Communicable Diseases." *See id.*

16.) The "Communicable Diseases" block on the Willis proposal states that such coverage is "Excluded" under the expiring XL policy, but specifically states that the Illinois Union/Chubb, AWAC, and Allianz policies were all "Silent" as to that coverage.

17.) As an insurance professional, because nothing on the Willis proposal indicated that the Illinois Union/Chubb policy specifically "Excluded" communicable diseases (as was indicated for the expiring XL policy), I would have thought that the affirmative coverage for "Disinfection" costs for cleaning and disinfection of an "infectious virus" would not be subject to any communicable disease exclusion or exception.

18.) On February 26, 2019 at 7:04 a.m., Willis emailed me the latest Quote No. 4 from Chubb which included certain form policy language, including the definition of "indoor environmental conditions" as including "fungi" and "*legionella pneumophila*" and the definition of "remediation costs" and indicated the policy would also include an "Indoor Environmental Conditions Amendatory (Bacteria and Virus) Endorsement" with sublimits of $10 million per occurrence and $10 million in the aggregate with a $250,000 self-insured retention ("SIR") and a retroactive date of February 27, 2019, but the actual Endorsement was not included with the rest of the form language. *See* Exhibit B (email chain with Willis).

19.) On February 26, 2019 at 5:00 p.m., I sent an email to Willis as agent for Illinois Union confirming to bind coverage for Tulane of the Illinois Union/Chubb policy as referenced within Willis' renewal proposal presentations and Chubb's Quote No. 4 ("Order to Bind Coverage"). *See id.*

20.) On March 5, 2019, Illinois Union issued an insurance Coverage Binder for the coverage with Tulane including the specifically referenced virus coverage of $10 million per occurrence and $10 million aggregate subject to a $250,000 SIR as stated in Quote No. 4.

21.) On March 20, 2019, Tulane paid the $275,000 premium for the Illinois Union/Chubb Policy to Willis as agent for Illinois Union.

22.) On May 17, 2019, Willis emailed Tulane portions of the Illinois Union Policy, but the portions of the Policy received did not include the endorsement related to the affirmative virus coverage that Tulane bought and paid for and was bound pursuant to the Coverage Binder.

23.) On April 7, 2020, Diane Surla, Director of Risk Management for Tulane, provided Illinois Union Notice of COVID-19 claims which had commenced in March 2020 on which correspondence I was copied. *See* Exhibit C.

24.) On May 7, 2020, Tulane received Endorsement No. 44 "Indoor

Environmental Conditions Amendatory (Bacteria and Virus) Endorsement" to the Policy, which included coverage limitations involving communicable diseases.

25.) As an insurance professional, I believe Illinois Union cannot rely on any limitation to COVID-19 coverage contained in Endorsement No. 44 as Illinois Union did not deliver Endorsement No. 44 to Tulane before coverage was bound in March 2019, or in any of the subsequent months that followed for over a year from when the "Order to Bind Coverage" was initiated.

26.) As an insurance professional, I believe Illinois Union cannot rely on any limitation to COVID-19 coverage contained in Endorsement No. 44 as Illinois Union did not deliver Endorsement No. 44 to Tulane until after Tulane's COVID-19 loss began in March 2020.

27.) As an insurance professional, I believe Illinois Union cannot rely on any limitation to COVID-19 coverage contained in Endorsement No. 44 as Illinois Union did not deliver Endorsement No. 44 to Tulane until after Tulane provided Illinois Union Notice of its COVID-19 loss in April 2020.

28.) As an insurance professional, I believe Illinois Union cannot rely on any limitation to COVID-19 coverage contained in Endorsement No. 44 as Illinois Union did not deliver Endorsement No. 44 to Tulane until almost a year after other parts of the Policy were delivered to Tulane in May 2019.

29.) I recently received knowledge that the language at issue in Endorsement No. 44 did indeed exist before the coverage was bound and at the time the rest of the policy was issued to Tulane, but the language at issue was not provided to Tulane until a year after the rest of the policy.

30.) As an insurance professional, I have the knowledge and understanding that it is the duty of the insurer to provide the insured with all policy documents at the time of issuance in order for the insured to be fully aware of all coverages and coverage limitations.

31.) As an insurance professional, I believe that, had Illinois Union provided Tulane with any coverage limitations related to communicable diseases in Endorsement No. 44 at the time of policy issuance, that Tulane would have insisted on a reissuance of the Endorsement No. 44 to delete such coverage limitation since this limitation was not represented at the renewal presentation or on the Coverage Binder.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct.

Executed this 1*7* day of June, 2022, in Little Rock, Arkansas.

_____
JOYCE K. FRED, MBA, MPA, ARM, CIC

Scanned with CamScanner