# EXHIBIT   F

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| THE ADMINISTRATORS OF THE TULANE EDUCATIONAL FUND<br><br>v.<br><br><br>ILLINOIS UNION INSURANCE COMPANY ET AL. | CIVIL ACTION<br><br>NO. 21-820<br><br>SECTION T(1)<br><br>DISTRICT JUDGE<br>GREG G. GUIDRY<br><br>MAGISTRATE JUDGE<br>JANIS VAN MEERVELD |

## DECLARATION OF JOHN C. HADDEN, JR., CIC, CLCS

1.) My name is John C. Hadden, Jr., and I am an adult of the full age of majority and have personal knowledge of the facts set forth in this Declaration.

2.) I currently hold a Louisiana Property and Casualty insurance license, a Commercial Lines Coverage Specialist (CLCS) designation from the Hartford School of Insurance and the National Underwriter Company, and a Certified Insurance Counselor (CIC) designation from The National Alliance for Insurance and Education.

EXHIBIT 1

3.) Before joining Tulane, I had over 8 years of experience in the insurance and risk management industry, working for an insurance broker.

4.) I am currently the Director of Insurance Tulane University ("Tulane"), Enterprise Risk Services.

5.) Defendant Illinois Union Insurance Company ("IUIC") issued Tulane a Premises Pollution Liability Insurance Policy No. PPL G71496776 001 ("Policy") effective February 27, 2019 to February 27, 2022.

6.) Defendant Willis Towers Watson Southeast, Inc. f/k/a Willis of Tennessee, Inc. ("Willis") was the producer of the Policy.

7.) Tulane had previously had an Environmental Liability coverage policy with XL which was to expire on February 27, 2019 and was not going to be renewed.

8.) On February 12, 2019, Willis representatives met with Tulane representatives including myself and Joyce K. Fred (Tulane's then-Vice President, Insurance and Risk Management) to discuss a proposal from IUIC (sometimes referred to as Chubb) and two other carriers to provide Tulane Environmental Liability coverage for the expiring XL policy.

9.) In Ms. Fred's contemporaneous handwritten notes that she made on the Willis February 12, 2019 IUIC/Chubb proposal at the meeting, she specifically noted

"Ebola" of which handwritten notes I am now the record custodian due to Ms. Fred's retirement.

10.) On February 26, 2019, IUIC provided a Quotation No. 4 to Tulane in which it quoted a premium of $275,000 for the Policy which Quotation specifically provided coverage would be extended via endorsement to viruses as follows:

**Indoor Environmental Conditions Amendatory (Bacteria and Virus) Endorsement**
- **Sublimits of Liabilit: $10m Per / $10m Agg with $250k SIR.**
- **Retroactive date of 02/27/2019.**

*See* Exhibit A at TULANE/CHUBB/PPL/FINALQUOTE#4 2-26-2019/00005.

11.) As an insurance professional, I understood from Chubb's Quote that Chubb was quoting Tulane virus coverage in accordance with the representations made by Willis with sub-limits of liability of $10 million per occurrence and $10 million in the aggregate with a $250,00 self-insured retention ("SIR") which coverage was included in the $275,000 premium quoted to Tulane.

12.) While IUIC provided 64 pages of actual policy language with policy form numbers and edition dates to Tulane in the Quotation No. 4, it did not provide a form number, edition date, or any additional language regarding the virus endorsement other than what was reprinted above and is included in

Exhibit A.

13.) Tulane accepted IUIC/Chubb's quote, and on March 5, 2019, IUIC issued Tulane a "Coverage Binder." *See* Exhibit B.

14.) The Coverage Binder reiterated that (1) the Policy was subject to a $250,000 self-insured retention amount, (2) the Policy cost a $275,000 premium, and (3) the "Terms & Conditions" of the Policy were as per the Final Quotation No. 4 dated February 26, 2019 as indicated below:

| | |
|---|---|
| **RETENTION AMOUNT:** | $250,000 Per Pollution Condition or Indoor Environmental Condition |
| | 7 days Deductible for Business Interruption loss Per Pollution Condition or Indoor Environmental Condition |
| **PREMIUM:** | $275,000 |
| | The premium in this binder includes commission in an amount equal to 0.0% of such premium. |
| **COMMISSION:** | 0.0% |
| **TERMS & CONDITIONS:** | PF-44887a (01/17) Premises Pollution Liability Insurance Policy |
| | As per quotation #4, dated 02/26/2019. |

*See* Exhibit B, TULANE/CHUBBPPL/BINDER 3-5-2019/00002.

15.) The Coverage Binder specifically stated that "Terms and conditions that are not specifically mentioned in this binder are not included." *Id.*

16.) On March 20, 2019, Tulane paid the $275,000 premium for the IUIC Policy to Willis as agent for IUIC.

17.) On May 17, 2019, Willis emailed me portions of the IUIC Policy, but the portions of the Policy I received did not include the endorsement related

to the affirmative virus coverage that Tulane bought and paid for and was bound pursuant to the Coverage Binder with the email specifically stating, "They need to add the manuscript endorsement for Virus/Bacteria coverage." *See* Exhibit C.

18.) After COVID-19 issues began in New Orleans in March 2020, I personally on behalf of Tulane both orally and in writing attempted to obtain a copy of the affirmative virus coverage from IUIC that Tulane had bought and paid for and was bound and was not included with the policy provisions provided me 10 months earlier. *See, e.g.,* Exhibit D.

19.) On April 7, 2020, Tulane provided a Notice to IUIC of its COVID-19-related claims it expected that would be covered under the Policy.

20.) One month after Tulane provided its COVID-19 Notice to IUIC, on May 7, 2020, I received an email from Willis with attachment indicating it was "Adding Endt #44 Indoor Environmental Conditions Amendatory (Bacteria and Virus) Endorsement" to the Policy with effective date of February 27, 2019. *See* Exhibit E.

21.) Endorsement No. 44 emailed to me on May 7, 2020 bore an edition date of "04/20" which indicates to me as an insurance professional that the document was not created until April 2020. *See* Exhibit E, TULANE/CHUBBPPL/5-7-2020/TRANSMITTAL OF

ENDORSEMENT/00002-00003.

22.) As an insurance professional, I believe IUIC cannot rely on any limitation to COVID-19 coverage contained in Endorsement No. 44 as IUIC did not deliver Endorsement No. 44 to Tulane before coverage was bound in March 2019.

23.) As an insurance professional, I believe IUIC cannot rely on any limitation to COVID-19 coverage contained in Endorsement No. 44 as IUIC did not deliver Endorsement No. 44 to Tulane until after Tulane's COVID-19 loss began in March 2020.

24.) As an insurance professional, I believe IUIC cannot rely on any limitation to COVID-19 coverage contained in Endorsement No. 44 as IUIC did not deliver Endorsement No. 44 to Tulane and until after Tulane provided IUIC Notice of its COVID-19 loss in April 2020.

25.) As an insurance professional, I believe IUIC cannot rely on any limitation to COVID-19 coverage contained in Endorsement No. 44 as IUIC did not deliver Endorsement No. 44 to Tulane until almost a year after other parts of the Policy were delivered to Tulane in May 2019.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct.

Executed this 8th day of March, 2022, in New Orleans, Louisiana.

*[signature]* 3/8/2022
JOHN C. HADDEN, JR., CIC, CLCS