UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| ADMINISTRATORS OF THE TULANE EDUCATIONAL FUND, *Plaintiff* | * * * * | CIVIL ACTION NO.  21-820 |
| | * | SECTION:  "T" (1) |
| VERSUS | * * | JUDGE GREG GERARD GUIDRY |
| ILLINOIS UNION INSURANCE COMPANY, ET AL., *Defendants* | * * * | MAGISTRATE JUDGE JANIS VAN MEERVELD |

ORDER AND REASONS

Before the Court is the plaintiff's Motion to Compel Production of Documents Prepared by Illinois Union Insurance Company's Legal Department in Capacity as Underwriter. (Rec. Doc. 92). The court ordered the documents at issue to be produced for *in camera* review. (Rec. Doc. 125). Having reviewed the documents and the arguments of the parties, the court finds that they are discoverable. They are relevant because they pertain to changes made to the effective date of the endorsement at issue in this lawsuit long after the policy was issued, shortly after claim was made, and shortly before the endorsement was delivered. Additionally, the court finds that the documents are not subject to the attorney client privilege because they were not created for the primary purpose of giving or receiving legal advice. Accordingly, the Motion to Compel (Rec. Doc. 92) is GRANTED. Defendant shall produce the withheld documents by October 4, 2022.

Background

In this lawsuit, The Administrators of The Tulane Educational Fund ("Tulane") seek to recover for their COVID-19 mitigation efforts under a "Premises Pollution Liability" policy they purchased from Illinois Union Insurance Company ("Illinois Union") in February 2019. A primary issue is whether the policy covers such expenditures in the face of Endorsement 44, which provides that for a virus to qualify as a covered "indoor environmental condition," it cannot be "the result

1

of communicability through human-to-human or bodily fluid contact." According to Tulane, however, its broker Willis Towers Watson Southeast, Inc. f/k/a Willis of Tennessee represented to Tulane that the policy would provide Tulane with virus coverage up to $10 million and gave Ebola as an example. Tulane claims that no alleged exclusion or limitation of the "virus" coverage was conveyed to it before the coverage was bound in March 2019. And it further contends that when it received a partial version of the policy in May 2019, the policy was incomplete and did not include the virus coverage. It submits that it continued to ask for a copy of the virus coverage after COVID-19 occurred in March 2020, but that it was not until after it made a formal Notice of its COVID-19 claims that it received Endorsement 44, which bears an edition date of (04/20).

The issue presently before the Court is whether two documents withheld by Illinois Union must be produced. Illinois Union described the documents on its privilege log as (1) draft endorsement with edits in paragraph 3 only by Chubb in-house counsel and (2) report of drafting request between Chubb underwriting and Chubb in-house counsel. The report is dated April 23, 2020. The log claims that the documents are attorney-client communications and work product. In opposition to Tulane's motion to compel, however, Illinois Union argues only that the documents are protected by the attorney-client privilege and further, that they are irrelevant because the edits to the endorsement concern only the retroactive date of the endorsement, which they say is irrelevant to this litigation.

Law and Analysis

1. *Scope of Discovery*

The Federal Rules of Civil Procedure provide that "parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case." Fed. R. Civ. Proc. 26(b)(1). "Information within this scope of discovery need

not be admissible in evidence to be discoverable." Id. The Rule requires consideration of the following factors in assessing proportionality: "the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit." Id.

2. *Attorney-Client Privilege*

"[T]he attorney-client privilege protects communications made in confidence by a client to his lawyer for the purpose of obtaining legal advice." Hodges, Grant & Kaufmann v. U.S. Gov't, Dep't of the Treasury, I.R.S., 768 F.2d 719, 720 (5th Cir. 1985). The purpose of the privilege:

> is to encourage full and frank communication between attorneys and their clients and thereby promote broader public interests in the observance of law and administration of justice. The privilege recognizes that sound legal advice or advocacy serves public ends and that such advice or advocacy depends upon the lawyer's being fully informed by the client.

Upjohn Co. v. United States, 449 U.S. 383, 389 (1981). For a communication to be protected under the privilege, the proponent "must prove: (1) that he made a *confidential* communication; (2) to a lawyer or his subordinate; (3) for the primary purpose of securing either a legal opinion or legal services, or assistance in some legal proceeding." United States v. Robinson, 121 F.3d 971, 974 (5th Cir. 1997) (emphasis in original). Communications by the lawyer to the client are protected "if they would tend to disclose the client's confidential communications." Hodges, 768 F.2d at 720. "The burden of demonstrating the applicability of the privilege rests on the party who invokes it." Id.

Determining whether the primary purpose of a communication with an attorney was to provide or receive legal advice can be complicated when the communication involves in-house

3

counsel because these attorneys may serve in multiple roles (including non-legal).[1] "[C]ommunications by a corporation with its attorney, who at the time is acting solely in his capacity as a business advisor, [are not] privileged, nor are documents sent from one corporate officer to another merely because a copy is also sent to counsel." Equal Employment Opportunity Comm'n v. BDO USA, L.L.P., No. 16-20314, 2017 WL 5494237, at *4 (5th Cir. Nov. 16, 2017). (citations and quotations omitted). Further, "a document that simply transmits a document to other individuals without more does not garner the protection of the attorney-client or work product privilege." Freeport-McMoran Sulphur, LLC v. Mike Mullen Energy Equip. Res., Inc., No. CIV.A. 03-1496, 2004 WL 1299042, at *6 (E.D. La. June 4, 2004).

> The test for the application of the attorney-client privilege to communications with legal counsel in which a mixture of services are sought is whether counsel was participating in the communications primarily for the purpose of rendering legal advice or assistance. Therefore, merely because a legal issue can be identified that relates to on-going communications does not justify shielding them from discovery. The lawyer's role as a lawyer must be primary to her participation.

In re Vioxx Prod. Liab. Litig., 501 F. Supp. 2d 789, 798 (E.D. La. 2007) (quoting Special Master's Report).

3. *Documents at Issue Here*

First, the court finds that the documents at issue here are relevant. They concern edits to the retroactive date of Endorsement 44 following Illinois Union's realization that the Endorsement had not been delivered to Tulane at the time the policy was bound. Although the retroactive date may not be at issue, the timing of the creation and delivery of Endorsement 44 is one of the issues

---

[1] "[B]ecause in-house counsel has an increased level of participation in the day-to-day operations of the corporation, it is more difficult to define the scope of the privilege when a communication is made to in-house counsel." Stoffels v. SBC Commc'ns, Inc., 263 F.R.D. 406, 411 (W.D. Tex. 2009)).

in this case, and the communications reflected in the withheld report bear on that question. The redline edits to the Endorsement are relevant because they are part of those communications.

Next, the court considers whether the attorney-client privilege attaches to the documents. Illinois Union submits that Bryan Weiss was acting in his capacity as in-house counsel in his communications with underwriter Matthew Thompson. The report also reflects the involvement of Jack Frost and Kevin Yang. However, it does not appear that they are attorneys. In any event, the communications reflected in the report offer no indication that Mr. Weiss was being consulted for legal advice, nor that he is providing legal advice. He asks for clarification about what changes are being made and why, and he makes some changes in redline to the Endorsement. The involvement of Mr. Weiss could equally be for an underwriting, i.e., normal business, purpose. The Court is not convinced that the primary purpose of his involvement was for rendering legal advice.

## Conclusion

For the foregoing reasons, the Court finds that the documents withheld by Illinois Union are relevant and are not subject to the attorney-client privilege. Accordingly, Tulane's Motion to Compel (Rec. Doc. 92) is GRANTED. Illinois Union shall produce the withheld documents by October 4, 2022.

New Orleans, Louisiana, this 30th day of September, 2022.

_____
Janis van Meerveld
United States Magistrate Judge